\**MARK BRNOVICH**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)
Drew C. Ensign (No. 25463)
Robert J. Makar (No. 33579)
2005 N. Central Ave
Phoenix, AZ 85004-1592
Phone: (602) 542-8958
Drew.Ensign@azag.gov
Robert.Makar@azag.gov

*Attorneys for Defendant Mark Brnovich*
*in his official capacity as Attorney General*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

|  |  |
|---|---|
| Mi Familia Vota, et al., | No. 2:21-cv-01423-DWL |
| Plaintiffs, | **ATTORNEY GENERAL'S MOTION TO STAY RESOLUTION OF PLAINTIFFS' *ANDERSON-BURDICK* NON-SIGNATURE CURING CLAIM** |
| vs. | |
| Katie Hobbs, et al., | |
| Defendants. | |

## INTRODUCTION

Defendant Mark Brnovich, in his official capacity as Arizona Attorney General (hereinafter, the "Attorney General" or the "State") hereby seeks a 60-day stay of briefing and adjudication of one of Plaintiffs' claims, their challenge under *Anderson-Burdick* doctrine to deadline of poll-close time to cure missing signatures on mail-in ballots (hereinafter, Plaintiffs' "*Anderson-Burdick* Signature Claim"), from November 15 to January 14, 2022. An essentially identical challenge by Intervenor-Plaintiffs is currently pending before the Ninth Circuit in *Arizona Democratic Party v. Hobbs ("ADP v. Hobbs")*, Nos. 20-16759, 20-16766. That appeal resulted in a published decision granting the State of Arizona's request for a stay pending appeal. *Arizona Democratic Party v. Hobbs ("Hobbs I")*, 976 F.3d 1081 (9th Cir. 2020).

That appeal has since been fully briefed, was argued on July 7, 2021, and is likely to be decided imminently. Because that decision is likely to be dispositive of Plaintiffs' *Anderson-Burdick* Signature Claim, a short stay will promote judicial economy and conserve the resources of the parties by avoiding briefing of issues that the Ninth Circuit is set to decide conclusively and imminently. Although Plaintiffs and Intervenor-Plaintiffs have previously acknowledged the overlap between the *Anderson-Burdick* Signature Claim here and that in *Hobbs*, they both nonetheless oppose this request.[1]

## BACKGROUND

### Claims At Issue Here

This case involves challenges to two features of Arizona election law. The first relates to signatures on mail-in ballots. Arizona is one of 31 states that use voters' signatures as the primary method of authenticating voters' identities for mail-in ballots. *See* Brief of Appellant State of Arizona, *Hobbs*, 2021 WL 302224, at *2 (9th Cir. Jan. 20, 2021). Of those, 14 states do not provide voters *any* opportunity to cure a failure to sign

---

[1]  Republican Intervenors and the County Records of Coconino and Yavapai Counties do not object to this request. The Secretary of State takes no position. The County Records of Cochise, Coconino, Gila, Graham, Greenlee, La Paz, Maricopa, Mohave, Navajo, Pima, Santa Cruz, and Yuma Counties also take no position.

the ballot affidavit whatsoever. *Id.*[2] Arizona is not among them. Instead, like Georgia, Massachusetts, and Michigan, it permits voters to cure their initial failure to sign a ballot as long as they do so by when polls close on Election Day ("Poll-Close Deadline"). *Id.* Arizona law also affirmatively requires election officials to assist voters in curing non-signatures. *Id.*

This case also involves a challenge to the recently enacted SB 1485, which amends the State's early voting list. For voters on the State's Early Voting List ("EVL"), the voters are automatically sent a mail-in ballot for all elections in which they are eligible to vote. *See* A.R.S. § 16-544. Arizona's creation of an EVL is one of the ways in which Arizona's electoral system is more open and generous than other states. Arizona is one of only five states that have EVLs open to all voters.[3] Ten other states have EVLs open only to voters with disabilities or over the age of 64.[4] In addition, five states conduct voting almost entirely through mail-in ballots, and do not generally make polling stations available to voters.[5] The remaining 30 states do not have any early voting list whatsoever.

SB 1485 adds a new periodic voting requirement to maintain eligibility for the EVL ("Periodic Voting Requirement"). *See* AZ LEGIS 359 (2021), 2021 Ariz. Legis. Serv. Ch. 359 (S.B. 1485). Among other changes, if a voter fails to vote an early ballot in at least one election in which there was a federal race on the ballot over the course of four years (e.g., any of the two primary or two general elections), the recorder shall remove the voter from the EVL subject to procedural requirements. *Id.*

Plaintiffs and Intervenor-Plaintiffs challenge both the Poll-Close Deadline and the Periodic Voting Requirement, and assert both (1) impose unconstitutional burdens under

---

[2]  It was originally 15 states when the State's brief was filed, but Virginia has now changed its applicable laws. *See*, *e.g.*, https://ballotpedia.org/Cure_period_for_absentee_and_mail-in_ballots.

[3]      https://www.ncsl.org/research/elections-and-campaigns/vopp-table-3-states-with-permanent-absentee-voting-for-all-voters-voters-with-permanent-disabilities-and-or-senior-voters.aspx

[4]  *Id.*

[5]      https://www.ncsl.org/research/elections-and-campaigns/vopp-table-18-states-with-all-mail-elections.aspx

the Supreme Court's *Anderson-Burdick* doctrine and (2) were enacted with intentional discriminatory animus, in violation of the Fourteenth Amendment's Equal Protection Clause, the Fifteenth Amendment, and Section 2 of the Voting Rights Act ("VRA"), 52 U.S.C. §10301. Complaint ¶¶142-145.

This motion seeks a stay only as to Plaintiffs' and Intervenor-Plaintiffs' challenge to the Poll-Close Deadline for curing non-signatures under *Anderson-Burdick* doctrine. It does not propose any stay with respect to the challenges to the Periodic Voting Requirement, or Plaintiffs' constitutional and VRA challenges to the Poll-Closed Deadline.

**ADP v. Hobbs Case**

Intervenor-Defendants filed a challenge to the State's Poll-Close Deadline for curing non-signatures in this Court in June 2020. *See Arizona Democratic Party v. Hobbs*, No. 20-01143 (filed June 10, 2020). That case, as here, challenged the State's Poll-Close Deadline as imposing an unconstitutional burden under *Anderson-Burdick* doctrine. *Hobbs*, 976 F.3d at 1084-86.

This Court entered a permanent injunction in favor of Intervenor-Plaintiffs on September 10, 2020. *Id.* at 1084-85. The Ninth Circuit granted a stay pending appeal on October 6, holding that "the State has shown that it is likely to succeed on the merits" with respect to plaintiffs' there (Intervenor-Plaintiffs' here) *Anderson-Burdick* challenge to the Poll-Close Deadline. *Id.* at 1085-86. In reaching that holding, the court of appeals resolved a number of important issues in favor of the State, including the applicable burden and reasonability of the State's Poll-Close Deadline. *Id.* at 1085-86.

The decision of the motions panel was a published opinion. There is some conflicting Ninth Circuit precedent about whether a published decision of a Ninth Circuit motions panel binds a subsequent merits panel of the same court. *Compare Lair v. Bullock*, 798 F.3d 736, 747 (9th Cir. 2015) ("[A] motions panel's published opinion binds future panels the same as does a merits panel's published opinion.") *with East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 657 (9th Cir. 2021).

The Attorney General is not aware of any authority, however, under which a

published opinion of a Ninth Circuit motions panel would not be binding on district courts. This Court is therefore bound by the published *Hobbs* decision, unless the Ninth Circuit were to alter/reject it.

The *ADP v. Hobbs* appeal is fully briefed and was argued on July 7, 2021. The Ninth Circuit takes on average 1.7 months from oral argument to issue a decision.[6]

## LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North America Co.*, 299 U.S. 248, 254 (1936). A federal court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Mediterranean Enters. Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983); Obtaining such a stay "does not require that the issues in such [other] proceedings are necessarily controlling of the action before the court." *Id.* (*Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979)).

## ARGUMENT

### I.    A STAY WILL CONSERVE JUDICIAL RESOURCES

#### A.    The Ninth Circuit Is Presently Considering Virtually Identical Issues

The Ninth Circuit is presently considering a virtually identical *Anderson-Burdick* challenge to the State's Poll-Close Deadline for signature curing in *Arizona Democratic Party v. Hobbs*, Nos. 20-16759, 20-16766. Plaintiffs themselves noted the overlap in their Complaint (at 19 n.21), and Intervenor-Plaintiffs cited *ADP v. Hobbs* as a basis for granting their motion to intervene, *see* Doc. 50 at 12-13 & nn.2-3.

#### B.    A Stay Will Conserve The Resources Of This Court And The Parties

The State, and Democratic and Republican Intervenors have all spilled considerable ink on this very same *Anderson-Burdick* claim. Between all of the opening, answering, and

---

[6]  https://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2020.pdf.

replies briefs (attached hereto), the briefing runs a total 44,763 words—roughly the length of a mid-sized novel. If amicus briefs and Intervenor-Plaintiffs' supplemental brief are added, that total rises by several thousand additional words. (That briefing also includes a due process claim not formally raised here, although all constitutional claims could potentially be "folded into the Anderson/Burdick inquiry." *Soltysik v. Padilla*, 910 F.3d 438, 449 n.7 (9th Cir. 2018)).

Plainly, the parties have much they can (and have) said on this issue. But if the Ninth Circuit is permitted to decide those issues, those tens of thousands of words can likely be replaced with a simple paragraph or two simply discussing the Ninth Circuit's *binding* resolution of *identical issues*. And whatever the parties would say could easily be rendered instantly obsolete the moment that the Ninth Circuit's decision drops.

Judicial economy will thus be served by avoiding extensive briefing on issues that the Ninth Circuit is likely to resolve conclusively in the near future.

## II.     PLAINTIFFS WILL NOT BE PREJUDICED BY A SHORT STAY

The stay sought by the State will not cause Plaintiffs any meaningful prejudice, and indeed they would likely suffer prejudice from the *absence* of a stay.

### A.     A Short Stay Will Not Prejudice Plaintiffs

Plaintiffs will not suffer any meaningful prejudice from the short stay sought here. Intervenor-Plaintiffs will not suffer any, given that they have an identical claim pending before the Ninth Circuit and will not suffer any cognizable prejudice if this Court does not act expeditiously on their claim-splitting, second-bite-at-the-apple claim.

As to Original Plaintiffs, they have sat on their *Anderson-Burdick* claim far too long to be prejudiced by an economy-promoting 60-day stay. Arizona has permitted mail-in balloting for nearly the entire history of the State, first permitting it in 1918 for soldiers away fighting World War I. *See* 1918 Ariz. Session Laws Ch. 11, §§6-7. In those entire 103 years of voting by mail, the State has *never* permitted curing of non-signatures after election day. And all without suit by anyone for 102 years, until Intervenor-Plaintiffs filed *ADP v. Hobbs*. And even then Original Plaintiffs continued to slumber on their rights for

yet another year until they used the pretext of mere codification of existing law to file suit. And even now, Plaintiffs have not sought a preliminary injunction on their *Anderson-Burdick* claim (unlike the plaintiffs in *ADP v. Hobbs*/Intervenor-Plaintiffs here).

Having challenged a procedure that has been an established feature of Arizona law for over a century, Original Plaintiffs will not suffer any meaningful prejudice from a short stay. Nor, given the absence of any challenge by Original Plaintiffs to the curing procedures of other states—including many with no opportunities to cure non-signatures *whatsoever*— can Original Plaintiffs assert that the claimed right is of such paramount importance that it could not possibly wait a short period while the Ninth Circuit decides *ADP v. Hobbs*.

The absence of prejudice is underscored by the short duration of the stay sought: a mere 60 days. Notably, Original Plaintiffs only filed this action on August 17—*i.e.*, 98 days after the challenged statute was signed into law (and which merely codified existing law in any event) on May 11.

Nor will the delay ultimately resulting from a stay necessarily even be 60 days in total. The Ninth Circuit could easily decide *ADP v. Hobbs* faster than that. Moreover, briefing on the *Anderson-Burdick* claim may proceed much more rapidly once the Ninth Circuit's decision is available. (Indeed, one side or the other will likely need to concede the merits of that claim entirely, obviating the need for any lengthy exchange of briefs.)

### B.   The *Absence* Of Stay May Actually Prejudice Plaintiffs

Indeed, if anything *Plaintiffs* will be prejudiced if the *Anderson-Burdick* signature claim is not stayed. *Hobbs I* is a published decision of the Ninth Circuit, which is binding on this Court. And while the Ninth Circuit has authority to reverse itself, this Court has no such authority to contravene published opinions of that court.

Thus, if Plaintiffs insist upon litigating their *Anderson-Burdick* Signature Claim now, they do so with the following holdings as binding precedent here:

1) The Acts "impose[], at most, a 'minimal' burden,";

2) the State's Poll-Close Deadline is "reasonable,"

3) a post-election cure opportunity "would indeed increase the administrative

burdens on the State," and

4)  "the State has offered a reasonable explanation" for differentiating between "'mismatched' signatures ... [and] missing signatures."

*Hobbs I*, 976 F.3d at 1085-86.

Thus, if Plaintiffs force adjudication of their *Anderson-Burdick* claim in the current posture, it will be with *Hobbs I* as controlling authority that essentially dooms their claim. That seems potentially inefficient to the State as the Ninth Circuit could potentially reverse itself (though it has held (1) the State was "likely to succeed on the merits," (2) "the State's probability of success on the merits is high," and (3) the State had made a "strong showing that its ballot-signature deadline" "reasonably advances [its] important regulatory interests," 976 F.3d at 1085-87).

But if Plaintiffs insist on throwing the State into this briar patch with *Hobbs I* as binding authority, the State will not protest any further beyond this motion.

## CONCLUSION

For the foregoing reasons, this Court should stay adjudication of Plaintiffs' *Anderson-Burdick* challenge to the State's Poll-Close Deadline for 60 days, from November 15, 2021 to January 14, 2022, to be revisited at the beginning of 2022 if the Ninth Circuit has not issued its decision in *ADP v. Hobbs* by then.

1       RESPECTFULLY SUBMITTED this 1st day of November, 2021.

2

3                        **MARK BRNOVICH**
                         **ATTORNEY GENERAL**

4                        By s/ Drew C. Ensign

5                        Drew C. Ensign (No. 25463)
                         Robert J. Makar (No. 33579)

6                        2005 N. Central Ave
                         Phoenix, AZ 85004-1592

7                        Phone: (602) 542-8958

8                        Drew.Ensign@azag.gov

9                        Robert.Makar@azag.gov

10                       *Attorneys for Defendant Mark Brnovich*

11                       *in his official capacity as Attorney General*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, November 1, 2021, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for Filing, which will send notice of such filing to all registered CM/ECF users.

 s/ Drew C. Ensign   <br>Drew C. Ensign

<em>Attorney for Defendant Mark Brnovich<br>in his official capacity as Attorney General</em>