**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, et al., | No. CV-21-01423-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Katie Hobbs, et al., | |
| Defendants. | |

Pending before the Court is the Arizona Attorney General's motion for a partial stay. (Doc. 58.) The motion is fully briefed (Docs. 66, 74) and neither side requested oral argument. For the reasons that follow, the motion is denied.

## BACKGROUND

This action involves a challenge to two Arizona election laws. As alleged in the complaint, "[t]he first is Senate Bill 1485 (the 'Voter Purge Law'), which will purge voters from Arizona's popular permanent early voting list if the voters do not cast a mail-in ballot in two consecutive election cycles. The second is Senate Bill 1003 (the 'Cure Period Law'), which requires voters who submit early ballots without a signature to 'cure' those ballots by 7:00 PM on Election Day . . . ." (Doc. 1 ¶ 1.)[1]

Plaintiffs seek to challenge these laws under three theories. In Count One, Plaintiffs assert that the Voter Purge Law and the Cure Period Law, "individually and collectively,"

---

[1] It appears that some defendants disagree with Plaintiffs' shorthand descriptions of the two laws at issue. For example, the Attorney General refers to the former as the "Periodic Voting Requirement" and the latter as the "Poll-Close Deadline." (Doc. 58 at 3.) For present purposes, the Court will simply use the nomenclature set forth in the complaint.

create an undue burden on the right to vote, in violation of the First and Fourteenth Amendments. (*Id.* ¶¶ 127-35.) In Count Two, Plaintiffs assert that the Voter Purge Law and the Cure Period Law, "individually and collectively, violate the Fourteenth and Fifteenth Amendments because they were adopted for the purpose of denying voters of color full and equal access to the political process." (*Id.* ¶¶ 136-41.) And in Count Three, Plaintiffs assert that the Voter Purge Law and the Cure Period Law, "individually and collectively, violate Section 2 of the Voting Rights Act because they were adopted for the purpose of denying voters of color full and equal access to the political process." (*Id.* ¶¶ 142-45.)

The Attorney General now seeks to stay the briefing and adjudication of part of one of Plaintiff's claims—the challenge in Count One to the Cure Period Law. (Doc. 58.) The Attorney General contends this claim should be stayed because "[a]n essentially identical challenge . . . is currently pending before the Ninth Circuit in *Arizona Democratic Party v. Hobbs* ('*ADP v. Hobbs*'), Nos. 20-16759, 20-16766" and "that decision is likely to be dispositive of" Plaintiffs' claim in Count One as it relates to the Cure Period Law. (*Id.* at 1.) The Attorney General argues a stay will promote efficiency, because the voluminous briefing that would otherwise be required in this case "can likely be replaced with a simple paragraph or two simply discussing the Ninth Circuit's *binding* resolution of *identical* issues" once "the Ninth Circuit's decision drops," and that Plaintiffs would suffer no prejudice from a stay (and, indeed, might suffer harm from the absence of a stay) in part because of "the short duration of the stay sought." (*Id.* at 5-8.) Thus, the Attorney General seeks a stay "for 60 days, from November 15, 2021 to January 14, 2022, to be revisited at the beginning of 2022 if the Ninth Circuit has not issued its decision in *ADP v. Hobbs* by then." (*Id.* at 8.)

Plaintiffs oppose the stay request. (Doc. 66.) As an initial matter, Plaintiffs quarrel with the Attorney General's assertion that the challenge being considered by the Ninth Circuit in *Hobbs* is identical to their challenge to the Cure Period Law in Count One. (*Id.* at 4-5, 8-9.) According to Plaintiffs, the claims are different because (1) their undue-burden

claim in Count One challenges the Cure Period Law not just individually (which is the challenge in *Hobbs*) but also based on the cumulative burden it creates in conjunction with the Voter Purge Law, and (2) the challenge in this lawsuit is "based on the electoral system as it exists *today* in the aftermath of the 2020 election and resulting legislation." (*Id.* at 4-5.) At any rate, Plaintiffs argue that the requested stay would result in inefficiency, because it would necessitate successive rounds of motion-to-dismiss briefing, and that the absence of a stay will not result in inefficiency because "[i]f the Ninth Circuit rules in *Hobbs* in the near term, the parties can submit supplemental briefing at that time on its impact, if any, on this case. The Court is fully capable of applying intervening authority, just as the parties are capable of submitting supplemental briefing." (*Id.* at 5-6.) Finally, Plaintiffs contend they would be prejudiced by the requested stay because there is a significant possibility the stay would extend for more than 60 days—there is no way to predict with certainty when the Ninth Circuit will decide *Hobbs*—and all parties would profit from a final decision far in advance of the upcoming 2022 election. (*Id.* at 6-7.)

Notably, on November 15, 2021—after Plaintiffs filed their response to the stay request but before the Attorney General filed his reply—the Attorney General filed a motion to dismiss the complaint. (Docs. 67 [request for leave to file oversize motion]; Doc. 72 [actual motion, docketed on November 17, 2021].) As for Plaintiffs' challenge to the Cure Period Law in Count One, the Attorney General reiterates that the claim should be stayed but then argues, in the alternative, that the claim should be dismissed "for the reasons explained in the State's briefing in *Hobbs*" and based on the holdings set forth in the Ninth Circuit's stay order in *Hobbs*. (Doc. 72 at 10.)

Several days after filing the motion to dismiss, the Attorney General filed a reply in support of the stay request. (Doc. 74.) First, the Attorney General identifies various reasons why Plaintiffs' challenge to the Cure Period Law in Count One should be deemed "functionally indistinguishable" from the challenge at issue in *Hobbs*. (*Id.* at 1-4, 7.) Alternatively, the Attorney General argues that even if *Hobbs* ends up "not completely controlling as a formal matter, the likelihood that the . . . decision will functionally decide

the claim at issue here is manifestly high." (*Id.*)  Second, the Attorney General argues that, due to the high likelihood of overlap, a stay will promote efficiency.  (*Id.* at 4-6.)  Third, the Attorney General argues that Plaintiffs' prejudice-related arguments miss the mark because "Plaintiffs notably have not requested a preliminary injunction, and it is distinctly implausible to expect that this case could be adjudicated to final judgment substantially in advance of the 2022 general election" and in light of "Plaintiffs' own conduct" in failing to bring an earlier challenge to the Cure Period Law.  (*Id.* at 6.)

## DISCUSSION

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  Nonetheless, "while it is the prerogative of the district court to manage its workload, case management standing alone is not necessarily a sufficient ground to stay proceedings."  *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).  When determining whether to issue a *Landis* stay, courts must weigh "competing interests," which include "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."  *Nken v. Holder*, 556 U.S. 418, 433-434 (2009).  "[I]f there is even a fair possibility that the stay . . . will work damage to some one else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity."  *Dependable Highway*, 498 F.3d at 1066 (citations and internal quotation marks omitted).

Applying these standards, the Court denies the Attorney General's stay request.  First, it is questionable whether the requested stay would promote efficiency.  The Attorney

General has already moved to dismiss the challenge to the Cure Period Law in Count One by incorporating, by reference, his Ninth Circuit briefing in *Hobbs*. That is very efficient. And as Plaintiffs point out in their response, once the merits decision in *Hobbs* is issued, the parties can submit supplemental briefing. The Court is not convinced there would be some significant efficiency gain by instead formally staying the briefing on the challenge to the Cure Period Law in Count One, while allowing the briefing on all of Plaintiffs' other challenges to go forward, and then lifting the formal stay once *Hobbs* is decided.

Second, the open-ended nature of the stay request weighs against granting it. Although the Attorney General requests an "initial" stay of only 60 days, this is a somewhat artificial figure—ultimately, the Attorney General seeks a stay until *Hobbs* is decided. But requests for lengthy, open-ended stays are disfavored. *Dependable Highway*, 498 F.3d at 1066-67 ("The order in this case provides no specific deadline for when the stay will terminate. . . . Thus, in light of the general policy favoring stays of short, or at least reasonable, duration, the district court erred by issuing a stay without any indication that it would last only for a reasonable time."). *Cf. VaporStream, Inc. v. Snap Inc.*, 2019 WL 6218950, *2 (C.D. Cal. 2019) ("The parties request a stay of the action in light of the Federal Circuit's decision in *Arthrex*. But . . . the *Arthrex* decision could potentially be reconsidered and modified by the issuing panel, reviewed by the Federal Circuit *en banc*, and/or reviewed by the Supreme Court in the future. . . . In light of these potential future events, the parties cannot guarantee that their requested stay would be concluded within a reasonable amount of time.").

Third, and in a related vein, Plaintiffs may be prejudiced from the requested stay, because it could interfere with their professed desire to obtain judicial resolution of their challenges in advance of the 2022 election. Although the Attorney General identifies reasons why Plaintiffs' timeframe may be unrealistic—the Court expresses no opinion in that regard—it is enough that Plaintiffs have identified a "fair possibility" of prejudice. *Dependable Highway*, 498 F.3d at 1066. That fair possibility, coupled with the Attorney General's failure to demonstrate a clear case of hardship or inequity, means the stay request

must be denied.

Accordingly,

**IT IS ORDERED** that the Attorney General's stay request (Doc. 58) is **denied**.

Dated this 24th day of November, 2021.

Dominic W. Lanza
United States District Judge

- 6 -