KRISTEN CLARKE
Assistant Attorney General
PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
Civil Rights Division
T. CHRISTIAN HERREN, JR. (AL Bar No. ASB6671R63T)
RICHARD A. DELLHEIM (NY Bar No. 2564177)
CATHERINE MEZA (NY Bar No. 4517066)
SEJAL JHAVERI (NY Bar No. 5396304)
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Phone: (202) 307-2767
catherine.meza@usdoj.gov

*Attorneys for the United States*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MI FAMILIA VOTA, *et al.*,<br><br>Plaintiffs,<br><br>DSCC and DCCC,<br><br>Plaintiff-Intervenors<br><br>v.<br><br>KATIE HOBBS, *et al.*,<br><br>Defendants. | Civil Action No.<br>2:21-CV-01423-DWL |

**STATEMENT OF INTEREST OF THE UNITED STATES**

# INTRODUCTION

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States." This case presents important questions regarding enforcement of Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301 ("Section 2"). Congress has vested the Attorney General with authority to enforce Section 2 on behalf of the United States. *See* 52 U.S.C. § 10308 (d). Accordingly, the United States has a substantial interest in ensuring proper interpretation of Section 2. The United States submits this Statement of Interest for the limited purpose of addressing the allegations necessary to state a discriminatory purpose claim under Section 2 of the Voting Rights Act.

Plaintiffs and Plaintiff-Intervenors have pled plausible claims of purposeful discrimination under Section 2. Defendant Arizona Attorney General Brnovich's motion to dismiss proffers a superficial gloss on intentional discrimination standards and fails to credit or assess correctly the full range of relevant facts alleged. Moreover, Defendant cannot demand evidence at the pleadings stage, especially as to legislative good faith, an inherently fact-intensive issue. Accordingly, the Defendant's Motion to Dismiss (ECF No. 76) should be denied.

The United States expresses no view here on jurisdictional questions, the merits of any claim, nor any other issues aside from those described in this brief.

## PROCEDURAL BACKGROUND

During its 2021 session, the Arizona legislature enacted SB 1003 and SB 1485, both of which altered the state's early voting system. SB1003, which Governor Doug Ducey signed on May 7, establishes a period to cure early ballots submitted without the required signature; it prohibits voters from curing ballot defects after 7 pm on Election Day. SB 1485, which the Governor signed on May 11, establishes procedures for removing voters from the State's Permanent Early Voting List ("PEVL") if they have not cast an early ballot for two consecutive election cycles.

In August 2021, Plaintiffs Mi Familia Vota, Arizona Coalition for Change, Living United for Change in Arizona, and League of Conservation Voters, Inc., filed suit pursuant to the First, Fourteenth, and Fifteenth Amendments of the United States Constitution, and Section 2 of the Voting Rights Act, alleging that SB 1003 and SB 1485 impose an undue burden on the right to vote and were enacted with discriminatory purpose. *See* Mi Famila Vota Compl., ECF No. 1 (hereinafter "MFV Compl."). Subsequently, the motion to intervene filed by the Democratic Senatorial Campaign Committee ("DSCC") and the Democratic Congressional Campaign Committee ("DCCC") was granted and they filed a complaint in intervention with claims mirroring those of the Mi Familia Plaintiffs. *See* DSCC Compl. in Int., ECF No. 55 (hereinafter "DSCC Compl."). Plaintiffs and Plaintiff-Intervenors (collectively "Plaintiffs") seek to enjoin SB 1003 and SB 1485 and obtain a declaration that these provisions violate the

First, Fourteenth, and Fifteenth Amendments, as well as Section 2. MFV Compl. 31; DSCC Compl. 31.

On November 15, Defendants Secretary of State Hobbs and the County Recorders filed answers to the complaint and Defendant Brnovich moved to dismiss.[1] Attorney General's Consolidated Motion to Dismiss Plaintiffs' and Intervenor-Plaintiffs' Complaints, ECF No. 76 (hereinafter "AG's Consol. Mot.").

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require

---

[1] The Intervenor-Defendants, the Republican National Committee, and the National Republican Congressional Committee, filed an answer along with their Motion to Intervene. *See* Intervenor-Defendant Answer, ECF No. 29. The Intervenor-Defendants also join Defendant Brnovich's motion to dismiss including Section III relating to the intentional discrimination claim. *See* Intervenor-Defendant Mot. to Join, ECF No. 73.

the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing the legal sufficiency of a complaint on a Rule 12(b)(6) motion, the court's "[r]eview is limited to the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (alteration in original) (citation omitted); *see also United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (holding that "we will not decide these disputed factual matters at this stage. Instead, we focus only on the sufficiency of [Plaintiffs'] allegations."). Factual challenges to a complaint "have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Lee,* 250 F.3d at 688.

**STATUTORY BACKGROUND**

Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, imposes a "permanent, nationwide ban on racial discrimination in voting." *Shelby Cnty. v. Holder*, 570 U.S. 529, 557 (2013). Section 2(a) prohibits any state or political subdivision from imposing or applying a "voting qualification," a "prerequisite to voting," or a "standard, practice, or procedure" that "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color" or membership in a language minority group. 52 U.S.C. § 10301 (a); *see also* 52 U.S.C. § 10303 (f)(2) (applying protections to language minority groups). For purposes of the Act, "vote" and "voting" include "all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to, registration, . . . casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast." 52 U.S.C. § 10310(c)(1).

Thus, "Section 2 prohibits all forms of voting discrimination," including practices that impair the ability of minority voters to cast a ballot and have it counted on an equal basis with other voters. *Thornburg v. Gingles*, 478 U.S. 30, 45 n.10 (1986); *see also Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2333 (2021).

Like the Fourteenth and Fifteenth Amendments, Section 2 prohibits voting laws and practices adopted with a discriminatory purpose. *See Chisom v. Roemer*, 501 U.S. 380, 394 n.21 (1991); *see also Brnovich*, 141 S. Ct. at 2330. Thus, a showing of intent "sufficient to constitute a violation of the [F]ourteenth [A]mendment" also suffices "to constitute a violation of [S]ection 2." *McMillan v. Escambia Cnty.*, 748 F.2d 1037, 1046 (Former 5th Cir. 1984). Section 2 purpose claims also rely on the assessment of "circumstantial and direct evidence of intent" relevant to constitutional cases. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977); *see also, e.g.*, *Brnovich*, 141 S. Ct. at 2349 (applying *Arlington Heights*). Categories of relevant evidence regarding the purpose of a challenged practice include (1) the impact of the decision; (2) the historical background of the decision, particularly if it reveals a series of decisions undertaken with discriminatory intent; (3) the sequence of events leading up to the decision; (4) whether the challenged decision departs, either procedurally or substantively, from the normal practice; and (5) contemporaneous statements and viewpoints held by decisionmakers. *See Arlington Heights*, 429 U.S. at 266-68; *Fusilier v. Landry*, 963 F.3d 448, 463 (5th Cir. 2020); *Veasey v. Abbott* (*Veasey II*), 830 F.3d 216, 230-31 (5th Cir. 2016) (en banc). "Once racial discrimination is shown to have been a

'substantial' or 'motivating' factor behind enactment of the law, the burden shifts to the law's defenders to demonstrate that the law would have been enacted without this factor." *Hunter v. Underwood*, 471 U.S. 222, 228 (1985).

A violation of Section 2 can also "be established by proof of discriminatory results alone." *Chisom*, 501 U.S. at 404. Section 2(b) lays out the standard for a "results" claim. A violation "is established if, based on the totality of circumstances, . . . the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of [a racial or language minority group] in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." 52 U.S.C. § 10301(b).

## ARGUMENT

### I. Plaintiffs Have Alleged Plausible Discriminatory Purpose Claims

Plaintiffs allege plausible claims of purposeful discrimination under Section 2. MFV Compl. ¶¶ 144-145; *see also* DSCC Compl. ¶¶ 134-136. Both the Mi Familia Vota and the DSCC complaints set forth an array of facts under each category of the *Arlington Heights* intent framework that, when considered together, allege plausible claims that SB 1003 and SB 1485 were enacted with discriminatory purpose, and therefore violate Section 2. *See* MFV Compl. ¶¶ 74-84, 89-94, DSCC Compl. ¶¶ 82-88, 94-100, 118-120 (foreseeable impact of the challenged provisions); MFV Compl. ¶¶ 97-126, DSCC Compl. ¶ 121 (historical background of the challenged provisions); MFV Compl. ¶¶ 48-68, DSCC Compl. ¶¶ 60-78 (sequence of events leading up to enactment of the challenged

provisions); DSCC Compl. ¶¶ 111-117 (procedural departures during the legislative process); MFV Compl. ¶ 67, DSCC Compl. ¶¶ 114-116 (contemporaneous statements and viewpoints held by decisionmakers).

Contrary to Defendant's argument, it is he, not the Plaintiffs, who "improperly attempt[s] to conflate and combine" Section 2's discriminatory purpose and results tests. AG's Consol. Mot. 3, 11-12. Defendant's response simply misconstrues what plaintiffs need to state a Section 2 purpose claim. He emphasizes that Plaintiffs have not argued that the disparate impacts they have alleged "could satisfy the results test," or "explain[ed] how the Signature Requirement and the EVL Periodic Voting Requirement…violate the results test." *Id.* 3, 11. But Plaintiffs were not required to do so. Section 2 purpose or intent claims and Section 2 results claims are two distinct routes to establishing liability.

The level of effect a plaintiff must plead and prove differs materially between the two types of claims. Section 2 "results" claims require more than showing just that the challenged practice produces "some disparity in impact." *Brnovich*, 141 S. Ct. at 2339. Rather, a court must consider the totality of circumstances to determine whether the challenged law "interacts with social and historical conditions" to result in denying minority voters an equal opportunity to participate in the political process and elect representatives of their choice. *Gingles*, 478 U.S. at 47. It has long been settled that,

since the 1982 amendments to Section 2, plaintiffs can bring discriminatory results claims without having to prove discriminatory purpose. *Chisom*, 501 U.S. at 404.[2]

The reverse is also true. Section 2 has always prohibited, and continues to prohibit, intentional racial discrimination, and private plaintiffs who bring a Section 2 discriminatory purpose claim need not also plead or prove a Section 2 results claim. All they need show is that the challenged practice has *some* impact on them.

The legislative history of the 1982 amendments to Section 2 confirms that the two claims are separate and distinct:

> The amendment to the language of Section 2 is designed to make clear that plaintiffs need not prove a discriminatory purpose. . . . Plaintiffs must *either* prove such intent, *or alternatively*, must show that the challenged system or practice, in the context of all the circumstances in the jurisdiction in question, results in minorities being denied equal access to the political process.[3]

S. Rep. No. 97-417 at 27 (1982) (emphasis added; footnote omitted); *see Chisom*, 501 U.S. at 394.

The Supreme Court in *Brnovich* recently underscored that point. It treated the plaintiffs' Section 2 results claim and their Section 2 purpose claim as distinct, discussing the two claims in separate sections of its opinion. *Compare* 141 S. Ct. at 2346-48

---

[2] The case upon which Defendant solely relies, *Davis v. Bandemer*, 478 U.S. 109 (1986), involved a political gerrymandering claim under the Equal Protection Clause. It did not purport to explicate Section 2 standards.

[3] This report is "the authoritative source for legislative intent" concerning the 1982 amendments to the Voting Rights Act. *Gingles*, 478 U.S. at 43 n.7; *see also Brnovich*, 141 S. Ct. at 2332-33 (relying on the report).

(addressing the plaintiffs' results claim) with *id.* at 2348-50 (addressing plaintiffs' purpose claim). And with respect to the purpose claim, the Court applied the longstanding *Arlington Heights* framework. *Id.* at 2334 (noting plaintiffs brought a discriminatory purpose claim under Section 2); *id.* at 2348-49 (discussing *Arlington Heights*). And, of course, the two claims are distinct. *See McMillan,* 748 F.2d at 1046 ("Congress intended that fulfilling *either* the more restrictive intent test *or* the results test would be sufficient to show a violation of [S]ection 2.") (emphasis added); *Garza v. Cnty. of Los Angeles*, 918 F.2d 763, 766 (9th Cir. 1990) ("Congress amended the Voting Rights Act in 1982 to add language indicating that the Act forbids not only intentional discrimination, but also any practice shown to have a disparate impact on minority voting strength").

Plaintiffs' complaints allege purposeful discrimination under Section 2. MFV Compl. ¶¶ 127-145; DSCC Compl. ¶¶ 115-141. They do not plead a Section 2 results claim. Yet, consistent with *Arlington Heights,* both complaints appropriately allege the known and foreseeable disproportionate impact of the challenged provisions that, when considered with Plaintiffs' other factual allegations under the *Arlington Heights* framework, suffice to plead a plausible claim of purposeful discrimination. Plaintiffs need not further allege nor must they prove that the impact of the challenged provisions also satisfies Section 2's discriminatory results test.

While Defendant's Rule 12 Motion acknowledges the *Arlington Heights* framework, AG's Consol. Mot. 12-13, he disregards the full range of Plaintiffs' factual allegations relevant to that framework. Courts "[d]etermining whether invidious

discriminatory purpose was a motivating factor" behind a facially neutral law must engage in a "sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204, 221 (4th Cir. 2016) (citing *Arlington Heights*, 429 U.S. at 266-67). Here, Defendant's cursory intent inquiry notes select facts in isolation, ignores others, and concludes summarily that "[n]one of Plaintiffs' allegations suffice to establish the necessary context to plausibly infer discriminatory motive." AG's Consol. Mot. 13.

Regarding Plaintiffs' allegations related to the known and foreseeable disparate impacts of the challenged provisions, Defendant argues that Plaintiffs rely almost exclusively on these allegations and that disparate impact or "awareness of disparate impact" alone does not support a cognizable intentional discrimination claim. AG's Consol. Mot. 12. Defendant further states that "[i]nstead, the 'proof of racially discriminatory *intent or purpose* is required,' not proof of discriminatory impact, to establish purposeful discrimination." AG's Consol. Mot. 12 (quoting *Arlington Heights*, 429 U.S. at 265).[4]

---

[4] Defendant's quotation from *Arlington Heights* is incomplete. The Court's full statement was: "Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination. [citing *Washington v. Davis*, 426 U.S. 229 (1976)] Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Arlington Heights*, 429 U.S. at 265. Of course, as the opinion makes clear, proof of racially discriminatory purpose can include both direct and circumstantial evidence, including evidence of disproportionate impact. *Id*. at 266.

Not only does Defendant's argument mischaracterize *Arlington Heights*, it also misapprehends Section 2 purpose claims and the *Arlington Heights* intent framework. A review of Section 2 purpose claims relies on an assessment of circumstantial and direct evidence of discriminatory purpose. *Arlington Heights*, 429 U.S. at 265-68. Evidence of disparate impact is but one category in a non-exhaustive list of evidentiary factors that a court can consider to determine whether discriminatory purpose motivated the change or provision at issue. *Id*. at 266-67 (stating that "the impact of the official action whether it 'bears more heavily on one race than another,' may provide an important starting point" in determining whether invidious discriminatory purpose was a motivating factor).

Plaintiffs' allegations regarding the foreseeable discriminatory impact SB 1003 and SB 1485 will have on Native American, Latino, and Black voters, *see e.g*. MFV Compl. ¶¶ 3, 67, 77-84, 90-93; DSCC Compl. ¶¶ 95-97, 99, 119-120, when viewed as a whole, raise a "strong inference that the adverse effects were desired," weighing in favor of a finding of discriminatory purpose. *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 n.25 (1979). Yet, Plaintiffs do not contend that impact evidence alone establishes discriminatory intent, but rather include these allegations as one evidentiary component establishing the intent behind the enactment of SB 1003 and SB 1485. *See* MFV Compl. ¶¶ 144-145.

Defendant's ready dismissal of additional categories of evidence under the *Arlington Heights* framework also cannot defeat Plaintiffs' discriminatory purpose claims at the motion to dismiss phase. As to Plaintiffs' allegations concerning historical

discrimination in Arizona and the historical background of the challenged provisions, Defendant faults Plaintiffs for "spend[ing] an inordinate amount of time on historical background," and "not connect[ing] this history to the challenged provisions or the process of enacting them." AG's Consol. Mot. 13. To the contrary, however, Plaintiffs' allegations include a comprehensive accounting of Arizona's history of racial discrimination, MFV Compl. ¶¶ 97-99, 112-120; of discrimination in voting and voter suppression, MFV Compl. ¶¶ 100-111; the effects of the history of discrimination on voting in the present day, MFV Compl. ¶¶ 121-126, as well as how that history and current political undercurrents influenced the sequence of events leading up to the enactment of SB 1003 and SB 1485, DSCC Compl. ¶¶ 60-76, MFV Compl. ¶¶ 48-68; which are all particularly relevant to the discriminatory intent inquiry. *McCrory*, 831 F.3d at 226-227 (stating that law's purpose could not be properly understood without contextual facts influencing the enactment of the law at issue, as well as historical background evidence).

Defendant also dismisses Plaintiffs' allegations related to contemporaneous statements by legislators, DSCC Compl. ¶¶ 114-117; MFV Compl. ¶¶ 67-68, as "irrelevant" because "the question is not the purpose of [one legislator] but the purpose of the legislature as a whole." AG's Consol. Mot. 15. But the Supreme Court has instructed, that because "[o]utright admissions of impermissible racial motivation are infrequent[,] ... plaintiffs often must rely upon other evidence," including the broader context surrounding passage of the legislation. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). Moreover, "[i]n a vote denial case such as the one here, where the plaintiffs allege

that the legislature imposed barriers to minority voting, this holistic approach is particularly important, for '[d]iscrimination today is more subtle than the visible methods used in 1965.'" *McCrory*, 831 F.3d at 221 (quoting H.R. Rep. No. 109-478, at 6 (2006)).

Plaintiffs have presented an array of evidence and facts sufficient to give fair notice of a plausible claim at this stage of the litigation. And while impact evidence is relevant to their discriminatory purpose claim, Plaintiffs need not allege or prove a Section 2 discriminatory results claim to state a purpose claim. Defendant's arguments to the contrary are incorrect. Accordingly, Defendant's Motion to Dismiss should be denied as to the Plaintiffs' discriminatory purpose claim.

## II. Defendants Cannot Succeed on a Motion to Dismiss by Requiring Evidence Sufficient to Overcome Any Presumption of Legislative Good Faith

In addition to misapplying the *Arlington Heights* framework, Defendant's analysis appears to demand evidence at the motion to dismiss phase sufficient to overcome the "presumption of legislative good faith." *See* AG's Consol. Mot. 12-13. But whether that presumption stands or yields is an inherently fact-based question best suited for the merits stage of litigation. *See Abbott v. Perez*, 138 S. Ct. 2305, 2325 (2018); *see Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013) (en banc) (declining to resolve factual disputes at the motion to dismiss phase); *Am. Bank of the N. v. Mouilso*, No. CV-16-08207-PCT-GMS, 2018 WL 2065066, at *1 (D. Ariz. May 3, 2018) (denying a motion to dismiss because "factual disputes are not resolved in a motion to dismiss"). Instead, a court addressing a motion to dismiss must assume the facts alleged in the complaint are

true, must draw all reasonable inferences from those facts in favor of the plaintiff, and must ignore contrary factual assertions made by the movant. Accordingly, Plaintiffs have stated a claim for intentional discrimination under *Arlington Heights.* Whether evidence adduced during discovery suffices to prove that claim, and thus overcome any presumption of legislative good faith, is an issue for the merits phase of the litigation. But Plaintiffs need not prove their claim now at the motion to dismiss stage.

Moreover, the Defendant's argument that the legislature may have had other motivations, *see* AG's Consol. Mot. 13, demonstrates why application of any "presumption of good faith" inherently requires the resolution of factual disputes that are properly considered only after discovery. Determining legislative motivations is a complex, fact-intensive undertaking. *See Arlington Heights*, 429 U.S. at 265 ("Rarely can it be said that a legislature or administrative body operating under a broad mandate made a decision motivated solely by a single concern, or even that a particular purpose was the 'dominant' or 'primary' one."). Most of the relevant facts about elections and the purposes animating SB 1003 and SB 1485 are possessed solely by the State, its counties, and other governmental actors. Discovery may help illuminate those purposes. But at this stage, the range of facts alleged by the Plaintiffs adequately and plausibly plead claims for purposeful discrimination. Those facts, taken as true, plausibly suggest an entitlement to relief. Accordingly, Defendant's motion to dismiss should be denied as to Plaintiffs' discriminatory purpose claim.

## CONCLUSION

For the reasons set out above, Defendant Attorney General Brnovich's Motion to Dismiss Plaintiffs' claims under Section 2 of the Voting Rights Act should be denied.

Date: November 30, 2021

KRISTEN CLARKE
Assistant Attorney General

PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
Civil Rights Division

*<u>/s/ Catherine Meza</u>*
T. CHRISTIAN HERREN, JR.
RICHARD A. DELLHEIM
CATHERINE MEZA
SEJAL JHAVERI
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Phone: (202) 307-2767
Fax: (202) 307-3961
catherine.meza@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2021, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send notification of this filing to counsel of record.

*/s/ Catherine Meza*
Catherine Meza
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, D.C. 20530
(202) 307-2767
catherine.meza@usdoj.gov