**MARK BRNOVICH**
**ATTORNEY GENERAL**
Joseph A. Kanefield (No. 15838)
*Chief Deputy & Chief of Staff*
Brunn ("Beau") W. Roysden III (No. 28698)
*Division Chief*
Drew C. Ensign (No. 25463)
*Deputy Solicitor General*
Robert J. Makar (No. 33579)
*Assistant Attorney General*
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 542-5200
Drew.Ensign@azag.gov

*Attorneys for Mark Brnovich,*
*Arizona Attorney General*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Mi Familia Vota, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>Katie Hobbs, et al.,<br><br>Defendants. | Case No: 2:21-cv-01423-DWL<br><br>**ATTORNEY GENERAL'S RULE 54(B) MOTION TO ENTER JUDGMENT ON DISMISSED CLAIMS** |

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

LEGAL STANDARD .......... 3

BACKGROUND .......... 4

ARGUMENT .......... 5

I. THIS COURT SHOULD ENTER JUDGMENT ON THE NON-SIGNATURE CURING CLAIMS .......... 5

A. This Court's June 24 Order Is A Final Judgment As To All SB 1003 Claims Under Rule 54(b) .......... 6

B. There Is "No Just Reason To Delay" Entering Judgment On The Non-Signature Curing Claims .......... 7

II. THIS COURT SHOULD ALSO ENTER JUDGMENT ON PLAINTIFFS' *ANDERSON-BURDICK* CHALLENGE TO THE PERIODIC VOTING REQUIREMENT .......... 9

A. The Dismissal Is A Final Judgment Under Rule 54(b) .......... 9

B. Entry Of Judgment On Plaintiffs' *Anderson-Burdick* Claim Is Warranted .......... 10

CONCLUSION .......... 11

## TABLE OF AUTHORITIES

**CASES**

*ADP v. Hobbs*,
18 F.4th 1179 (9th Cir. 2021)....1, 7, 8

*Briehler v. City of Miami*,
926 F.2d 1001 (11th Cir. 1991)....7

*Curtiss-Wright Corp. v. General Electric Co.*,
446 U.S. 1 (1980)....3, 4, 6, 7, 10

*Dannenberg v. Software Toolworks Inc.*,
16 F.3d 1073 (9th Cir. 1994)....3

*Democratic Exec. Comm. of Fla. v. Lee*,
915 F.3d 1312 (11th Cir. 2019)....10

*Frank v. Walker*,
768 F.3d 744 (7th Cir. 2014)....10

*Gelboim v. Bank of Am. Corp.*,
574 U.S. 405 (2015)....3

*Jones v. Governor of Fla.*,
15 F.4th 1062 (11th Cir. 2021)....10

*Lopez v. City of Needles*,
95 F.3d 20 (9th Cir.1996)....7

*Mays v. LaRose*,
951 F.3d 775 (6th Cir. 2020)....10

*Mi Familia Vota v. Hobbs*,
No. CV-21-01423, 2022 WL 2290559 (D. Ariz. June 24, 2022)....1, 4, 5

*Noel v. Hall*,
568 F.3d 743 (9th Cir. 2009)....4

*Pers. Adm'r of Massachusetts v. Feeney*,
442 U.S. 256 (1979)....11

*Sheehan v. Atlanta Int'l Ins. Co.*,
812 F.2d 465 (1987)....4

*Texaco, Inc. v. Ponsoldt*,
939 F.2d 794 (9th Cir. 1991) .......... 4, 11

*WMX Techs., Inc. v. Miller*,
104 F.3d 1133 (9th Cir. 1997) .......... 7

*Wood v. GCC Bend, LLC*,
422 F.3d 873 (9th Cir. 2005) .......... 4, 8, 11

**RULES**

Federal Rule of Civil Procedure 54(b) .......... 1, 3

## INTRODUCTION

Following this Court's dismissal of the majority of Plaintiffs' claims, and Plaintiffs' refusal to amend their Complaint, this action now presents a paradigmatic case for entry of partial judgment under Rule 54(b). In particular, this Court has dismissed *all* of Plaintiffs' challenges to the State's Poll-Close Deadline for curing failures to sign ballot affidavits. Those claims are now conclusively resolved since there is nothing left pending for this Court to decide. And those claims are entirely independent of the sole remaining claims: intentional-discrimination based challenges to the Periodic Voting Requirement of SB 1485, which has nothing to do with non-signature curing at all.

All of the requirements for entry of judgment on those claims are thus satisfied here. Such relief is further warranted given the equities and interests of judicial economy here. The State has already endured—and prevailed completely in—a challenge to the *exact same* Poll-Close Deadline presented here. *See Arizona Democratic Party v. Hobbs ("ADP")*, 18 F.4th 1179 (9th Cir. 2021). Despite that suit, Plaintiffs' insisted upon this Court deciding a strikingly similar challenge—and quite properly lost on it. *See Mi Familia Vota v. Hobbs*, No. CV-21-01423, 2022 WL 2290559, at *11 (D. Ariz. June 24, 2022) (describing the *ADP* precedent as the "elephant in the room," which involved a challenge to a "provision … that] was identical in substance" to that at issue here (comma omitted)). And despite being given an opportunity to amend their complaints—as well as (1) more than a century of evidence from Arizona requiring signatures for mail-in ballots and adhering to the Poll-Close deadline for the entirety of that hundred-plus-year period and (2) access to all of the discovery from *ADP*—Plaintiffs apparently could not find anything that justified amending their Complaint.

Because Plaintiffs have now had two full opportunities here to plead challenges to the Poll-Close Deadline, and explicitly refused the second, "there is no just reason for delay" of entering judgment on the non-signature curing claims. Fed. R. Civ. P. 54(b). The Attorney General's (the "State's") request for such judgment should therefore be granted.[1]

[1] Republican Intervenors join this request. Both Plaintiffs and Intervenor-Plaintiffs have indicated that they oppose this request.

That result is particularly appropriate given the nature of Plaintiffs' assertions here (and in *ADP*). Specifically, Plaintiffs contend that the Poll-Close Deadline causes them irreparable harm and unconstitutionally "disenfranchise countless eligible, lawful voters." Doc. 50-1 at 3; *accord* Doc. 92 at 13. But despite those allegations, Plaintiffs explicitly refused to seek a preliminary injunction by this Court's April 22, 2022 deadline, thereby *ensuring* that such alleged harms/"disenfranchisements" will occur in the 2022 general election (as they already now have for the 2022 primary election). And if Plaintiffs are now successful in opposing the State's Rule 54(b) request, they will further ensure that such harms/disenfranchisements will not only occur with near-absolute certainty for the 2024 elections, but very likely for the 2026 elections as well.

If Plaintiffs believe that the Poll-Close Deadline causes irreparable harm and mass disenfranchisement, their current opposition is rather inexplicable and constitutes voluntary, gratuitous, and potentially-preventable infliction of such harms on their own voters. The inherent contradictions in Plaintiffs' positions thus render their current opposition to Rule 54(b) relief distinctly inequitable. Nor would Plaintiffs be prejudiced by being provided an *earlier* opportunity for appellate review of the merits of their own claims—should they even seek such review. (The *ADP* plaintiffs neither sought rehearing en banc in the Ninth Circuit nor certiorari from the Supreme Court.)

The State also seeks entry of judgment on Plaintiffs' *Anderson-Burdick* challenge to the State's Periodic Voting Requirement. Following Plaintiffs' refusal to amend their complaint to re-assert such a challenge, this Court has now conclusively adjudicated that claim. That claim is also substantially independent from Plaintiffs' remaining intentional-discrimination challenges to the requirement. The first claim is completely or overwhelmingly *objective*—focusing on what burdens the challenged procedure actually imposes. The latter claims are completely *subjective*, turning on the intent of the Legislature when it enacted SB 1485, rather than how it objectively operates in practice. The claims are thus sufficiently distinct to warrant entry of judgment under Rule 54(b).

The State acknowledges that certification on this claim is not the slam-dunk case that the non-signature curing claims present. But it nonetheless satisfies all of the requirements of Rule 54(b) and the State therefore seeks certification of that *Anderson-Burdick* claim as well. At a bare minimum, however, this Court should enter judgment on the non-signature curing claims even if it concludes that entry of judgment on the dismissed Periodic Voting Requirement *Anderson-Burdick* claim is unwarranted.

## LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) authorizes district courts to enter final judgment as to fewer than all claims for relief where "there is no just reason for delay." Rule 54(b) "relaxes 'the former general practice that, in multiple claims actions, *all* the claims had to be finally decided before an appeal could be entertained from a final decision upon any of them.'" *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 409 (2015) (citation omitted). The rule was adopted "to avoid the possible injustice of delaying judgment on a distinctly separate claim pending adjudication of the entire case." *Id.* (cleaned up).

The decision whether to certify a final judgment under Rule 54(b) is "exclusively within the discretion of the district court." *Dannenberg v. Software Toolworks Inc.*, 16 F.3d 1073, 1078 (9th Cir. 1994); *see also Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 10 (1980). This Court's inquiry under Rule 54(b) has two steps. *Curtiss-Wright Corp.*, 446 U.S. at 7-8.

First, the court must determine that the court's resolution of a claim is a "final judgment." *Id.* at 7. To qualify, "It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* (citations omitted).

Second, this Court must determine whether "there is any just reason for delay" of entering judgment. *Id.* at 8. This evaluation "must take into account judicial administrative interests as well as the equities involved." *Id.*

Relevant factors include "whether certification would result in unnecessary appellate review; whether the claims finally adjudicated were separate, distinct, and

independent of any other claims; whether review of the adjudicated claims would be mooted by any future developments in the case; [and] whether an appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Wood v. GCC Bend, LLC*, 422 F.3d 873, 878 n.2 (9th Cir. 2005) (citing *Curtiss-Wright Corp.*, 446 U.S. at 10-11).

Once the court has evaluated the "judicial concerns," it is accorded "substantial deference" to evaluate equitable concerns such as prejudice and delay. *Noel v. Hall*, 568 F.3d 743, 747 (9th Cir. 2009). The Ninth Circuit has approved of the "present trend" in Rule 54(b) in favor of affording "greater deference to the district court's decision to certify under Rule 54(b)." *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991). In general, "Rule 54(b) certification is proper if it will aid 'expeditious decision' of the case." *Id.* at 797 (quoting *Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 468 (1987)).

**BACKGROUND**

The background of this case is amply set forth in this Court's June 24, 2022 order, which the State will not belabor here. *See generally Mi Familia Vota v. Hobbs*, No. CV-21-01423, 2022 WL 2290559, at *1 (D. Ariz. June 24, 2022).

As relevant here, Plaintiffs' Complaints challenge "two voting laws that were enacted by the Arizona legislature following the 2020 election. The first is Senate Bill 1485, which provides that voters who do not cast a mail-in ballot in two consecutive election cycles must be removed from Arizona's permanent early voting list. The second is Senate Bill 1003, which clarifies that the deadline for a voter to attempt to 'cure' a missing signature on an early ballot is 7:00 PM on election day." *Id.* at *1.

Plaintiffs' challenged both laws under two broad theories. First, Plaintiffs alleged that SB 1003 and SB 1485 "violate the First and Fourteenth Amendments because they create an undue burden on the right to vote." *Id.* The "*Anderson-Burdick* framework governs" these claims. *Id.* at *10.

Second, Plaintiffs alleged that both laws were "enacted with a discriminatory purpose" and therefore violate the Fourteenth and Fifteenth Amendments (Count Two)

and section 2 of the Voting Rights Act (Count Three). *Id.* at *1, *22. The inquiry for both counts is identical. *Id.* at *26-27.

Thus, broadly speaking Plaintiffs claims divide into four categories: (1) two *Anderson-Burdick* challenges, one each against SB 1003 and SB 1485 and (2) two intentional discrimination challenges, also one each against both statutes.

This Court dismissed both *Anderson-Burdick* claims under Rule 12(b)(6) for failure to state cognizable claims. *Mi Familia Vota*, 2022 WL 2290559, at *18, *22. It also dismissed Plaintiffs' intentional-discrimination challenge[2] to SB 1003 under Rule 12(b)(1) for lack of Article III standing (specifically, redressability). *Id.* at *44-49. This Court denied the State's motion to dismiss Plaintiffs' intentional discrimination challenge to SB 1485, however. *Id.* at *59.

This Court gave Plaintiffs "21 days" (until July 15, 2022) to "file amended complaints" if they so desired. *Id.* at *32. Plaintiffs sought an extension until July 29 for that deadline, which the State did not oppose and this Court granted. *See* Docs. 159, 162. On July 29, Plaintiffs filed a notice explaining that "they will not amend their complaint at this time," although they purport to "reserve their right to seek leave of Court to amend their complaint at a later date as permitted under the Federal Rules of Civil Procedure and other applicable law." Doc. 168.

This motion follows Plaintiffs' declination to amend their Complaints. The only claim that this Court has not resolved and thus is now pending is Plaintiffs' intentional-discrimination challenge to SB 1485. This motion seeks entry of judgment under Rule 54(b) on the claims that this Court dismissed in its June 24, 2022 order.

## ARGUMENT

### I. THIS COURT SHOULD ENTER JUDGMENT ON THE NON-SIGNATURE CURING CLAIMS

Both requirements for a Rule 54(b) judgment on Plaintiffs' challenges to SB 1003 are present here: those claims (1) are independently cognizable claims for relief that this Court has conclusively resolved, and (2) are readily separable from the remaining claim,

[2] Although Plaintiffs brought two counts of intentional-discrimination claims, this motion sometimes refers to them in the singular given their analytical similarity.

with both considerations of both judicial economy and equity militating in favor of granting this motion.

**A. This Court's June 24 Order Is A Final Judgment As To All SB 1003 Claims Under Rule 54(b)**

This Court's resolution of Plaintiffs' challenges to SB 1003 (*i.e.*, their "non-signature curing claims") is a "final judgment" for purposes of Rule 54(b). The Supreme Court has held that to so qualify, the court's resolution of claims "must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright Corp.*, 446 U.S. at 7 (citations omitted). Here both requirements are satisfied.

*First*, Plaintiffs' *Anderson-Burdick* and intentional discrimination challenges to SB 1003 were each distinct "claim[s] for relief." *Id.* If Plaintiffs had prevailed on either of them, it would have entitled them to relief vis-à-vis SB 1003. Neither claim was dependent on any other claim, and Plaintiffs could have obtained relief by prevailing on either claim. This Court's resolution of these claims are thus "judgments" for purposes of Rule 54(b).

*Second*, following Plaintiffs' refusal to amend their complaints, this Court's resolution of each of those claims is now "'an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Id.* (citation omitted). No further proceedings are contemplated—or indeed authorized—as to either claim. This Court's resolution of those claims is now an "ultimate disposition" with nothing left to decide.

While Plaintiffs have purported to "reserve their right to seek leave of Court to amend their complaint at a later date," Doc. 168, this Court gave them a specific deadline by which to file amended complaints. And even after receiving an unopposed extension of time to do so, Plaintiffs still refused to amend their Complaints. The theoretical possibility that Plaintiffs might file an untimely request for leave to amend their complaints—after expressly declining to do so by the extended deadline by the Court—does not defeat entry of judgment under Rule 54(b). *Cf. Briehler v. City of Miami*, 926 F.2d 1001, 1003 (11th

Cir. 1991) ("[A]n order dismissing a complaint with a specified time for amendment became final at the time the amendment period expired.").[3]

This Court's dismissal of Plaintiffs' non-signature curing claims are thus "final judgments" for purposes of Rule 54(b).

### B. There Is "No Just Reason To Delay" Entering Judgment On The Non-Signature Curing Claims

There is also no just reason to delay entry of judgment under Rule 54(b) here. The signature claims are completely "separable from the others remaining to be adjudicated," *Curtiss-Wright Corp.*, 446 U.S. at 8: those claims challenge an entirely different statute regulating a wholly different electoral requirement (*i.e.*, signing ballot affidavits by when polls close rather than failing to vote once every four years and to respond to a notice). There simply is no meaningful overlap between the two statutes, and Plaintiffs' challenges could easily have been brought as two suits. Indeed, a strikingly similar challenge *was* brought as a standalone suit and litigate to final judgment, appeal, and refusal to seek rehearing en banc and Supreme Court review. *See ADP*, 18 F.4th at 1195-96.

Because the Poll-Close Deadline and Periodic Voting Requirements are independent electoral requirements, there is no danger that an "appellate court would have to decide the same issues more than once." *Id.* Instead, the sufficiency of Plaintiffs' pleadings with respect to Plaintiffs' signature curing claims is an issue that the Ninth Circuit will only need to address at most once (assuming Plaintiffs appeal at all), and resolution of it will not depend on how this Court resolves Plaintiffs' remaining challenge to the Periodic Voting Requirement/SB 1485.

There similarly is no danger that "review of the adjudicated claims would be mooted by any future developments in the case." *Wood*, 422 F.3d at 878 n.2. Because the

[3] As the Ninth Circuit has explained, where a court grants leave to amend, "'*Unless a plaintiff files in writing a notice of intent not to file an amended complaint*, such dismissal order is not an appealable final decision.'" *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1135–36 (9th Cir. 1997) (en banc) (quoting *Lopez v. City of Needles*, 95 F.3d 20, 22 (9th Cir.1996)). Here, Plaintiffs *did* provide just such "notice of intent not to file an amended complaint." *Id.*

sole remaining claim relates to the early voting list/Periodic Voting Requirement, there is no relief that could be granted that would moot Plaintiffs' claims for relief as to the wholly separate Poll-Close Deadline for curing initial failures to sign ballot affidavits.

Equitable considerations also strongly support the State's request here. The State has already been required to litigate a challenge to its Poll-Close Deadline for curing initial failures to sign ballot affidavits—and won. *See ADP*, 18 F.4th at 1195-96. That challenge was already extremely delayed: being filed 101½ years after the State began permitting mail-in balloting without *ever* permitting post-election curing of non-signatures in that entire time. This suit is *even more* tardy—with Original Plaintiffs sitting silently on the sidelines while the State successfully defended its Poll-Close Deadline through final judgment and successful appeal in *Arizona Democratic Party*. Moreover, Intervenor-Plaintiff DSCC quite literally challenged the same procedure twice in 16 months.

The State is entitled to finality and certainty as to the validity of its Poll-Close Deadline—which *Arizona Democratic Party v. Hobbs* opinion *should* have provided, but failed to do. That uncertainty should not be perpetuated even further by denying a 54(b) judgment and thereby delaying final resolution of this second round of challenges to the State's Poll-Close Deadline by another half decade or more.

Entering judgment under Rule 54(b) is particularly appropriate as this Court specifically gave Plaintiffs an opportunity to amend their Complaints at the specific request of the State, and then further extended the deadline to do so with the State's consent. Plaintiffs thus had two full opportunities to plead a valid claim, including one with the benefit of this Court's opinion specifically explaining the deficiencies of the first iteration. Having expressly refused this second opportunity by the extended deadline set by this Court, Plaintiffs should not be able to "reserve the right" to amend indefinitely—thereby hang a proverbial Sword of Damocles over the State's non-signature curing process for many years to come. Plaintiffs' refusal to amend their Complaints by the extended deadline set by the Court should have consequences. Making Rule 54(b) relief appropriate is one of them.

In addition, granting this request would not prejudice Plaintiffs—while denial actually could do so if their allegations are taken at face value. Plaintiffs assert that the Poll-Close Deadline causes them irreparable harm. Doc. 92 at 4. But Plaintiffs refused to file a motion for a preliminary injunction by the April 22, 2022 deadline set by this Court. *See* Doc. 85. Absent a 54(b) judgment that Plaintiffs now oppose, the Poll-Close Deadline will almost certainly be in place not only for the 2024 elections, but likely the 2026 elections as well: Without 54(b) judgment now, Plaintiffs could not even appeal the dismissal of their claims on the pleadings until this Court fully resolves the remaining challenge to the unrelated Periodic Voting Requirement. Then on appeal, even if they prevailed (which likely will take 12-18 months to brief, argue, and receive a decision), that would only grant them a remand to this Court for discovery to begin again. If Plaintiffs truly believe that the Poll-Close Deadline causes them irreparable harm and unlawfully disenfranchises voters, it is difficult to understand why they would voluntarily and gratuitously accept such harms for multiple election cycles when the State was offering an alternative option through Rule 54(b).

For all of these reasons, there is no just reason to withhold entry of judgment under Rule 54(b). Indeed, considerations of judicial economy, equity, and finality all affirmatively support entry of judgment now.

## II. THIS COURT SHOULD ALSO ENTER JUDGMENT ON PLAINTIFFS' *ANDERSON-BURDICK* CHALLENGE TO THE PERIODIC VOTING REQUIREMENT

Although admittedly a closer case, the State respectfully submits that entry of judgment under Rule 54(b) is appropriate for Plaintiffs' *Anderson-Burdick* challenge to the Periodic Voting Requirement.

### A. The Dismissal Is A Final Judgment Under Rule 54(b)

This Court's dismissal of Plaintiffs' *Anderson-Burdick* challenge to the Periodic Voting Requirement is also a final judgment under Rule 54(b). That claim was independently "a cognizable claim for relief." *Curtiss-Wright Corp.*, 446 U.S. at 7 (citations omitted). If Plaintiffs had prevailed on it, it could have invalidated SB 1485

entirely regardless of how their intentional-discrimination challenge was resolved. And following Plaintiffs' refusal to amend that *Anderson-Burdick* claim, this Court's order is "'an ultimate disposition of [that] individual claim entered in the course of a multiple claims action.'" *Id.* (citation omitted). Both "final judgment" requirements are thus met.

### B. Entry Of Judgment On Plaintiffs' *Anderson-Burdick* Claim Is Warranted

Although not as clear-cut as the non-signature curing claims, there is also no just reason to delay entry of judgment on Plaintiffs' *Anderson-Burdick* challenge to the Periodic Voting Requirement.

The issues presented by that *Anderson-Burdick* claim are largely distinct from Plaintiffs' intentional-discrimination challenge to that requirement. This Court's inquiry as to the former is objective. States thus can rely on "post hoc rationalizations," can "come up with [their] justifications at any time," and have no "limit[s]" on the type of "record [they] can build in order to justify a burden placed on the right to vote." *Mays v. LaRose*, 951 F.3d 775, 789 (6th Cir. 2020).[4] *Anderson/Burdick* thus treats the State's interests as a "legislative fact," rather than requiring inquiry into subjective intent. *Frank v. Walker*, 768 F.3d 744, 750 (7th Cir. 2014). Put differently, it matters little (if at all) for purposes of *Anderson-Burdick* doctrine what a legislature actually thought; what matters is what objective effect the statute actually has.

By contrast, the intentional discrimination claims are solely subjective, as the claims rise or fall based on what the Legislature's *intent* was, rather than the actual objective burdens imposed by the statute. *See*, *e.g.*, *Pers. Adm'r of Massachusetts v.*

---

[4] *Accord Jones v. Governor of Fla.*, 15 F.4th 1062, 1066 (11th Cir. 2021) (distinguishing "between 'a traditional Equal Protection Clause claim,' which 'is cognizable in the voting context if the plaintiff alleges that discriminatory animus motivated the legislature to enact a voting law,'" and *Anderson-Burdick* claims (citation omitted)); *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1319 (11th Cir. 2019) ("To establish an undue burden on the right to vote under the *Anderson-Burdick* test, Plaintiffs need not demonstrate discriminatory intent behind the signature-match scheme or the notice provisions because we are considering the constitutionality of a generalized burden on the fundamental right to vote, for which we apply the *Anderson-Burdick* balancing test instead of a traditional equal-protection inquiry.").

*Feeney*, 442 U.S. 256, 279 (1979) (Intentional discrimination claim requires that the "state legislature, selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group").

There is thus very little factual overlap between the two claims, as one is focused on what objective burdens that the Periodic Voting Requirement imposes and the other is controlled by what the Legislature was subjectively thinking when it enacted the requirement. Similarly, because of the objective/subjective dichotomy between the two claims, there is little danger that "an appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Wood*, 422 F.3d at 878 n.2.

Because the claims are substantially separate and distinct, this Court can enter a 54(b) judgment. And even if there is some modest factual overlap, that is not dispositive: the Ninth Circuit has "upheld Rule 54(b) certification even though the remaining claims would require proof of the same facts involved in the dismissed claims." *Texaco, Inc*, 939 F.2d at 798.[5]

Ultimately, "Rule 54(b) certification is proper if it will aid 'expeditious decision' of the case." *Id.* at 797 (citation omitted). Here certification will do just that.

## CONCLUSION

For the foregoing reasons, this Court's dismissal of Plaintiffs' non-signature curing claims present a classic case for entry of judgment under Rule 54(b). Although a closer call, a 54(b) judgment is also warranted for Plaintiffs' dismissed *Anderson-Burdick* challenge to the Periodic Voting Requirement, particularly as that claim is objective and Plaintiffs' remaining intentional-discrimination challenge is purely subjective.

---

[5] If Plaintiffs were to prevail on their remaining intentional discrimination claim, it could moot the corresponding *Anderson-Burdick* challenge, but only partially. An intentional discrimination judgment for Plaintiffs would not prevent the Legislature from re-enacting a Periodic Voting Requirement as long as it did so with proper motives. In contrast, if Plaintiffs were to prevail on their *Anderson-Burdick* challenge—*i.e.*, that the objective burdens imposed are unconstitutionally burdensome—that would presumably permanently foreclose the Legislature from ever adopting an equivalent requirement.

Respectfully submitted this 17th day of August, 2022.

MARK BRNOVICH
ATTORNEY GENERAL

By: s/ Drew C. Ensign
Joseph A. Kanefield (No. 15838)
*Chief Deputy & Chief of Staff*
Brunn ("Beau") W. Roysden III (No. 28698)
*Solicitor General*
Drew C. Ensign (No. 25463)
*Deputy Solicitor General*
Robert J. Makar (No. 33579)
*Assistant Attorney General*
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 542-5200
Drew.Ensign@azag.gov

*Attorneys for Mark Brnovich, Arizona Attorney General*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of August, 2022, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for Filing, which will send notice of such filing to all registered CM/ECF users.

s/ Drew C. Ensign
Drew C. Ensign
*Counsel for Mark Brnovich, Arizona Attorney General*