Lauren Elliott Stine (AZ# 025083)
Coree E. Neumeyer (AZ# 025787)
QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004-2391
(602) 229-5200
Lauren.Stine@quarles.com
Coree.Neumeyer@quarles.com

Lee H. Rubin (Admitted PHV)
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
(650) 331-2000
lrubin@mayerbrown.com

Courtney Hostetler (Admitted PHV)
John Bonifaz (Admitted PHV)
Ben Clements (Admitted PHV)
FREE SPEECH FOR PEOPLE
1320 Centre Street, Suite 405
Newton, MA 02459
(617) 249-3015
jbonifaz@freespeechforpeople.org
chostetler@freespeechforpeople.org
bclements@freespeechforpeople.org

*Additional counsel listed on last page*

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Mi Familia Vota; Arizona Coalition for Change; Living United for Change in Arizona; and League of Conservation Voters, Inc. d/b/a Chispa AZ,

Plaintiffs,

and

DSCC and DCCC,

Plaintiff-Intervenors,

v.

Katie Hobbs, in her official capacity as Arizona Secretary of State, et al.,

Defendants,

and

RNC and NRSC,

Defendant-Intervenors.

Case No. CV-21-01423-PHX-DWL

# PLAINTIFFS' OPPOSITION TO DEFENDANT ATTORNEY GENERAL'S RULE 54(b) MOTION TO ENTER JUDGMENT ON DISMISSED CLAIMS

# TABLE OF CONTENTS

**Page**


BACKGROUND ..... 1

LEGAL STANDARD ..... 2

I. THE ATTORNEY GENERAL HAS NOT SHOWN THAT THE COURT'S DISMISSAL WAS "FINAL" FOR PURPOSES OF RULE 54(B). ..... 4

II. IN ANY EVENT, THE ATTORNEY GENERAL HAS NOT SHOWN THAT THERE IS "NO JUST REASON FOR DELAY" ENTRY OF JUDGMENT ON THE DISMISSED CLAIMS. ..... 6

- A. The Attorney General Has Not Shown A "Pressing Need" For An Immediate Appeal Of Plaintiffs' SB 1003 Challenges. ..... 7
- B. The Attorney General Has Also Not Shown A "Pressing Need" For An Immediate Appeal Of Plaintiffs' SB 1485 *Anderson-Burdick* Challenge. ..... 10

CONCLUSION ..... 12

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1 (1980) .......... 3, 4

*Exchange Nat. Bank of Chicago v. Daniels*, 763 F.2d 286 (7th Cir. 1985) .......... 1, 9

*Fucich Contracting, Inc. v. Shread-Kuyrkendall and Assocs., Inc.*, No. 18-2885, 2020 WL 2924051 (E.D. La. June 3, 2020) .......... 9

*Gardner v. Greg's Marine Const., Inc.*, No. 13-1768, 2014 WL 1023813 (D. Md. Mar. 14, 2014) .......... 10

*Gonzalez v. US Human Rights Network*, No. CV-20-757, 2021 WL 1312553 (D. Ariz. Apr. 8, 2021) (Lanza, J.) .......... 1, 2, 3

*Inc. v. Town of Rochester*, 235 F.3d 126 (2d Cir. 2000) .......... 3

*Kraft v. Old Castle Precast Inc.*, No. CV-15-701, 2015 WL 4693220 (C.D. Cal. Aug. 5, 2015) .......... 5

*League of Women Voters of Florida, Inc. v. Lee*, No. 21-cv-186, 2022 WL 610400 (N.D. Fla. Jan. 4, 2022) .......... 12

*Medved v. DeAtley*, No. 12-cv-03034, 2014 WL 4437272 .......... 8, 10

*Mi Familia Vota v. Hobbs*, No. CV-21-01423, 2022 WL 2290559 (D. Ariz. June 24, 2022) .......... 4, 5

*Morrison-Knudsen Co. v. Archer*, 655 F.2d 962 (9th Cir. 1981) .......... *passim*

*Onyx Properties, LLC v. Board of County Commissioners of Elbert County*, 912 F. Supp. 2d 1191 (D. Colo. 2012) .......... 8, 9

*Patriot Mfg. LLC v. Hartwig, Inc.*, No. 10-1206, 2014 WL 4538059 (D. Kan. Sept. 11, 2014) .......... 10

*Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256 (1979) .......... 11, 12

*Romoland Sch. Dist. v. Inland Empire Energy Ctr., LLC*, 548 F.3d 738 (9th Cir. 2008) .......... 8

*Stewart v. Gates*, 277 F.R.D. 33 (D.D.C. 2011) .......... 1, 9

*Tiscareno v. Frasier*,
No. 07-CV-336, 2012 WL 5417900 (D. Utah Nov. 5, 2012) .......... 8, 10

*Unified Data Servs., LLC v. FTC*,
39 F.4th 1200 (9th Cir. 2022) .......... 4, 5

*WMX Techs., Inc. v. Miller*,
104 F.3d 1133 (9th Cir. 1997) (en banc) .......... 4

*Wood v. GCC Bend, LLC*,
422 F.3d 873 (9th Cir. 2005) .......... 11

**Other Authorities**

10 C. Wright & A. Miller, FED. PRAC. AND PROC. § 2661 (4th ed. 2022) .......... 2

Fed. R. Civ. P. 15 .......... 6

Fed. R. Civ. P. 54(b) .......... *passim*

**BACKGROUND**

The Attorney General moved to dismiss Plaintiffs' claims in full. After careful consideration, the Court granted the motion in part and dismissed without prejudice Plaintiffs' intentional discrimination and *Anderson-Burdick* challenges to SB 1003, as well as their *Anderson-Burdick* challenge to SB 1485. In the same order, the Court rejected the Attorney General's motion to dismiss Plaintiffs' intentional discrimination claim as to SB 1485—a bill designed to purge voters from Arizona's formerly permanent early voter list in certain circumstances. The Attorney General now moves for entry of final judgment under Federal Rule of Civil Procedure 54(b) on three claims that the Court dismissed without prejudice. The motion should be denied.

Even when the Rule is properly invoked, courts are cautioned to issue Rule 54(b) judgments sparingly. The Attorney General does not properly invoke Rule 54(b). For one thing, the Rule is not ordinarily invoked by litigants who, like the Attorney General here, have already prevailed on a motion to dismiss. Indeed, a prevailing party's request to enter a Rule 54(b) judgment so as to effectively compel the non-prevailing party to appeal "effectively invert[s] the purpose of Rule 54(b)"—a rule designed to "enhance[] the appellate rights of a *losing party* in circumstances when delay of an appeal would cause undue hardship or possible injustice." *Stewart v. Gates*, 277 F.R.D. 33, 36 (D.D.C. 2011) (emphasis added); *see also Gonzalez v. US Human Rights Network*, No. CV-20-757, 2021 WL 1312553 at *1 (D. Ariz. Apr. 8, 2021) (Lanza, J.) ("Rule 54(b) is designed to provide parties with an opportunity to appeal *an unfavorable ruling* before a case has fully terminated." (emphasis added)). Thus, a "district judge ordinarily should not enter a Rule 54(b) [judgment] unless the *losing party* requests it." *Exchange Nat. Bank of Chicago v. Daniels*, 763 F.2d 286, 291 (7th Cir. 1985) (emphasis added). That alone should be dispositive here.

Nonetheless, the Attorney General—the prevailing party as to the claims at issue—seeks to use Rule 54(b) to force Plaintiffs into a Hobson's choice and disrupt orderly

adjudication of this case. If the Court grants the Attorney General's motion, Plaintiffs will either have to appeal the dismissed claims immediately or risk abandoning altogether their appellate rights as to the dismissed claims. *See* 10 C. Wright & A. Miller, FED. PRAC. AND PROC. § 2661 (4th ed. 2022) ("[O]nce there has been a Rule 54(b) certification and a final judgment has been entered, the time for appeal begins to run."). That raises the prospect of *two* appeals in this case—one now, and the other after the Court enters judgment on the remaining claims—raising overlapping issues. Rule 54 does not allow this kind of wasteful litigation.

The Attorney General's motion should be denied for two additional reasons. *First*, the Order dismissing the claims at issue is not "final" for purposes of Rule 54(b). *Second*, and in any event, it is the Attorney General's burden to show that there is a "pressing need[]" for an "early and separate judgment" as to Plaintiffs' dismissed claims that outweighs "the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket." *Gonzalez*, 2021 WL 1312553, at *2 (cleaned up). But aside from a cursory argument about the benefits of finality and the detriments of delay, the Attorney General's Rule 54(b) motion never explains why the State of Arizona—the prevailing party on the claims at issue—would be harmed in any way if the motion is denied. Nor could it: both SB 1003 and SB 1485 remain in full effect. Granting the motion, however, threatens to waste judicial and party resources. The motion should be denied.

## LEGAL STANDARD

Under Rule 54(b), a district court "may"—but is not required to—"direct entry of a final judgment as to one or more, but fewer than all, claims." Rule 54(b) permits the district court to do so "only if the court expressly determines that there is no just reason for delay." In all other cases, a district court's adjudication of fewer than all claims "does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

This Court has recognized that "[t]he burden is on the party endeavoring to obtain

Rule 54(b) certification to demonstrate that the case warrants certification." *Gonzalez*, 2021 WL 1312553, at *2 (cleaned up). Here, that means the Attorney General, as the moving party, must persuade the Court that each Rule 54(b) factor is satisfied. The Attorney General's burden is a heavy one. Rule 54(b) judgments are "not routine" and "should not become so." *Id.* (cleaned up). To the contrary, they "must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment." *Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981); *accord Gonzalez*, 2021 WL 1312553 at *2 (noting that the Ninth Circuit has "repeatedly admonished that 'Rule 54(b) should be used sparingly'") (quoting *Gausvik v. Perez*, 392 F.3d 1006, 1009 n.2 (9th Cir. 2004)). Indeed, "a Rule 54(b) judgment will be proper only where necessary to avoid a harsh and unjust result." *Morrison-Knudsen Co.*, 655 F.2d at 965; *see also Citizens Accord, Inc. v. Town of Rochester*, 235 F.3d 126, 129 (2d Cir. 2000) (judgment under Rule 54(b) is proper "only in the infrequent harsh case" where there exists "some danger of hardship or injustice through delay which would be alleviated by immediate appeal" (cleaned up)).

In *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1 (1980), the Supreme Court set forth a two-step process for determining whether judgment under Rule 54(b) is appropriate. *First*, a district court must "determine that it is dealing with a 'final judgment.' It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Id.* at 7 (cleaned up); *see also Morrison-Knudsen Co.*, 655 F.2d at 965 ("finality" is a "requisite aspect" of a Rule 54(b) judgment).

*Second*, "the district court must go on to determine whether there is any just reason for delay. Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." *Curtiss-Wright Corp.*, 446 U.S. at 8. "[I]n deciding whether there are no just reasons to delay the

appeal of individual final judgments," district courts must "take into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to assure that application of the Rule effectively preserves the historic federal policies against piecemeal appeals." *Id.* (cleaned up). Proper factors for a district court to consider when deciding whether there is any just reason for delay include "whether the claims under review [are] separable from the others remaining to be adjudicated" and "whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id.*; *see also Morrison-Knudsen Co.*, 655 F.2d at 965 (a critical factor for district courts to consider when deciding whether to grant a Rule 54(b) motion is whether the appellate court "will be required to address legal or factual issues that are similar to those contained in the claims still pending before the trial court").

## ARGUMENT

### I. The Attorney General Has Not Shown That The Court's Dismissal Was "Final" For Purposes Of Rule 54(b).

On June 24, 2022, the Court dismissed both of Plaintiffs' challenges to SB 1003, as well as Plaintiffs' *Anderson-Burdick* challenge to SB 1485; but in that same order, the Court granted Plaintiffs leave to amend those claims. *Mi Familia Vota v. Hobbs*, No. CV-21-01423, 2022 WL 2290559, at *32 (D. Ariz. June 24, 2022). As a general matter, "when a district court expressly grants leave to amend, it is plain that the order is not final." *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136-37 (9th Cir. 1997) (en banc). Accordingly, at the time it was entered this Court's order plainly was not final.

In order to convert a dismissal order where leave to amend is granted into a final, appealable order, the plaintiff must "affirmatively alert the district court that it intends to rest on its complaint." *Unified Data Servs., LLC v. FTC*, 39 F.4th 1200, 1206 (9th Cir. 2022). The Attorney General argues that the Court's dismissal order is final here because,

he asserts, Plaintiffs provided the Court with a "notice of intent not to file an amended complaint" on July 29, 2022. Att'y. Gen. Br. 7 n.3.

The Attorney General's argument ignores the plain language of this Court's order, which stated that Plaintiffs "may file amended complaints within 21 days" of the order. *Mi Familia Vota*, 2022 WL 2290559, at *32. Thus, the Court's order simply gave Plaintiffs leave, in advance, to file an amended complaint if they chose to do so within the time period allowed. But the Court's order did not foreclose Plaintiffs from subsequently seeking leave to file an amended complaint at a later date. *Cf. Kraft v. Old Castle Precast Inc.*, No. CV-15-701, 2015 WL 4693220, at *5 (C.D. Cal. Aug. 5, 2015) (unlike this Court's order, explicitly stating that "[i]f plaintiff fails to file an amended complaint by [the] deadline, the dismissal of the complaint will automatically convert to a with-prejudice dismissal").

The Attorney General similarly misreads Plaintiffs' July 29, 2022 filing. In it, Plaintiffs stated that, although they would not seek leave to amend "at this time," they very well may do so "at a later date as permitted under the Federal Rules of Civil Procedure." Dkt. 168 at 2. Thus, Plaintiffs did not "affirmatively alert" the court that they "intend[ed] to rest on [their] complaint." *Unified Data Servs.*, 439 F.4th at 1206. To the contrary, in their July 29, 2022 filing Plaintiffs affirmatively alerted the Court that they *may seek leave to amend their complaint in the future*.

The claim that this Court permitted to continue following the motion to dismiss is closely related to the dismissed claims. Discovery as to that claim, moreover, is in the early stages and ongoing. Although the Secretary of State and county recorders have produced documents, substantial discovery from Maricopa county remains outstanding, and some of the most important targets of discovery—third parties such as the Arizona legislature and the Arizona Republican Party ("ARP")—have thus far produced virtually nothing. As the Court is aware, a motion to compel as to the ARP is pending, and Plaintiffs expect there will likewise be a need for motion practice in the relative near term concerning assertions of legislative privilege and other issues that have been raised regarding other third-party

discovery that Plaintiffs have served. Moreover, no depositions have yet been taken. For these reasons, Plaintiffs cannot know at this time whether discovery will yield a basis for them to seek leave to amend in the future—which is precisely why Plaintiffs expressly stated that they reserve the right to do so. Of course, should Plaintiffs determine that there is an evidentiary basis to seek leave to amend their complaints in the future, the Court would then weigh the parties' competing arguments about whether to allow it. But it is premature to assume that discovery on the related ongoing claim may not provide a basis to amend, and permanently foreclose Plaintiffs from seeking leave should the evidence later justify it.

The Attorney General argues that Plaintiffs' July 29, 2022 filing reserving the right to seek leave to amend in the future is a "proverbial Sword of Damocles" insofar as Plaintiffs have supposedly "'reserve[d] the right' to amend indefinitely"; the Attorney General argues that "Plaintiffs' refusal to amend their Complaints by the extended deadline set by the Court should have consequences," including entry of judgment under Rule 54. Att'y. Gen. Br. 8. This argument ignores Federal Rule of Civil Procedure 15, which permits amendment at any time with "the court's leave" and if "justice so requires." Fed. R. Civ. P. 15(a) (1), (2). Put simply: if discovery reveals facts that indicate that a request for leave to amend is warranted, and this Court concludes that leave is appropriate, Rule 15 permits the Court to grant leave. There is nothing out of the ordinary about Plaintiffs' reservation of the right to seek leave to amend.

Accordingly, the Court's June 24, 2022 order dismissing Plaintiffs' challenges to SB 1003 and Plaintiffs' *Anderson-Burdick* challenges to SB 1485 is not final for purposes of Rule 54(b). The Court should deny the Attorney General's motion on that basis alone.

## II. In Any Event, The Attorney General Has Not Shown That There Is "No Just Reason For Delay" Entry Of Judgment On The Dismissed Claims.

In order to satisfy his burden under Rule 54(b) to show that there is "no just reason for delay" of an entry of judgment on Plaintiffs' dismissed SB 1003 challenges and *Anderson-Burdick* challenge to SB 1485, the Attorney General must show that the State of

Arizona has a "pressing need[]" for Plaintiffs to appeal now—and that the "pressing need[]" outweighs "the costs and risks of multiplying the number of proceedings" and of "overcrowding the appellate docket." *Morrison-Knudsen Co.,* 655 F.2d at 965. This is a near-impossible burden as a prevailing party at the motion to dismiss stage. The Attorney General's inability to proffer any support for the grant of a Rule 54(b) motion in similar circumstances is by itself sufficient evidence of that.

In short, because the Attorney General won his motion to dismiss Plaintiffs' claims, he cannot justify the need for a deviation from the ordinary judicial process which Rule 54(b) permits. His burden is to show that he would be harmed in the absence of a Rule 54(b) judgment—but since the status quo is that the claims at issue were dismissed, the challenged laws remain in effect. So the Attorney General cannot show a "pressing need" for Plaintiffs to appeal the dismissed claims *now*. In addition, at least with respect to SB 1485, there is significant factual and legal overlap between the dismissed *Anderson-Burdick* challenge and the still-pending intentional discrimination challenge, and this overlap "weigh[s] heavily against entry of judgment" under Rule 54(b). *Morrison-Knudsen Co.*, 655 F.2d at 965.

### A. The Attorney General Has Not Shown A "Pressing Need" For An Immediate Appeal Of Plaintiffs' SB 1003 Challenges.

The Attorney General *prevailed* on the motion to dismiss Plaintiff's SB 1003 claims. For precisely this reason, he cannot show that there is a "pressing need" for Plaintiffs to appeal that dismissal order *now*—as opposed to at the end of the district court proceedings, as in the typical case.

If the Court grants the Attorney General's Rule 54(b) motion, Plaintiffs would have to decide now whether to appeal that final judgment. And if Plaintiffs opted to appeal now, only two outcomes are possible: the Ninth Circuit could affirm this Court's dismissal of Plaintiffs' SB 1003 challenges, or it could reverse the dismissal. If the Ninth Circuit affirms, the Attorney General would be in *exactly* the same position he is in now: SB 1003 would

remain in effect. If the Ninth Circuit reverses, the matter would return to this Court—but not before Plaintiffs, the Attorney General, and the Ninth Circuit expend considerable resources on a "piecemeal appeal," the very outcome that district courts should attempt to avoid when considering a Rule 54(b) motion. *Romoland Sch. Dist. v. Inland Empire Energy Ctr., LLC*, 548 F.3d 738, 747 (9th Cir. 2008) ("Piecemeal appellate review is not only inimical to the will of Congress, but also undermines the efficient use of judicial resources by exposing appellate panels to the costs of repeated familiarization with the same case.") (cleaned up).

The closest the Attorney General comes to identifying a "pressing need" is his argument that the State is "entitled to finality and certainty", and should not have to wait "another half decade or more" to know for sure whether SB 1003 is lawful. Att'y Gen. Br. 8. But the Ninth Circuit and other courts have held that the concerns of a prevailing party, like the Attorney General, about finality and delay are not, without more, "pressing needs" under Rule 54(b). *Morrison-Knudsen Co.*, 655 F.2d at 965; *see also, e.g.*, *Medved v. DeAtley*, No. 12-cv-03034, 2014 WL 4437272, at *3 (denying Rule 54(b) motion and rejecting prevailing defendant's argument that he was entitled to Rule 54(b) judgment because he had a "right to have a just, speedy and economical determination of his case"); *Tiscareno v. Frasier*, No. 07-CV-336, 2012 WL 5417900, at *1 (D. Utah Nov. 5, 2012) (rejecting argument by prevailing defendant that entry of a final judgment under Rule 54(b) "will prevent the prejudice to him that would be caused by requiring him possibly to wait several years before a final disposition in this case occurs" and concluding that "the lack of finality alone . . . does not meet the requisite hardship for Rule 54(b) certification").

Indeed, courts have rejected the exact tactic the Attorney General attempts here—a winning party trying to force the other side into an early appeal decision through a Rule 54(b) motion. *Onyx Properties, LLC v. Board of County Commissioners of Elbert County*, 912 F. Supp. 2d 1191 (D. Colo. 2012), is a good example. There, the defendant Board of County Commissioners (BOCC) successfully moved for summary judgment on a § 1983

claim brought by two landowners, the Rohrbachs, in a zoning dispute. *Id*. at 1207-08. Having prevailed on summary judgment, the BOCC then moved for entry of judgment under Rule 54(b) on the Rohrbach's § 1983 claim. The BOCC argued—as the Attorney General does here—that the plaintiffs "should not have to wait (likely a period of several years) until the conclusion of discovery and trial . . . to be able to appeal this Court's judgment against them and dismissal of their claims." *Id*. at 1211; *accord* Att'y Gen. Br. 9 (arguing Plaintiffs would not be prejudiced by entry of a Rule 54(b) judgment now, and that, in fact, waiting months for an appeal would prejudice Plaintiffs, given the harms Plaintiffs have alleged). The district court rejected the BOCC's argument and denied its Rule 54(b) motion, explaining that "[t]his is not the usual case of the losing party requesting the entry of final judgment under Rule 54(b), but rather the prevailing party seeking to *force* the losing party to seek (or not seek) appellate relief." *Onyx Props*., 912 F.Supp.2d at 1211 (emphasis added). And "the BOCC ha[d] not referred . . . to any authority . . . for the proposition that *it* endures hardship" from waiting until the end of district court proceedings for the plaintiff Rohrbachs to appeal. *Id*. (emphasis added).

*Onyx Properties* is not an outlier. As noted above, Rule 54(b) orders are "usually entered at the request of the losing party. A district judge ordinarily should not enter a Rule 54(b) [judgment] unless the losing party requests it." *Exchange Nat. Bank of Chicago*, 763 F.2d at 291. Entering Rule 54(b) judgment on behalf of a prevailing party in an ordinary case would "effectively invert the purpose of Rule 54(b) from one enhancing the appellate rights of a losing party in circumstances when delay of an appeal would cause undue hardship or possible injustice, to one in which a prevailing party could prematurely force an appeal of part of a case by a losing party, who must comply with timeliness requirements for exercising appellate rights." *Stewart*, 277 F.R.D. at 36. *See also Fucich Contracting, Inc. v. Shread-Kuyrkendall and Assocs., Inc.*, No. 18-2885, 2020 WL 2924051, at *3 n.15 (E.D. La. June 3, 2020) (noting that although there may be "circumstances in which it might be appropriate for a prevailing party to obtain a Rule 54(b) certification" such as when

delaying the appeal would result in the prevailing party's inability to recover a money judgment, "no such circumstance is present in this case"); *Patriot Mfg. LLC v. Hartwig, Inc.*, No. 10-1206, 2014 WL 4538059, at *3 (D. Kan. Sept. 11, 2014) (rejecting a Rule 54(b) motion because the movant had been the prevailing party); *Medved*, 2014 WL 4437272, at *3 (same); *Tiscareno*, 2012 WL 5417900, at *1 (same).

The Attorney General has thus not identified a "pressing need[]" for a Rule 54(b) judgment—let alone a pressing need that "outbalance[s]" the "costs and risks of multiplying the number of proceedings and overcrowding the appellate docket." *Morrison-Knudsen Co.*, 655 F.2d at 965; *see also Gardner v. Greg's Marine Const., Inc.*, No. 13-1768, 2014 WL 1023813 at *3 (D. Md. Mar. 14, 2014) (Rule 54(b) judgment was inappropriate where the movants failed to show "that waiting until all the claims are adjudicated would leave them in a worse position").

Because the Attorney General prevailed in obtaining a dismissal of Plaintiffs' challenges to SB 1003, he cannot meet his burden to show that the State will be harmed unless the Court grants his Rule 54(b) motion. For this reason, the Court should deny the motion.

### B. The Attorney General Has Also Not Shown A "Pressing Need" For An Immediate Appeal Of Plaintiffs' SB 1485 *Anderson-Burdick* Challenge.

The Attorney General also asks the Court to enter judgment under Rule 54(b) on Plaintiffs' dismissed *Anderson-Burdick* challenge to SB 1485. In so doing, he acknowledges that his Rule 54(b) argument as to SB 1485 is not a "slam dunk case." Plaintiffs agree.

As with Plaintiffs' challenges to SB 1003, the Attorney General never articulates how the State would be harmed if the Rule 54(b) motion is denied with respect to their *Anderson-Burdick* challenge to SB 1485. Nor can he. Plaintiffs' intentional discrimination challenge to SB 1485 is still a live claim. Plaintiffs will either carry their burden to show that SB 1485 is intentionally discriminatory or they will not. If Plaintiffs do prevail on their

intentional-discrimination claim, there may never be an appeal of their dismissed *Anderson-Burdick* challenge at all. Forcing an appeal of the *Anderson-Burdick* claim now would be a waste of resources for that reason alone. But either way, the State is no worse off if an appeal of the *Anderson-Burdick* challenge is taken in the normal course, at the natural conclusion of the district court proceedings. Because he has articulated no "pressing need[]" for entry of a Rule 54(b) judgment—and because there is none—this Court should deny the Attorney General's motion on that basis alone. *Morrison-Knudsen Co.*, 655 F.2d at 965.

The fact that Plaintiffs still have a pending challenge to SB 1485 is itself another reason to deny the Attorney General's motion. "A similarity of legal or factual issues will weigh heavily against entry of judgment," *Morrison-Knudsen Co.,* 655 F. 2d at 965, because the "greater the overlap the greater the chance the [Ninth Circuit] will have to revisit the same facts . . . in a successive appeal." *Wood v. GCC Bend, LLC*, 422 F.3d 873, 882 (9th Cir. 2005). The Attorney General implicitly concedes that the presence of factual overlap undercuts his request for partial judgment, but claims there is "very little factual overlap" here because the "Court's inquiry as to the [*Anderson-Burdick* claim] is objective" whereas the inquiry on the intentional discrimination claim is "solely subjective." Att'y Gen. Br. 10.

This argument conflicts with the Attorney General's own authority. In *Personnel Administrator of Massachusetts v. Feeney* (Att'y Gen. Br 11)—the Supreme Court did not hold that an intentional discrimination challenge was "solely subjective," but rather that "[p]roof of discriminatory intent must necessarily usually rely on *objective* factors, several of which were outlined in *Arlington Heights*." 442 U.S. 256, 279 n.24 (1979) (cleaned up). As the Court explained, "[t]he inquiry" concerning whether there was an improper legislative intent is a "practical" one: "What a legislature or any official entity is 'up to' may be plain from the results its actions achieve, or the results they avoid. Often it is made clear from what has been called, in a different context, 'the give and take of the situation.'" *Id.* (cleaned up). Thus, the distinction that the Attorney General draws—between "what a

legislature actually thought" for purposes of an intentional discrimination claim, and "what objective effect the statute actually has" for purposes of an *Anderson-Burdick* claim, Att'y. Gen. Br. 10—is artificial. Indeed, the Supreme Court, in *Feeney*, explained that "the inevitability or foreseeability of consequences of a neutral rule" passed by a Legislature can, by inference, bear on "the existence of discriminatory intent." 442 U.S. at 279 n.25.

Indeed, both the intentional discrimination challenge that this Court permitted to proceed and the *Anderson-Burdick* challenge to SB 1485 that it dismissed would entail an evaluation of the *actual* reasons the Legislature had for adopting the law. If the Legislature's reasons are pretextual, that supports both the notion that the Legislature acted at least in part with discriminatory motive (relevant to the intentional discrimination claim) and that the laws do not *actually* further a legitimate state interest (relevant to the *Anderson-Burdick* claim). *See, e.g., League of Women Voters of Florida, Inc. v. Lee*, No. 21-cv-186, 2022 WL 610400 at *5 (N.D. Fla. Jan. 4, 2022) (evidence of "the Legislature's actual motivation" is "relevant to this Court's *Anderson-Burdick* . . . analysis"). Accordingly, the Attorney General's assertions that "the issues presented by [Plaintiffs'] *Anderson-Burdick* claim are largely distinct from Plaintiffs' intentional-discrimination" claim and that there is "very little factual overlap between the two claims" are incorrect. Att'y. Gen. Br. 10, 11.

In short, there is a significant overlap—both legally and factually—between Plaintiffs' *Anderson-Burdick* challenge to SB 1485 and their intentional discrimination challenge to SB 1485. For this reason, and also because the Attorney General has failed to show that there is a "pressing need" for an immediate appeal of the dismissal of the *Anderson-Burdick* challenge, the Rule 54(b) motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny in full the Attorney General's motion to enter partial judgment under Rule 54(b).

Dated: September 1, 2022

Respectfully submitted,


/s/ Coree E. Neumeyer
Lauren Elliott Stine (AZ #025083)
Coree E. Neumeyer (AZ# 025787)
QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004-2391
(602) 229-5200
Lauren.Stine@quarles.com
Coree.Neumeyer@quarles.com

Lee H. Rubin (Admitted PHV)
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
(650) 331-2000
lrubin@mayerbrown.com

Courtney Hostetler (Admitted PHV)
John Bonifaz (Admitted PHV)
Ben Clements (Admitted PHV)
FREE SPEECH FOR PEOPLE
1320 Centre Street, Suite 405
Newton, MA 02459
(617) 249-3015
chostetler@freespeechforpeople.org
jbonifaz@freespeechforpeople.org
bclements@freespeechforpeople.org

Gary A. Isaac (Admitted PHV)
Daniel T. Fenske (Admitted PHV)
Jed W. Glickstein (Admitted PHV)
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
gisaac@mayerbrown.com
dfenske@mayerbrown.com
jglickstein@mayerbrown.com

Rachel J. Lamorte (Admitted PHV)
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 362-3000
rlamorte@mayerbrown.com


*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2022, a copy of Plaintiffs' Opposition to Defendant Attorney General's Rule 54(b) Motion to Enter Judgment on Dismissed Claims was filed electronically with the Arizona District Court Clerk's Office using the CM/ECF System for filing, which will provide a Notice of Electronic Filing to all CM/ECF registrants.

*/s/ Debra L. Hitchens*