**MARK BRNOVICH**
**ATTORNEY GENERAL**
Joseph A. Kanefield (No. 15838)
*Chief Deputy & Chief of Staff*
Brunn ("Beau") W. Roysden III (No. 28698)
*Division Chief*
Drew C. Ensign (No. 25463)
*Deputy Solicitor General*
Robert J. Makar (No. 33579)
*Assistant Attorney General*
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 542-5200
Drew.Ensign@azag.gov

*Attorneys for Mark Brnovich,*
*Arizona Attorney General*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Mi Familia Vota, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>Katie Hobbs, et al.,<br><br>Defendants. | Case No: 2:21-cv-01423-DWL<br><br>**ATTORNEY GENERAL'S REPLY TO RESPONSE IN SUPPORT OF HIS RULE 54(B) MOTION TO ENTER JUDGMENT ON DISMISSED CLAIMS** |

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. PLAINTIFFS RELY ON NON-EXISTENT PRESUMPTIONS AND REQUIREMENTS OF SHOWING HARM ........ 2

II. THIS COURT SHOULD ENTER FINAL JUDGMENT ON THE NON-SIGNATURE CURING CLAIMS ........ 5

  A. This Court's Resolution Of The SB 1003 Is Final ........ 5

  B. There Is "No Just Reason To Delay" Entering Judgment On The Non-Signature Curing Claims ........ 7

III. THIS COURT SHOULD ALSO ENTER JUDGMENT ON PLAINTIFFS' *ANDERSON-BURDICK* CHALLENGE TO THE PERIODIC VOTING REQUIREMENT ........ 8

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

## CASES

*Arizona Democratic Party v. Hobbs*,
18 F.4th 1179 (9th Cir. 2021) .......... 1

*Arizona Democratic Party v. Hobbs*,
976 F.3d 1081 (9th Cir. 2020) .......... 5

*Curtiss-Wright Corp. v. General Electric Co.*,
446 U.S. 1 (1980) .......... 6

*DNC v. Wisconsin State Legis.*,
141 S. Ct. 28 (2020) .......... 5

*Exchange Nat. Bank of Chi. v. Daniels*,
763 F.2d 286 (7th Cir. 1985) .......... 4

*Gonzalez v. US Human Rights Network*,
No. CV-20-757, 2021 WL 1312553 (D. Ariz. Apr. 8, 2021) .......... 2, 3, 7

*League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*,
32 F.4th 1363 (11th Cir. 2022) .......... 9

*League of Women Voters of Fla., Inc. v. Lee*,
__ F. Supp. 3d __, 2022 WL 969538 (N.D. Fla. Mar. 31, 2022) .......... 9

*League of Women Voters of Florida, Inc. v. Lee*,
No. 21-cv-186, 2022 WL 610400 (N.D. Fla. Jan. 4, 2022) .......... 9

*Mi Familia Vota v. Hobbs*,
No. CV-21-01423, 2022 WL 2290559 (D. Ariz. June 24, 2022) .......... 9

*Morrison-Knudsen Co. v. Archer*,
655 F.2d 962 (9th Cir. 1981) .......... 3

*Short v. Brown*,
893 F.3d 671 (9th Cir. 2018) .......... 8

*Stewart v. Gates,*
277 F.R.D. 33 (D.D.C. 2011) .......... 4

*Texaco, Inc. v. Ponsoldt*,
939 F.2d 794 (9th Cir. 1991) .......... 2, 8

*Unified Data Servs., LLC v. FTC*,
39 F.4th 1200 (9th Cir. 2022) .......... 6

*United States v. All Assets Held in Acct. No. XXXXXXXX*,
314 F.R.D. 12 (D.D.C. 2015) .......... 4

*WMX Techs., Inc. v. Miller*,
104 F.3d 1133 (9th Cir. 1997) .......... 6

**RULES**

Fed. R. App. P. 4(b)(4) .......... 7

Fed. R. Civ. P. 54(b) .......... 4

Fed. R. Evid. 201(b)(2) .......... 9

**INTRODUCTION**

Plaintiffs' 54(b) opposition lays bare the calculating cynicism underlying Plaintiffs' claims. Despite their lofty, high-minded rhetoric about vindicating all voters' rights, Plaintiffs are remarkably blasé about *ensuring* that the alleged harms they purportedly seek to end actually come to pass with near-absolute certainty. And for perhaps half a decade or more, all to gain the most minute of tactical advantages here. Indeed, although the State specifically identified these precise concerns in its motion (at 2, 8-9), Plaintiffs never even attempt to answer them. But what then could they say?

Plaintiffs, for example, claim that SB 1003 and its Poll-Close Deadline illegally disenfranchise voters *in every election*, thereby inflicting irreparable harm. But Plaintiffs' position would *ensure* that such harms continue to be inflicted for *multiple election cycles* over many years. Nor do Plaintiffs deny that withholding 54(b) relief would produce this very effect. *Compare* Mot. at 8-9 *with* Opp. at 7-10 (non-denial).

If Plaintiffs truly believed the Poll-Close Deadline inflicted the substantial, unconstitutional harms that they allege, Plaintiffs should be jumping at the opportunity for earlier appellate review since it would offer a chance to prevent those harms *several* elections earlier. Instead, they strenuously resist any path that might realistically permit final resolution of the validity of the State's Poll-Close Deadline any time in the first half of this decade. And that finality *should already have existed* following the Ninth Circuit's decision in *Arizona Democratic Party v. Hobbs ("ADP")*, 18 F.4th 1179 (9th Cir. 2021), and Intervenor-Plaintiffs' refusal to seek either rehearing or Supreme Court review of it.

Plaintiffs apparently believe that Rule 54(b) permits them to subject the Poll-Close Deadline to interminable re-litigation for many more years (and perhaps many more suits) to come. Yet Plaintiffs completely ignore the State's well-grounded concerns about re-litigation, and tellingly do not *acknowledge or cite* ADP *even once* in their opposition. Those interests alone amply provide cause to enter a Rule 54(b) judgment.

Much of Plaintiffs' opposition seems to be premised on a purported presumption against granting a prevailing parties' request under Rule 54(b). But Plaintiffs cite no court

in the Ninth Circuit applying any such presumption, and Plaintiffs' mischaracterization of this Court's decision in *Gonzalez v. US Human Rights Network*, No. CV-20-757, 2021 WL 1312553 at *1 (D. Ariz. Apr. 8, 2021) (Lanza, J.), as recognizing that purported presumption is particularly untenable. Nor is any such presumption consistent with Rule 54(b)'s text.

Stripped of their reliance on a non-existent presumption, Plaintiffs' remaining arguments readily fail. Plaintiffs cannot categorically avoid Rule 54(b) and this Court's extended amendment deadline through talismanic invocation that they "reserve the right to amend." To the State's knowledge, no court has *ever* held as much, and Plaintiffs tellingly never cite a single one that has. No do Plaintiffs deny that the non-signature-curing claims are completely severable from the remaining claim.

As to the SB 1485/*Anderson-Burdick* claim, while there might be some modest factual overlap, the Ninth Circuit has "upheld Rule 54(b) certification even though the remaining claims would require proof of the same facts involved in the dismissed claims." *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991). Ultimately, "Rule 54(b) certification is proper if it will aid 'expeditious decision' of the case." *Id.* at 797. Certification of the *Anderson-Burdick* claim will do so here. But even if this Court is disinclined to enter 54(b) judgment on this claim, it should do so for the Poll-Close-Deadline claims, which present a paradigmatic case for 54(b) certification.

## ARGUMENT

### I. PLAINTIFFS RELY ON NON-EXISTENT PRESUMPTIONS AND REQUIREMENTS OF SHOWING HARM

Plaintiffs' principal argument appears to that Rule 54(b) recognizes a presumption against granting relief under its auspices when it is sought by a prevailing party. Plaintiffs thus contend that, as prevailing party, the State "does not properly invoke Rule 54(b)" and that Rule 54(b) imposes a "*near-impossible burden* [on] a prevailing party." Opp. at 1, 7 (emphasis added). Plaintiffs further contend that, as a result of this purported presumption and "near-impossible burden," the State's burden "is to show that [it] would be *harmed*"

absent Rule 54(b) relief. Opp. at 7 (emphasis added); *accord id.* at 10 (arguing State failed to meet "burden to show that the State will *be harmed*." (emphasis added)).

This purported "would be harmed" requirement is a wishcasted creation of Plaintiffs. It appears neither in Rule 54(b)'s actual text nor *any* of the case law quotations that Plaintiffs provide. So too is Plaintiffs contention that the State faces a "near-impossible burden" a pure invention of Plaintiffs unmoored from the case law and the rule's text.

Plaintiffs cite only two cases within the Ninth Circuit for this purported "near-impossible burden" that requires an affirmative demonstration of "harm": *Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981) and *Gonzalez*. But Plaintiffs' cherry-picked "unfavorable ruling" quote from *Gonzalez* (Opp. at 1) merely describes one of Rule 54(b)'s non-exclusive purposes and does not provide any such anti-prevailing-party presumption. Indeed, that case actually involved a request by *prevailing parties* and this Court *applied no such presumption*—let alone one so onerous as a "near-impossible burden" standard; instead this Court considered the matter to be a "close call" without requiring the prevailing parties to surmount any near-unsurmountable burden. 2021 WL 1312553 at *3-5. Similarly, this Court made clear that financial "harm" was but *"[o]ne example of an equitable consideration* 'that may inform a judge's decision,'" rather than a specific burden that the State was required to satisfy here. *Id.* at *2 (emphasis added).

*Morrison-Knudsen* is even further afield. It applied no such presumption at all, and indeed does not even disclose *which side* (if any) sought 54(b) certification there—let alone placing near-dispositive weight on whether the certification was sought by prevailing or losing party. Moreover, the actual reasons that 54(b) relief was unwarranted in that case centered on fact that the certified claims were counterclaims that were "inseverable, both legally and factually, from claims that remained unadjudicated in the district court." 655 F.2d at 965-66. No such circumstance exists here.

Aside from *Gonzalez* and *Morrison-Knudsen*, Plaintiffs cite nothing in the Ninth Circuit or Rule 54(b)'s text that supports their purported presumption—let alone one so

stringent as to create a "near-impossible burden." Indeed, Rule 54(b) only provides that "the *court* may direct entry of final judgment" without even discussing parties seeking such certification expressly—let alone making relief enormously more difficult for some parties to seek it than others. Fed. R. Civ. P. 54(b) (emphasis added). Rule 54(b) thus vests additional authority in district courts, and that authority is not diminished depending on which party asks the court to exercise it.

In addition, Plaintiffs' out-of-circuit authority is of ambiguous weight even in the courts from which it comes. *See*, *e.g.*, *United States v. All Assets Held in Acct. No. XXXXXXXX*, 314 F.R.D. 12, 15 (D.D.C. 2015) (distinguishing and giving little weight to *Stewart v. Gates,* 277 F.R.D. 33 (D.D.C. 2011) (cited Opp. at 1, 9)). Even worse, *Exchange Nat. Bank of Chi. v. Daniels*, 763 F.2d 286 (7th Cir. 1985) is not even a Rule 54(b) case at all, and no 54(b) judgment was actually either sought or entered there. *Id.* at 288 ("The judgment [below] does not mention Fed.R.Civ.P. 54(b)."). A case not even involving a Rule 54(b) judgment is a curious foundation upon which to build a purported "near impossible burden" presumption under that rule. Yet that is just what Plaintiffs do. *See* Opp. at 1, 9.

Moreover, even if such a presumption actually exists, it could be readily overcome here for at least three reasons here, which Plaintiffs ignore.

*First*, the State specifically identified Plaintiffs' attempted re-litigation of *ADP*—a challenge to an *identical electoral practice*—as supplying reason to enter 54(b) judgment. *See* Mot. at 1, 7-8. Plaintiffs have no response, and thus advance no argument under which their purported presumption could survive this conceded-by-silence rationale.

*Second*, while Plaintiffs never deny that equitable considerations are properly part of this Court's inquiry (Mot. at 3-4), they make no attempt to answer the State's argument that their strategy here is distinctly inequitable, *see* Mot. at 8-9. Instead, they double down on it: going so far as to characterize being given the opportunity to vindicate (in their view) voters' rights several years and many elections earlier as somehow being a "Hobson's choice." Opp. at 1. But under Plaintiffs' rhetoric here, it should be no choice at all.

Plaintiffs' opposition thus effectively concedes that their opposition is inequitable and that this factor properly militates in favor of entering judgment under Rule 54(b).

*Third*, Plaintiffs ignore the unique electoral context here. Elections have to be run frequently—or else democracy literally dies—and they involve a multitude of practical challenges: "running a statewide election is a complicated endeavor." *DNC v. Wisconsin State Legis.*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring). That puts a substantial premium on "the rules of the road [being] *clear and settled*." *Id.* (emphasis added). These concerns particularly weigh against issuing injunctions close to elections. *Id.* at 30-31 (collecting cases). But they also necessarily militate against leaving recurrent issues needlessly unresolved for multiple election cycles, such as permitting Plaintiffs' claims about the legitimacy of the States' electoral procedures to fester for a half-decade or more. Such frozen conflicts undermine the certainty that conducting elections requires.

Moreover, the potential revival of Plaintiffs' claims could easily come at a time when it presents *Purcell* problems. Again. Intervenor-Plaintiffs' dilatory conduct has already resulted in one injunction that had to be stayed in part due to its *Purcell* violation, *Arizona Democratic Party v. Hobbs*, 976 F.3d 1081, 1086-87 (9th Cir. 2020), before being reversed outright on the merits in *ADP*. Delaying final resolution of Plaintiffs' Poll-Close-Deadline claims needlessly risks a recurrence. In contrast, entering Rule 54(b) judgment now would allow those claims to be resolved on appeal in an orderly manner without a pending injunction (should Plaintiffs elect to appeal at all).

## II. THIS COURT SHOULD ENTER FINAL JUDGMENT ON THE NON-SIGNATURE CURING CLAIMS

The question of whether Rule 54(b) relief is warranted for the Poll-Close-Deadline claims is neither close nor difficult, and both the finality and "no just reason to delay" requirements are readily satisfied for them.

### A. This Court's Resolution Of The SB 1003 Claims Is Final

Plaintiffs do not deny that this Court's June 24, 2022 order completely resolves the Poll-Close-Deadline claims and leaves *nothing* left to decide on them. It is thus an

"ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 7-8 (1980) (citations omitted). Nor do Plaintiffs deny they intentionally and explicitly refused to amend their Complaints by this Court's extended July 29 deadline to do so.

Plaintiffs nonetheless claim that they—apparently the first amongst federal court litigants—have discovered an escape hatch to Rule 54(b): they could simply declare that they "reserve their right to seek leave of Court to amend their complaint at a later date." Doc. 168. It does not appear, however, that *any federal court ever* has accepted such a bare reservation as categorically defeating Rule 54(b), and Plaintiffs certainly do not cite a single court doing so. There is no reason for this Court to be the first.

Plaintiffs cite Ninth Circuit case law requiring that plaintiffs "*affirmatively alert* the district court that [they] intend[] to rest on [their] complaint" for finality to exist absent a Rule 54(b) judgment. Opp. at 4 (quoting *Unified Data Servs., LLC v. FTC*, 39 F.4th 1200, 1206 (9th Cir. 2022) (emphasis added). But even accepting *arguendo* that premise as requirement for a Rule 54(b) judgment, they fail to explain why their July 29 filing is not just such an "affirmative alert." Through that filing, Plaintiffs affirmatively provided notice that they "will not amend their complaint at this time." Doc. 168.

In any event, both *Unified Data Services* and *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc) (Opp. at 4-5) were cases in which a Rule 54(b) certification *was not sought*. There was thus an issue as to whether the district courts had "made their intentions in that regard both plain and explicit." *Miller*, 104 F.3d at 1136. Thus, "a further step [needed to] be taken to 'fix an unequivocal terminal date for appealability.'" *Id.* at 1137. But entering a Rule 54(b) judgment here would do just that, and by doing so this Court would eliminate any conceivable ambiguity about its intentions of the sort that gave rise to *Miller*'s and *Unified Data Services*' concerns.

More generally, Plaintiffs misapprehend this Court's case management authority. Plaintiffs' "reservation" is seemingly premised on the view that *they*—not this Court—have the power to set the deadline for complaint amendments. Under that view, their declaration that "reserve their right to seek leave of Court to amend their complaint at a

later date," Doc. 168, *categorically* precludes finality such that this Court is entirely without power to enter a Rule 54(b) judgment. But that is not the law. And if there were such a "we reserve the right" exception to finality under Rule 54(b), Plaintiffs would not be the first to "discover" it here.

In particular, Plaintiffs ignore this Court's December 15, 2021 case management order. That order specifically provided that "No motions to … amend pleadings… shall be filed." Doc. 85 at 1. This Court's allowance until July 29, 2022 to amend the complaints was a limited exception to this general order—and one that Plaintiffs disavowed. Absent that disclaimed allowance of leave, Plaintiffs' dismissed claims became final by operation of law under this Court's case management order alone, and Plaintiffs do not even attempt to show why that is not so.

A simple analogy to criminal appellate procedure further demonstrates the error in Plaintiffs' logic. If a defendant fails to file a notice of appeal challenging his conviction by the time set by rule (which can be modified by the court, Fed. R. App. P. 4(b)(4)), his conviction becomes final and direct review is ended. He cannot avoid finality by a unilateral declaration that he "reserves the right" to file a notice of appeal at an unspecified future time. So it is here too.

### B. There Is "No Just Reason To Delay" Entering Judgment On The Non-Signature Curing Claims

Plaintiffs' only "just reason for delay" arguments relating to SB 1003/Poll-Close-Deadline claims are based on their purported presumption against prevailing parties seeking Rule 54(b) relief, refuted above. *Supra* §I. Contrary to Plaintiffs' claims that the State must show that it "would be harmed" to obtain Rule 54(b) relief, Opp. at 7, 10, this Court has made perfectly clear that "harm" is just "*[o]ne example of an equitable consideration* 'that may inform a judge's decision.'" *Gonzalez,* 2021 WL 1312553 at *2 (emphasis added). The State thus need not establish harm as some *sine qua non* requirement for obtaining Rule 54(b) relief, when it actually is just "one example" of a factor that might motivate courts to grant it. In any event, given the need for certainty in

conducting elections, Plaintiffs' proposal to deny any finality and certainty to their Poll-Close-Deadline claims for another half decade or more is "harm" by any measure.

Plaintiffs also point generically to ongoing discovery (at 5-6). But discovery into the Poll-Close Deadline is now improper since those claims are unequivocally dismissed, and there is no reason to believe that discovery into the remaining Periodic Voting Requirement claim would produce any basis for revising Plaintiffs' dismissed Poll-Close Deadline claims.

Finally, as discussed above, Plaintiffs simply do not address the State's arguments concerning equitable considerations and the re-litigation concerns raised by bringing Poll-Close-Deadline claims post-*ADP*. Those conceded grounds further militate in favor of granting the State's Rule 54(b) request on the Poll-Close-Deadline claims.

## III. THIS COURT SHOULD ALSO ENTER JUDGMENT ON PLAINTIFFS' *ANDERSON-BURDICK* CHALLENGE TO THE PERIODIC VOTING REQUIREMENT

Plaintiffs' reliance on an anti-prevailing-party presumption and "we reserve the right to amend" objections to finality fail for the reasons explained above. *Supra* §§ I, II.A. The remaining question then is whether there is a "just reason to delay" entry of judgment on Plaintiff. There isn't.

Plaintiffs point (at 10-12) to the potential factual overlap between their dismissed *Anderson-Burdick* challenge to SB 1485 and their non-dismissed intentional-discrimination challenge to it. But the Ninth Circuit has made plain that Rule 54(b) certification can be appropriate "even though the remaining claims would require proof of the same facts involved in the dismissed claims." *Texaco*, 939 F.2d at 798. Plaintiffs, however, simply ignore *Texaco*—never even citing it once.

While Plaintiffs point (at 5-6) to ongoing discovery, such discovery should not affect this Court's holding and future amendment based on such conjectural discovery productions is likely futile. As this Court properly held, the applicable burden imposed by the Poll-Close Deadline is "minimal" under *Short v. Brown*, 893 F.3d 671, 677 (9th Cir. 2018). *Mi Familia Vota v. Hobbs*, No. CV-21-01423, 2022 WL 2290559, at *19-20 (D.

Ariz. June 24, 2022). It is virtually impossible that anything produced in discovery could change that result since the objective burden here is *even less* than in *Short*.

Similarly, this Court resolved whether the State's interests sustained SB 1485 by use of judicially noticeable documents and facts. *Id.* at *21-22. By definition, judicially noticeable facts are those "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). It is exceedingly unlikely that discovery will turn up any evidence for Plaintiffs to dispute facts "whose accuracy cannot reasonably be questioned." *Id.*

Given *Short* and the facts already judicially noticed by this Court, there is very little overlap of genuinely disputable salient facts between the dismissed SB 1485 claim and the remaining one, and "no just reason" to delay entry of judgment on the former.

Plaintiffs also mischaracterize (at 11-12) the State as contending that objective facts are irrelevant to the intentional-discrimination challenge. But although that claim might involve objective subsidiary facts, the ultimate inquiry is *subjective*: if the Legislature's subjective intent was lawful, it ultimately is irrelevant what the underlying objective facts are for that claim.

True, such subsidiary objective facts move the needle where subjective intent is unclear. But given how this Court resolved the *Anderson-Burdick* claim, it is exceedingly unlikely that anything that this Court decides for the intentional-discrimination claim could upset its prior *Anderson-Burdick* decision. *Short* controls the burden issue, and this Court's acceptance of the State's interest in reducing costs based on judicially noticeable facts eliminates any meaningful factual overlap that might preclude Rule 54(b) certification.[1]

---

[1] Plaintiffs' reliance (at 12) on *League of Women Voters of Florida, Inc. v. Lee*, No. 21-cv-186, 2022 WL 610400 (N.D. Fla. Jan. 4, 2022) is unavailing. That court subsequently clarified that "*Anderson-Burdick* is different from *Arlington Heights* in that this Court *need not determine what the Legislature's underlying intent* was when it passed the law." *League of Women Voters of Fla., Inc. v. Lee*, __ F. Supp. 3d __, 2022 WL 969538, at *96 (N.D. Fla. Mar. 31, 2022) (emphasis added). In any event, that decision was stayed by the Eleventh Circuit, which faulted its analysis in several respects. *See League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1371 (11th Cir. 2022)—subsequent history that Plaintiffs neither disclose nor address.

**CONCLUSION**

At a bare minimum, this Court should enter Rule 54(b) judgment as to the Poll-Close-Deadline claims. Although a closer call, this Court should also enter 54(b) judgment as to Plaintiffs' *Anderson-Burdick* challenge to the Periodic Voting Requirement.

Respectfully submitted this 8th day of September, 2022.

MARK BRNOVICH
ATTORNEY GENERAL

By: s/ Drew C. Ensign
Joseph A. Kanefield (No. 15838)
*Chief Deputy & Chief of Staff*
Brunn ("Beau") W. Roysden III (No. 28698)
*Solicitor General*
Drew C. Ensign (No. 25463)
*Deputy Solicitor General*
Robert J. Makar (No. 33579)
*Assistant Attorney General*
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 542-5200
Drew.Ensign@azag.gov

*Attorneys for Mark Brnovich, Arizona Attorney General*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of September, 2022, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for Filing, which will send notice of such filing to all registered CM/ECF users.

s/ Drew C. Ensign
Drew C. Ensign
*Counsel for Mark Brnovich, Arizona Attorney General*