**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, et al., | No. CV-21-01423-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Katie Hobbs, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Rule 54(b) motion for entry of judgment on dismissed claims. (Doc. 174.) For the following reasons, the motion is denied.

**RELEVANT BACKGROUND**

This action involves a challenge to two voting laws that were enacted by the Arizona legislature following the 2020 election. The first is Senate Bill 1485, which provides that voters who do not cast a mail-in ballot in two consecutive election cycles must be removed from Arizona's permanent early voting list. The second is Senate Bill 1003, which clarifies that the deadline for a voter to attempt to "cure" a missing signature on an early ballot is 7:00 PM on election day.

Plaintiffs in this action are four nonprofit groups. Additionally, the Democratic Senatorial Campaign Committee and the Democratic Congressional Campaign Committee have intervened as Plaintiffs. Defendants are Arizona Secretary of State Katie Hobbs, Arizona Attorney General Mark Brnovich, and the recorders from all 15 Arizona counties. Additionally, the Republican National Committee and the National Republican Senatorial

Committee have intervened as Defendants. For ease of reference, the Court will refer to the various entities on each side of this dispute as Plaintiffs and Defendants.

In the complaint, Plaintiffs assert three claims. In Count One, Plaintiffs allege that S.B. 1485 and S.B. 1003, "individually and collectively," violate the First and Fourteenth Amendments because they create an undue burden on the right to vote. (Doc. 1 ¶¶ 127-35.) In Count Two, Plaintiffs allege that S.B. 1485 and S.B. 1003, "individually and collectively, violate the Fourteenth and Fifteenth Amendments because they were adopted for the purpose of denying voters of color full and equal access to the political process." (*Id.* ¶¶ 136-41.) And in Count Three, Plaintiffs allege that S.B. 1485 and S.B. 1003, "individually and collectively, violate Section 2 of the Voting Rights Act because they were adopted for the purpose of denying voters of color full and equal access to the political process." (*Id.* ¶¶ 142-45.)

In November 2021, Defendants moved to dismiss all of Plaintiffs' claims. (Docs. 76, 77.)

On June 24, 2022, after extensive briefing and oral argument, the Court granted the motion to dismiss in part and denied it in part. (Doc. 154.) More specifically, the Court dismissed Count One in its entirety, dismissed Counts Two and Three to the extent they raise challenges to S.B. 1003, and declined to dismiss Counts Two and Three to the extent they raise challenges to S.B. 1485. (*Id.*) The Court also granted Plaintiffs leave to amend, but Plaintiffs declined to do so by the court-imposed deadline. (Doc. 168.)

On August 18, 2022, Defendants filed the motion now pending before the Court—a Rule 54(b) motion for entry of partial judgment as to the dismissed claims. (Doc. 174.)

On September 1, 2022, Plaintiffs filed an opposition. (Docs. 175, 176.)

On September 8, 2022, Defendants filed a reply. (Doc. 177.)

Neither side requested oral argument.

…

…

…

**DISCUSSION**

I. <u>Legal Standard</u>

Rule 54(b) of the Federal Rules of Civil Procedure provides that where, as here, an action involves multiple claims or parties,

> the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

*Id.*

"Rule 54(b) relaxes the former general practice that, in multiple claims actions, *all* the claims had to be finally decided before an appeal could be entertained from a final decision upon any of them." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 409 (2015) (internal quotation marks omitted). Thus, Rule 54(b) is designed to provide parties with an opportunity to appeal a ruling before a case has fully terminated. *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435 (1956) (Rule 54(b) "provide[s] a practical means of permitting an appeal to be taken from one or more final decisions on individual claims, in multiple claims actions, without waiting for final decisions to be rendered on all the claims in the case").[1]

Before entering judgment under Rule 54(b), "the district court first must render 'an ultimate disposition of an individual claim.'" *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 574 (9th Cir. 2018) (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980)). "The court then must find that there is no just reason for delaying judgment on

---

[1] *See also* 2 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 54, at 75 (2021) ("Rule 54(b) attempts to reconcile the traditional final judgment rule for appeal with modern joinder practices, which can bring together in one suit claims and parties that might not all be related to one another. If the court rules on some claims but not others, the final judgment rule would not allow immediate appeal even if the resolved claims and the remaining claims were separable. Rather than adjust the final judgment rule, it was deemed preferable to give district judges authority to determine that the claims it had ruled on were sufficiently distinct from the unresolved claims that it made sense to release them for appeal without waiting until all of the other claims were resolved.").

this claim." *Id.* "The burden is on the party endeavoring to obtain Rule 54(b) certification to demonstrate that the case warrants certification." *First Amendment Coal. of Ariz., Inc. v. Ryan*, 2016 WL 4236373, *1 (D. Ariz. 2016) (quoting *Braswell Shipyards, Inc. v. Beazer E., Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993)).

Two sets of considerations bear on whether there is "just reason" for delaying entry of judgment. *Jewel v. NSA*, 810 F.3d 622, 628 (9th Cir. 2015). First, courts analyze "juridical concerns," primarily "whether the certified order is sufficiently divisible from the other claims such that the case would not inevitably come back to [the Court of Appeals] on the same set of facts." *Id.* (cleaned up). *See also Wood v. GCC Bend, LLC*, 422 F.3d 873, 878-79 (9th Cir. 2005) (suggesting that the term "juridical concerns" is synonymous with "consideration of judicial administrative interests"). "This inquiry does not require the issues raised on appeal to be completely distinct from the rest of the action, so long as resolving the claims would streamline the ensuing litigation." *Jewel*, 810 F.3d at 628 (internal quotation marks omitted). Courts in the Ninth Circuit embrace a "pragmatic approach focusing on severability and efficient judicial administration." *Wood*, 422 F.3d at 880 (internal quotation marks omitted). Thus, claims may have "overlapping facts" and still be "separate for purposes of Rule 54(b)." *Id.* at 881.

Second, courts undertake an "equitable analysis." *Jewel*, 810 F.3d at 628. District courts are "encourage[d]" but not required to "make factual findings and to explain their reasons for certifying." *Id.* Under the equitable analysis, courts "focus on traditional equitable principles such as prejudice and delay." *Gregorian v. Izvestia*, 871 F.2d 1515, 1519 (9th Cir. 1989).

"Rule 54(b) certification is proper if it will aid expeditious decision of the case." *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797 (9th Cir. 1991) (internal quotation marks omitted). "However, Rule 54(b) certification is scrutinized to prevent piecemeal appeals in cases which should be reviewed only as single units." *Id.* at 797-98 (internal quotation marks omitted). Entry of judgment under Rule 54(b) "is not routine" in ordinary cases and "should not become so." *Wood*, 422 F.3d at 879. The Ninth Circuit has advised that it

"cannot afford the luxury of reviewing the same set of facts in a routine case more than once without a seriously important reason." *Id.* at 882. It has also repeatedly admonished that "Rule 54(b) should be used sparingly." *Gausvik v. Perez*, 392 F.3d 1006, 1009 n.2 (9th Cir. 2004). *See also Frank Briscoe Co., Inc. v. Morrison-Knudson Co., Inc.*, 776 F.2d 1414, 1416 (9th Cir. 1985) ("Judgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties.") (internal quotation marks omitted).

II. The Parties' Arguments

Defendants seek the entry of judgment in their favor as to all of Plaintiffs' challenges related to S.B. 1003 and as to Plaintiffs' *Anderson-Burdick* challenge to S.B. 1485. (Doc. 174.) As for the S.B. 1003-related challenges, Defendants argue that the June 2022 dismissal order qualifies as a "final" or "ultimate" disposition for Rule 54(b) purposes because Plaintiffs subsequently declined the Court's grant of leave to amend with respect to the dismissed S.B. 1003-related claims. (*Id.* at 6-7.) Defendants also contend there is "no just reason" to delay entering judgment on the S.B. 1003-related claims because (1) those claims are completely separable from Plaintiffs' S.B. 1485-related claims, and thus there is no risk that entering judgment now would result in the appellate courts considering the same issues more than once or that future developments could result in mootness issues; (2) Defendants would suffer harm from delayed review of the S.B. 1003-related claims, as "[t]he State is entitled to finality and certainty as to the validity of its Poll-Close Deadline" yet Plaintiffs are attempting to "hang a proverbial Sword of Damocles over the State's non-signature curing process for many years to come"; and (3) Plaintiffs would suffer no prejudice from the entry of judgment, and indeed "[i]f Plaintiffs truly believe that the Poll-Close Deadline causes them irreparable harm and unlawfully disenfranchises voters, it is difficult to understand why they would voluntarily and gratuitously accept such harms for multiple election cycles when the State was offering

an alternative option through Rule 54(b)." (*Id.* at 7-9.) Next, turning to the *Anderson-Burdick* challenge to S.B. 1485 in Count One, Defendants again contend that the dismissal of this challenge in the June 2022 order is a "final" or "ultimate" disposition for Rule 54(b) purposes in light of Plaintiffs' failure to take advantage of the Court's grant of leave to amend. (*Id.* at 9-10.) As for the "no just reason" requirement, Defendants acknowledge that the analysis is "not as clear-cut as the non-signature curing claims" analysis but argue this consideration still favors their position because "[t]he issues presented by the *Anderson-Burdick* claim are largely distinct from Plaintiffs' intentional-discrimination challenge to [S.B. 1485]," in that the former turns on the objective effect of the challenged law while the latter requires a "solely subjective" analysis of the legislature's intent. (*Id.* at 10-11.)

Plaintiffs oppose Defendants' request. (Doc. 175 [opposition]; Doc. 176 [joinder].) Plaintiffs argue the June 2022 dismissal order did not result in a sufficiently final disposition of the dismissed claims to qualify for Rule 54(b) certification because they have reserved their right to seek leave to amend their complaint at a future stage of the case in an attempt to revive the dismissed claims. (Doc. 175 at 4-6.) Alternatively, Plaintiffs argue that Defendants cannot satisfy the "no just reason" standard for several reasons. First, Plaintiffs contend that it is usually the losing party that seeks the entry of judgment under Rule 54(b), not the prevailing party, and a prevailing party's mere desire for "finality and certainty" does not qualify as a "pressing need" for immediate appellate review. (*Id.* at 1, 7-11.) Second, Plaintiffs contend that their pending intentional-discrimination challenge to S.B. 1485 raises factual and legal issues that overlap with their now-dismissed *Anderson-Burdick* challenge to S.B. 1485, such that entering judgment as to the dismissed claim would create a risk of duplicative appellate litigation. (*Id.* at 2, 11-12.) Third, in a related vein, Plaintiffs contend they would suffer harm from the premature entry of judgment because this outcome would result in "wasteful litigation" and "force [them] into a Hobson's choice . . . [of] either hav[ing] to appeal the dismissed claims immediately or risk abandoning altogether their appellate rights as to the dismissed claims." (*Id.* at 1-2.)

In reply, Defendants argue that Plaintiffs' brief "lays bare the calculating cynicism underlying Plaintiffs' claims. Despite their lofty, high-minded rhetoric about vindicating all voters' rights, Plaintiffs are remarkably blasé about ensuring that the alleged harms they purportedly seek to end actually come to pass with near-absolute certainty. And for perhaps half a decade or more, all to gain the most minute of tactical advantages here." (Doc. 177 at 1.) Turning more specifically to Plaintiffs' arguments, Defendants argue that the June 2022 dismissal order was sufficiently final for Rule 54(b) purposes in light of Plaintiffs' failure to take advantage of the Court's grant of leave to amend by the court-imposed deadline (*id.* at 5-7); that there is no presumption against granting Rule 54(b) relief when it is sought by the prevailing party (*id.* at 2-4); that Defendants have a legitimate need for certainty and immediate review due to the unique history of litigation related to Arizona's signature-curing deadline and the general need for certainty with respect to election laws (*id.* at 4-5); that Plaintiffs have failed to identify any specific prejudice they would suffer from the entry of judgment (*id.* at 7-8); and that even if there is some overlap between the dismissed and remaining claims related to S.B. 1485, such overlap alone does not preclude the entry of judgment under Rule 54(b) (*id.* at 8-9).

III. <u>Analysis</u>

The parties spill much ink debating whether the June 2022 order constituted a sufficiently final disposition of Plaintiffs' *Anderson-Burdick* challenges to S.B. 1003 and S.B. 1485 and Plaintiffs' intentional-discrimination challenge to S.B. 1003 such that certification under Rule 54(b) *could* be ordered as to those claims. The Court finds it unnecessary to resolve that dispute because certification is unwarranted under the second prong of the certification analysis, which considers whether there is "no just reason" to delay entry of judgment. *Jewel*, 810 F.3d at 628. The "no just reason" analysis requires consideration of both equitable and juridicial concerns and the Court concludes, in its discretion, that both sets of concerns counsel against certification here.

First, Defendants' equitable arguments concerning why there is a "pressing need[]"[2]

---

[2] *Frank Briscoe*, 776 F.2d at 1416 ("Judgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings

- 7 -

for certification are unpersuasive. In this action, Defendants seek to maintain the changes and clarifications to Arizona's electoral laws that were brought about by S.B. 1003 and S.B. 1485. The June 2022 dismissal order supports Defendants' position because it allows those changes and clarifications to remain in effect. One would think that Defendants would be pleased with the status quo and that Plaintiffs, if anyone, would be the litigants eager to obtain expedited review of the June 2022 order. Although Defendants waste no opportunity to point out the perceived inconsistencies in Plaintiffs' position on this point, they fail to grapple with the contradictions posed by their own position.

At any rate, Defendants identify only one specific benefit they might derive from a certification order—the finality and certainty that would flow from obtaining expedited confirmation of the victory they previously achieved. (Doc. 174 at 8 ["The State is entitled to finality and certainty as to the validity of its Poll-Close Deadline . . . ."].) But a bare desire for certainty and finality is not the sort of pressing need that courts have found sufficient to justify certification under Rule 54(b). *See, e.g.*, *Tiscareno v. Frasier*, 2012 WL 5417900, *1 (D. Utah 2012) (agreeing that "the lack of finality alone, when all claims against the defendant have been dismissed, does not meet the requisite hardship required for Rule 54(b) certification"); *Onyx Props., LLC v. Bd. of Cty. Comm'rs of Elbert Cty.*, 916 F. Supp. 2d 1191, 1211 (D. Colo. 2012) ("This is not the usual case of the losing party requesting the entry of final judgment under Rule 54(b), but rather the prevailing party seeking to force the losing party to seek (or not seek) appellate relief. . . . The BOCC has not referred me to any authority . . . for the proposition that it endures hardship from having to wait until the other intertwined claims raised by the Developmental Plaintiffs pending against it are decided on the merits. Furthermore, even if the BOCC does have such an interest, I conclude that it does not outweigh Rule 54(b)'s policy of preventing piecemeal appeals.").

This is true even though the underlying litigation concerns a challenge to the validity

---

and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties.") (internal quotation marks omitted).

- 8 -

of election laws. Defendants contend that, in the absence of a certification order, "recurrent issues [will remain] needlessly unresolved for multiple election cycles" and create "frozen conflicts [that] undermine the certainty that conducting elections requires" (Doc. 177 at 5), but these concerns are speculative—this Court *rejected* the challenges that Plaintiffs raised to S.B. 1003, as well as one of Plaintiffs' theories for challenging S.B. 1485, and Defendants do not explain why the existence of this favorable ruling (from their perspective) somehow creates an atmosphere of uncertainty and frozen conflict that can only be remedied by expedited appellate review. For similar reasons, the Court is unpersuaded by Defendants' contention that, in the absence of expedited appellate review, some other court might ignore the *Purcell* doctrine and impose a destabilizing injunction on the eve of an election. The speculative need to guard against this hypothetical development is not the sort of "pressing need" that Rule 54(b) contemplates. Finally, to the extent Defendants seek certification of the dismissal of Plaintiffs' *Anderson-Burdick* challenge to S.B. 1485, it is not clear why granting certification would result in the certainty that Defendants hope to obtain. Plaintiffs' intentional-discrimination challenge to S.B. 1485 remains pending in this Court, so expedited appellate review of the dismissal of Plaintiffs' *Anderson-Burdick* challenge to S.B. 1485 would not fully resolve the question of that law's validity.

The bottom line is that, although it is not clear that granting Defendants' certification request would be particularly harmful to Plaintiffs, it is also not clear that denying the request would cause Defendants to suffer any significant or cognizable form of harm. This state of affairs cuts against Defendants because, as the movants, they bear the burden of proof in seeking what is meant to be an unusual remedy granted "only where necessary to avoid a harsh and unjust result." *Morrison-Knudsen Co., Inc. v. Archer*, 655 F.2d 626, 965 (9th Cir. 1981). That showing has simply not been made here.

Second, because there is significant overlap between the dismissed claims as to which Defendants seek certification and the remaining claims in this case (*i.e.*, Plaintiffs' intentional-discrimination challenge to S.B. 1485), juridicial concerns also counsel against

certification. As noted in previous orders (*see, e.g.*, Doc. 184 at 14), one of the factors courts consider when assessing whether a defendant acted with a discriminatory purpose is the impact of the official action and whether it bears more heavily on one race than another. Accordingly, it is likely the Court will consider this factor during future stages of this case when evaluating Plaintiffs' pending intentional-discrimination challenge to S.B. 1485. However, the Court already considered this factor when evaluating (and dismissing) Plaintiffs' *Anderson-Burdick* challenge to S.B. 1485. (Doc. 154 at 38-39.) Indeed, in the June 2022 dismissal order, the Court discussed how this factor bears on each type of claim. (*Id.* at 52-53 ["As discussed in Part II.B.2 above, Plaintiffs plausibly allege that voters of color will be disproportionately affected by S.B. 1485. Although the alleged burden is not significant or even moderate for purposes of the first step of the *Anderson-Burdick* inquiry, it will still (according to Plaintiffs' well-pleaded allegations) be felt disproportionately by protected groups. . . . [B]ecause Plaintiffs have plausibly alleged that S.B. 1485 does, in fact, have a disparate impact on certain racial groups, they have plausibly alleged one of the considerations that might, in combination with other considerations, support a discriminatory purpose claim under *Arlington Heights* and VRA § 2."].) Accordingly, granting certification would pose a risk of inefficient, duplicative appellate review. *Cf. Gonzalez v. US Human Rights Network*, 2021 WL 1312553, *4 (D. Ariz. 2021) (denying certification request where the existence of overlapping issues meant that "entering judgment under Rule 54(b) would increase the chance that the Ninth Circuit would have to review this case twice").

The existence of some factual overlap between dismissed and pending claims is not, of course, always fatal to a certification request under Rule 54(b), but given Defendants' failure to make a convincing equitable case for why certification is necessary here, the potential for inefficient and duplicative appellate proceedings simply provides another reason why the certification request should be denied.

…

…

Accordingly,

**IT IS ORDERED** that the Defendants' Rule 54(b) motion for entry of judgment (Doc. 174) is **denied**.

Dated this 2nd day of November, 2022.

Dominic W. Lanza
United States District Judge