WILENCHIK & BARTNESS
A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone: 602-606-2810    Facsimile: 602-606-2811

Dennis I. Wilenchik, #005350
John "Jack" D. Wilenchik, #029353
Jordan C. Wolff, #034110
admin@wb-law.com
*Attorneys for Non-Party Republican Party of Arizona*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota; et al., | Case No.: 2:21-cv-01423-DWL |
| Plaintiffs, | |
| and | MOTION TO STRIKE |
| DSCC and DCCC, | "SUMMARY OF DISCOVERY DISPUTE" |
| Plaintiff-Intervenors, | |
| v. | |
| Katie Hobbs, in her official capacity as Arizona Secretary of State; et al., | (Assigned to the Honorable Judge Dominic Lanza) |
| Defendants, | |
| and | |
| RNC and NRSC, | |
| Defendant-Intervenors. | |

The Republican Party of Arizona ("AZGOP") hereby files this Motion to Strike the "Summary of Discovery Dispute Relating to Compliance with the Court's October 27, 2022 Order" that was unilaterally filed by Plaintiffs (Doc. 228).

First, Plaintiffs have to date not conducted, or even attempted to conduct, any telephonic meet and confer regarding the discovery dispute with AZGOP, in express violation of LRCiv

1  7.2(j) and this Court's December 15, 2021 Order (Doc. 85) requiring such consultation before
2  filing a joint statement of discovery dispute. (From Doc. 85: "…[I]f a discovery dispute arises and
3  cannot be resolved despite sincere efforts to resolve the matter through personal consultation (in
4  person or by telephone), the parties shall jointly file…a brief written summary of the dispute…")
5  For that reason alone, the filing should be summarily stricken. (*See e.g.* Fed.R.Civ.P. 12, which
6  provides that "[a] motion that does not contain the required certification may be stricken
7  summarily"; or LRCiv 2.7(j) which provides that "[a]ny discovery motion brought before the
8  Court without prior personal consultation with the other party and a sincere effort to resolve the
9  matter, may result in sanctions.") Nevertheless, on Wednesday June 21st, Plaintiffs' counsel
10 demanded to submit a joint discovery report. Because undersigned counsel was scheduled to
11 undergo medical treatment the following week, followed by the July 4th holiday (and other
12 professional commitments/deadlines), then on Friday June 23rd undersigned counsel asked for
13 until today (July 6th) to submit the AZGOP's portion of the report to Plaintiffs, which the AZGOP
14 just did. But within minutes of the AZGOP doing so, Plaintiffs' counsel submitted only the
15 Plaintiffs' portion to this Court and claimed that AZGOP missed its "deadline." This is rank bad-
16 faith. AZGOP hereby requests that the Court summarily strike the Plaintiffs' unilateral report
17 (Doc. 228) and order that a joint statement be submitted. A copy of AZGOP's portion of the joint
18 report is also attached hereto (although the Plaintiffs should be ordered to simply withdraw Doc.
19 228 and then re-file the joint statement, if for no other reason than to have a clear record).

**RESPECTFULLY SUBMITTED** on July 6, 2023.

**WILENCHIK & BARTNESS, P.C.**

 /s/ John "Jack" D. Wilenchik
Dennis I. Wilenchik, Esq.
John "Jack" D. Wilenchik, Esq.
Jordan C. Wolff, Esq.
admin@wb-law.com
jackw@wb-law.com
*Attorneys for the Republican Party of Arizona*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2023, I electronically transmitted the foregoing document to the Clerk of the Court through the CM/ECF system, which will send a Notice of Electronic Filing to all CM/ECF registrants for this matter.

*/s/ Christine M. Ferreira*

3

# EXHIBIT 1



## THE REPUBLICAN PARTY OF ARIZONA'S POSITION

Setting aside for the moment its important objections under the First Amendment (which, to date, the Court has not squarely decided),[8] and without waiving those objections: following the Court's Order on October 27th of last year, and following subsequent additional discussions between Plaintiffs and the Arizona Republican Party ("ARP") to refine the scope of Plaintiffs' requests, the ARP produced hundreds of pages of documents and emails to Plaintiffs last December/this January, following a reasonable search that was conducted with reasonable search terms. The ARP has few fulltime staff (around four at any given time) and had to utilize temporary staff at its own expense to perform the searches. ARP also produced a comprehensive privilege log at its own expense, identifying documents/emails withheld from the search results pursuant to legal privilege. This is the first time that it is hearing that Plaintiffs have some kind of outstanding objection to the sufficiency of that log (and ARP remains unclear as to what that objection actually is).

Several weeks to months after ARP made its response to the subpoena, Plaintiffs complained for the first time that they instead wanted the ARP to search a very broad list of 46 separate keyword phrases — as just (six) examples, any email or document mentioning "young" and "vot*"; "old" and "vot*"; "black" and "vot*"; "cur*"; "audit"; the number "1003"; etc. – across the entire Google Drive and Google accounts of ARP's management. In response, ARP asked the Plaintiffs to help bear the expense of hiring a third-party litigation support group (which requested a $10,000 retainer) to assist in any additional searches that Plaintiffs wanted it to do, but Plaintiffs flatly refused to bear any expense whatsoever. Nevertheless, in good faith, ARP directed a staffmember to assist in making these additional searches, who then spent an entire week – around 40 hours – trying to conduct the requested searches, and who carefully compiled a categorized list of results, which turned up around 7,500 emails and approximately one thousand documents after running just 75% of the searches requested. ARP explained to Plaintiffs that the searches

---

[8] The Court's October 27th Order in this matter (Doc. 171) concluded with, "Plaintiffs are not seeking a conclusive determination that the RPA has forfeited any claim of First Amendment privilege and acknowledge the RPA may withhold documents…"

were so broad, that one search term ("cur*") simply "broke the system" because there were too many results; and that the searches for numbers like "1003" (which is the number of one the legislative bills at issue in this case, "SB 1003" – but Plaintiffs specifically demanded a search for just the number and not the bill) turned up numerous irrelevant documents like credit cards and addresses containing that number. ARP shared the number of results (per keyword search, and per each staff member's mailbox and Google Drive that was searched) with the Plaintiffs and asked them to help narrow the search, but again they flatly refused, citing the alleged importance of the issues at stake in the litigation. ARP informed Plaintiffs that it will not bear the expense of reviewing this number of documents, and (especially given the Plaintiffs' refusal to even attempt to narrow down the searches in any way) that a reasonable search had already been conducted and the results already produced earlier this year. Plaintiffs then responded with a demand to submit this Joint Statement.

Finally, in all the time that this suit has been pending, ARP has diligently preserved its First Amendment objections; and it has repeatedly demanded from the Plaintiffs that they justify any real connection that ARP has to this suit, other than the fact that the ARP's (now-former) Chair had made public comments supportive of the legislation at issue. In all the time that this suit has been pending, Plaintiffs have refused to identify any other genuine basis for their subpoena, essentially admitting that it was motivated purely by First Amendment exercise and that ARP has no real connection to this litigation whatsoever. The Court was not squarely faced with this issue on the Motion to Compel that was previously filed, primarily because the Plaintiffs limited the relief that they were seeking at that time, and because of the limited record on this issue at the time (particularly with respect to the breadth of the Plaintiffs' demands, which has since grown a "thousand-fold"). In support of its First Amendment privilege against the Plaintiffs' requests, as they currently stand, ARP hereby submits a declaration from ARP's Executive Director to support that enforcement of the Plaintiffs' current requests is likely to result in harassment, membership withdrawal, or discouragement of new members, or other consequences which

objectively suggest an impact on, or chilling of, members' associational rights. The Declaration is more than sufficient to meet the first "test" under *Perry v. Schwarzenegger*, which requires only a "prima facie" showing of a "reasonable probability" of "arguable" harm to invoke First Amendment privilege. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010); *Brock v. Loc. 375 Plumbers Int'l Union of Am., AFL-CIO*, 860 F.2d 346, 350 n.1 (9th Cir. 1988). Plaintiffs' demands for these extensive and broad keyword searches are clearly not "carefully tailored to avoid interference with protected activities" or to seek information that is "highly relevant to their claims" (particularly in light of the standard set by the *Brnovich*[9] case, which is that only the motivations of the legislature as a whole are to be examined in claims such as the Plaintiffs' – not even individual legislators, much less outside political groups). *Perry*, 591 F.3d at 1161. Because their demands are clearly a gross overreach in multiple ways, their request for additional searches that would result in producing more than around eight thousand extra documents must be denied.

Finally, it would be unreasonably burdensome/expensive, and serve no salutary purpose, to require the ARP to spend five to six figures to compile some kind of document-by-document "First Amendment privilege log" that individually identifies the nearly ten thousand documents that Plaintiffs are demanding, to the extent that anyone is requesting, requiring, or even arguing in support of that. The expense of producing such a log is clearly prohibitive and harassing in and of itself; nor does it serve any serious purpose, because the ARP's First Amendment privilege arises not out of the particular content and identities of purportedly responsive documents,[10] but rather by the fact that the subpoena was and is motivated solely by the exercise of free speech and the chilling effect of disclosure. *Perry*, 591 F.3d at 1162. For all the foregoing reasons, Plaintiff's request for additional searches resulting in nearly ten thousand documents must be denied.

---

[9] *Brnovich v. Democratic Nat'l Comm.,* 141 S. Ct. 2321, 210 L. Ed. 2d 753 (2021).

[10] Whether a First Amendment privilege applies "turns not on the type of information sought, but on whether disclosure of the information will have a deterrent effect on the exercise of protected activities." *Perry*, 591 F.3d at 1162.

# EXHIBIT A



## DECLARATION

I, Nick Ivory, hereby declare:

1. I am the Executive Director of the Arizona Republican Party ("ARP") and am authorized to speak on its behalf.

2. It is deeply chilling to the ARP's ability to formulate and execute strategy concerning matters such as fundraising, voter turnout, and public messaging, if – as the direct result of it(s former Chair) speaking out in support of legislation – the ARP is ordered to compile, review and produce more than around eight thousand documents, in litigation to which it is not even a party; and where the documents include but are not limited to internal emails and documents which simply contain a word that may be identified with various groups of voters (e.g. old, young, black, disabled, Hispanic, latino, native American, Indian, etc.), or that simply mention a word that touches on the voting process (e.g. audit, cure, early ballot, unsigned ballot, etc.), as well as emails or documents containing the ARP's thoughts on particular legislation (e.g. SB 1485, SB 1003), or even emails or documents that just contain a certain number (1485 or 1003).

3. In particular, knowing that my staff or I will be subject to such compelled disclosure is deeply chilling to our public messaging, because it means that if we express support on matters of public interest like legislation, then it will necessarily expose our internal emails and documents to public scrutiny, including by politically-hostile parties (like the Plaintiffs in this case) or even the government. It destroys any notion

of confidentiality or privacy in our communications, and discourages our right to freely speak and assemble.

4. Further, it is chilling to the ability of my staff and myself to freely discuss matters like fundraising and voter turnour, both with persons inside and outside of the ARP, when any mention of any demographic group of voters in our communications will result in them becoming public. We have a valid and reasonable expectation that our communications will stay private, so that opposing political part(ies) or other hostile groups cannot "steal" or otherwise scrutinize our communications and strategies.

5. Finally, the cost of searching, compiling, and reviewing thousands of documents under these circumstances (including producing a log of nearly eight thousand documents) is harassing and chilling as well. My staff and I will be reluctant to communicate by normal means, including by email and/or by preparing and sharing anything in writing, knowing not only that it will become public under these circumstances but also that we will incur tens of thousands of dollars in expenses trying to respond and/or protect ourselves. While the Plaintiffs in this and other similar cases have multiple lawyers, and apparently maintain a large budget for litigation, the Arizona Republican Party does not and cannot do that – it is primarily focused on fundraising for political activities and voter turnout. Being subject to so much burden (the exposure and expense of compiling, reviewing and producing around at least 8,000 documents under these circumstances), as the result of merely engaging in protected activity (speaking out in support of legislation), is clearly chilling and harmful to this organization's ability to operate both now and in the

future. It is likely that members whose emails are publicly exposed will decide not to participate in further party activities, and the fact that members' emails are subject to such compelled production – especially to politically-hostile parties like the Plaintiffs, and merely because of their exercise of free speech – will clearly frustrate or discourage the recruitment of new members or staff.

6. I have read the foregoing statements, and the statements made therein are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___7/6/2023___.

DocuSigned by:<br>
*Nick Ivory*<br>
929678DD9F70438...<br>
_____<br>
By: Nick Ivory<br>
Title: Executive Director, ARP