| | |
|---|---|
| Lauren Elliott Stine (AZ #025083)<br>Coree E. Neumeyer (AZ# 025787)<br>QUARLES & BRADY LLP<br>One Renaissance Square<br>Two North Central Avenue<br>Phoenix, AZ 85004-2391<br>(602) 229-5200<br>Lauren.Stine@quarles.com<br>Coree.Neumeyer@quarles.com<br><br>Lee H. Rubin (Admitted PHV)<br>MAYER BROWN LLP<br>Two Palo Alto Square, Suite 300<br>3000 El Camino Real<br>Palo Alto, CA 94306-2112<br>(650) 331-2000<br>lrubin@mayerbrown.com | Courtney Hostetler (Admitted PHV)<br>John Bonifaz (Admitted PHV)<br>Ben Clements (Admitted PHV)<br>FREE SPEECH FOR PEOPLE<br>1320 Centre Street, Suite 405<br>Newton, MA 02459<br>(617) 249-3015<br>jbonifaz@freespeechforpeople.org<br>chostetler@freespeechforpeople.org<br>bclements@freespeechforpeople.org |

*Additional counsel listed on last page*

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota; et al.,<br>        Plaintiffs,<br>  and<br>DSCC and DCCC,<br>        Plaintiff-Intervenors,<br>  v.<br>Adrian Fontes, in his official capacity as Arizona Secretary of State; et al.,<br>        Defendants,<br>  and<br>RNC and NRSC,<br>        Defendant-Intervenors. | Case No. CV-21-01423-DWL<br><br>**JOINT SUMMARY OF DISCOVERY DISPUTE RELATING TO COMPLIANCE WITH THE COURT'S OCTOBER 27, 2022 AND JULY 17, 2023 ORDERS** |

**INTRODUCTION**

Pursuant to the Court's December 15, 2021 Order (Doc. 85), Plaintiffs Mi Familia Vota, Arizona Coalition for Change ("AZC4C"), Living United for Change in Arizona ("LUCHA"), and League of Conservation Voters, Inc. d/b/a Chispa AZ and non-party The Republican Party of Arizona ("RPA") submit the following joint summary of an existing discovery dispute. Specifically, this summary relates to a dispute over the Court's July 17, 2023 order that, "[w]ithin 21 days of this date[,] Non-Party Republican Party of Arizona shall run the search terms as outlined in counsel Wilenchik's May 10, 2023 email (except the search term CUR* shall be changed to cure, curing and cured) and shall produce the documents responsive to the search terms and/or disclose a privilege log." ECF No. 236.

**PLAINTIFFS' POSITION**

**Background.** The RPA has wholly failed to comply with the Court's July 17, 2023 order. Instead, at 4:30 MST on August 7, 2023—the deadline to comply—counsel for RPA requested to confer. The following day—*after* the deadline—RPA sent two Excel files that it characterized as "privilege logs," which list each of the roughly 61,000 documents that "hit" on the Court Ordered search terms. RPA stated that that it was unable to review the logged documents for "actual relevance or responsiveness to the subpoena" and acknowledged "there may be items listed on the separate attorney-client privilege log which are not in fact subject to privilege, or items on the First Amendment privilege log which in fact are." *See* Exhibit A. RPA's Counsel further claimed it "is asserting attorney-client privilege/work client privilege" and "First Amended privilege with respect to all of these documents." *Id.*

RPA's logs are plainly deficient. The "First Amendment" log lists 60,894 documents, but contains only limited information for each document—a "control number," various date-related fields, the file extension, and the search terms on which the documents hit. *See* Exhibit B. The log does not include, for example, the sender or recipients of any emails, document custodians, subject lines, file names, or any descriptions of the content

of the documents to allow Plaintiffs to assess the privilege being asserted. The second "privilege log" produced by RPA—which purports to log documents protected by the attorney-client/work-product privileges (Exhibit C ), similarly does not include email subject lines, file names, any description of the documents, or identify the specific privilege that is being asserted. Exhibit C.[1] After reviewing the logs, Plaintiffs advised the RPA that it "cannot in good faith assert that it has a basis to withhold all of these documents under any privilege" when it was clear they had not reviewed any of the documents. Plaintiffs agreed to confer, but insisted that the RPA "immediately produce all responsive documents and provide a compliant privilege log for materials that it has a legitimate and good faith basis to withhold." Exhibit A.

The parties conferred on August 9. The RPA suggested that it was belatedly exploring the use of "AI" (artificial intelligence) to cull the documents, and asked if Plaintiffs would consider receiving the documents that hit on the search terms subject to an attorney eyes only (AEO) arrangement. Reserving their rights, Plaintiffs said they would consider an AEO arrangement but the time for protracted negotiations had long passed and that any AEO proposal would need to be straightforward, with actual production of the documents to follow immediately. On August 10, 2023, RPA sent Plaintiffs a proposed protective order, and the next day, said that an AI analysis "reduced this down to 5,040 items". Exhibit D. Plaintiffs promptly responded. By e-mail on Saturday, August 12, Plaintiffs identified six specific problems with the RPA's proposed protective order and logs, and stated that unless the RPA satisfactorily addressed each point "and produce[d] the documents [the RPA was] withholding immediately," Plaintiffs would seek further relief from the Court, including an order that the RPA had waived privilege. *Id.*

**Argument**. This Court has twice ordered the RPA to comply with Plaintiffs'

---

[1] In addition, the RPA stated that it would not provide recipient or subject line information regarding many of the documents until a protective order was entered, but did not contemporaneously propose an order that would be acceptable to the RPA. *Id.*

-2-

subpoena. And the Court's July 17, 2023 could not have been more plain in what it required RPA to do, and by when (August 7). But the RPA produced neither the responsive documents nor a privilege log by August 7, as it had been ordered to do. Indeed, RPA did not even contact Plaintiffs about compliance with the Court's August 7 deadline until 4:30 PM MST *the day compliance was due*. And even after the deadline, the RPA failed to produce responsive documents or a privilege log that satisfies Fed. R. Civ. P. 26(5)(A). Indeed, RPA concedes it has never reviewed the documents and that documents on its putative "privilege log" may "not in fact [be] subject to privilege." Exhibit A.

RPA's logs are facially decifient. "[A] party asserting the privilege must provide a privilege log that describes in details the documents or information claimed to be privileged and the precise reasons the materials are subject to the privilege asserted." *Kephart v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2007 WL 2253608, at *2 (D. Mont. Aug. 2, 2007). The "logs" that the RPA belatedly provided do not do this. Accordingly, the Court should find that RPA has waived privilege, *see, e.g.*, *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149–50 (9th Cir. 2005) (affirming district court's finding of waiver where, as here, log was was very untimely and "even the untimely assertion of privileges … was insufficient"), and order (i) RPA to produce all of the documents that hit on the Court Ordered search terms immediately[2], and (ii) such other relief as the Court thinks appropriate. At the Court's request, Plaintiffs are prepared to submit further briefing.

---

[2] The RPA has claimed that it has identified 32,619 documents which were non-responsive auto-generated emails regarding donations. *See* Ex. D. Plaintiffs do not contend that the RPA should be required to produce these documents, but given the RPA's flouting of the July 17 Order, it should be required to certify what it has done to confirm the documents are non-responsive.

-3-

## THE REPUBLICAN PARTY OF ARIZONA'S POSITION

The RPA fully complied with the Court's Order by timely producing a First Amendment privilege log that identified all items responsive to the Court-ordered keyword search that are being withheld pursuant to First Amendment privilege.[3] The real issue here is that, as undersigned counsel indicated his concern for during the last hearing, the keyword search was very broad and resulted in 61,298 unique "hits" (meaning 61,298 unique emails and other documents). The cost to date for the RPA (hereinafter referred to as the "RPA" or "ARP") to hire a professional document forensics company ("Repario")[4] to conduct the Court-ordered keyword search, and to produce the privilege log, has already exceeded twenty-three thousand dollars ($23,000). The ARP is a nonprofit with only four permanent staff; and on August 15th, it reported having only $28,325.74 in cash on hand.[5] The ARP reasonably requested that Plaintiffs agree to further limit/define their keyword searches, but the Plaintiffs have refused and instead insisted that these 61,298 items be manually reviewed for responsiveness. Repario has quoted the cost of manually reviewing 61,298 items as between $80,000 (eighty-thousand dollars) and $100,000 (one hundred thousand dollars), which the ARP simply cannot afford. Helpfully, Repario suggested using a new technique whereby Artificial Intelligence can further narrow down the keyword hits, which "only" costs several thousand dollars to use. ARP went ahead and incurred the cost of ordering and using the AI, and it successfully reduced the number of "hits" down to

---

[3] A separate attorney-client privilege log was also produced, as discussed at bottom. Both logs were clearly identified and explained to the Plaintiffs as a "First Amendment privilege log" and an "attorney-client privilege log." Plaintiffs' alleged confusion about the nature of the privileges being asserted is ingenuine.

[4] At the end of the last hearing, the Court indicated that it had concerns with the ARP's use of low-cost labor – i.e. temporary workers – to conduct the document search and production that it previously made to the Plaintiffs in this matter to satisfy this subpoena; and that if it used such labor again, that would not be consistent with what the Court wanted. Accordingly, ARP hired an outside professional document forensics company to conduct the search, at its own expense.

[5] For the period ending on July 31st. Its August 15th report to the FEC can be viewed here: https://docquery.fec.gov/pdf/975/202308159596553975/202308159596553975.pdf

5,040.[6] However, even though one of the Plaintiff's lawyers also brought up the idea of using AI, the Plaintiffs subsequently stated (through a different attorney) that they do <u>not</u> agree to the use of AI—rather, they insist on ARP incurring the $80,000 to $100,000 in costs for a manual review. This is both unreasonable and infeasible. The costs that ARP has been incurring are clearly significant; and because it is a non-party, then the Court "<u>must</u> protect" it from such expenses. *See* Rule 45(d)(2)(B)(ii)(emphasis added). As it stands, the RPA's cash on hand will be completely depleted as the direct result of this subpoena. Because the Plaintiffs continue to insist on an expensive manual review, then RPA again[7] requests that the Court order cost-shifting—namely, that Plaintiffs be ordered to bear the prospective expense of the manual review that they are demanding, in addition to the general cost of hiring Repario with respect to this subpoena, which has already exceeded $23,000.[8] In addition: following what undersigned counsel understood to be a suggestion from the Court at the last hearing, undersigned counsel tried to work out a protective order with Plaintiffs' counsel under which ARP's First Amendment-privileged documents would be marked "attorneys' eyes only" and then disclosed to Plaintiffs' counsel, so that Plaintiffs' counsel could review them and determine whether they are even useful or relevant to the Plaintiffs' case. However, after undersigned counsel spent significant time drafting up such an order, and after one round of incomplete discussion between counsel, Plaintiffs asked to submit this joint statement instead. And finally: Plaintiffs fail to point to any actual

---

[6] Even after the use of "AI," a final round of manual review will still be necessary, which Repario has estimated will cost another $7,000.

[7] At the last hearing, the Court indicated that it believed that the ARP's request for cost-shifting had been waived; but the ARP has in fact requested cost-shifting both times that it has appeared before the Court on this matter, including prior to the Court's original October 27th Order. The Court originally decided to deny cost-shifting because "[t]he RPA has not itemized (or even mentioned) its expenses." (Doc. 184, page 41, line 18.) But when the Court made that statement, the ARP did not know (and could not know) exactly how much it would later be asked or ordered to do, or the cost thereof. Now that it does know, and because those costs are clearly significant, the Court <u>must</u> order cost-shifting pursuant to Rule 45(d)(2)(B)(ii).

[8] Repario has not yet submitted a "final" invoice. When its costs on the project have been finalized, then ARP can submit them to Plaintiffs/the Court.

deficiency in the RPA's First Amendment log, i.e. they do not identify what more information that they would need to assess the RPA's claim of First Amendment privilege. The RPA has otherwise described the basis for its assertion of First Amendment privilege numerous times—most recently in its last filing in this matter (Exhibit 1 to Doc. 229), which was supported by the Declaration of its Executive Director. But in fairness to all parties, the courts have not been clear on what kind of information can/must be included in a "First Amendment privilege log." It was the Ninth Circuit in *Perry v. Schwarzenegger*, 591 F.3d 1147, 1153 (9th Cir. 2010) that remarked, in a footnote, that "some form of a privilege log" should be created to support a claim of First Amendment privilege. But the *Perry* case is itself something of a contradiction on this point, because while a "First Amendment privilege log" was clearly not prepared or submitted in that case, the court plainly felt that it had enough information to assess and uphold the assertion of First Amendment privilege anyway (because it did so).[9] As such, the RPA prepared and produced a First Amendment privilege log that identified only the date of a document, whether it was related to other document(s), its nature/file extension ("eml," "docx," "pdf," etc.), and the search term(s) contained in the document. Undersigned counsel also tried to call Plaintiffs' counsel on the day before production to arrange a protective order under which other fields (e.g. from/to/cc, subject line/filename) could be shared. But as of this time, no such agreement has been reached.[10]

---

[9] Further, the court in *Perry* remarked about how the assessment of First Amendment privilege depends on the "deterrent" effect that compelled disclosure could have on First Amendment protected activities—rather than the type of documents being sought, much less on the type of documents being withheld (which is what a privilege log typically describes). *Perry*, 591 F.3d at 1162. And whereas an attorney-client privilege log, for example, should include information like the "to/from/cc" fields of an email in order to assess whether it was directed only to counsel, the inclusion of such information on a "First Amendment privilege log" would largely defeat the purpose of the log, because "[t]he compelled disclosure of political associations…**in itself**, can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Id.* (quoting *Buckley v. Valeo*, 424 U.S. 1, 64 (1976))(emphasis added).

[10] An attorney-client privilege log was also separately disclosed for the 61,298 keyword results (based on any law firm domains that appeared in them). After the RPA used AI to further reduce

-6-

**CERTIFICATION OF COUNSEL**

Undersigned counsel certify that they have attempted to resolve this discovery dispute through personal consultation (via written communications and telephonic conferences) and sincere efforts as required by Local Rule of Civil Procedure 7.2(j). Despite these good-faith efforts, the parties have been unable to resolve their dispute.

---

the 61,298 items to 5,040, no law firm addresses appeared in remaining 5,040 items and therefore only a First Amendment privilege is being asserted over those items.

| | | |
|---|---|---|
|1| Dated: August 22, 2023 | Respectfully submitted, |

/s/ *Coree E. Neumeyer*

| | |
|---|---|
| Lee H. Rubin (Admitted PHV) | Lauren Elliott Stine (AZ #025083) |
| MAYER BROWN LLP | Coree E. Neumeyer (AZ# 025787) |
| Two Palo Alto Square, Suite 300 | QUARLES & BRADY LLP |
| 3000 El Camino Real | One Renaissance Square |
| Palo Alto, CA 94306-2112 | Two North Central Avenue |
| (650) 331-2000 | Phoenix, AZ 85004-2391 |
| lrubin@mayerbrown.com | (602) 229-5200 |
| | Lauren.Stine@quarles.com |
| | Coree.Neumeyer@quarles.com |
| | |
| Gary A. Isaac (Admitted PHV) | Courtney Hostetler (Admitted PHV) |
| Daniel T. Fenske (Admitted PHV) | John Bonifaz (Admitted PHV) |
| Jed W. Glickstein (Admitted PHV) | Ben Clements (Admitted PHV) |
| MAYER BROWN LLP | FREE SPEECH FOR PEOPLE |
| 71 S. Wacker Drive | 1320 Centre Street, Suite 405 |
| Chicago, IL 60606 | Newton, MA 02459 |
| (312) 782-0600 | (617) 249-3015 |
| gisaac@mayerbrown.com | chostetler@freespeechforpeople.org |
| dfenske@mayerbrown.com | jbonifaz@freespeechforpeople.org |
| jglickstein@mayerbrown.com | bclements@freespeechforpeople.org |

Rachel J. Lamorte (Admitted PHV)
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 362-3000
rlamorte@mayerbrown.com

*Attorneys for Plaintiffs*

/s/ *John D. Wilenchik*          (*with consent*)

John D. Wilenchik
WILENCHIK & BARTNESS, P.C.
2810 North Third Street
Phoenix, AZ 85004
(602) 606-2810
jackw@wb-law.com
admin@wb-law.com

*Attorneys for Republican Party of Arizona*

# CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2023, a copy of the foregoing **JOINT SUMMARY OF DISCOVERY DISPUTE** was filed electronically with the Arizona District Court Clerk's Office using the CM/ECF System for filing, which will provide a Notice of Electronic Filing to all CM/ECF registrants, and served via e-mail on the following recipients:

John D. Wilenchik
WILENCHIK & BARTNESS, P.C.
2810 North Third Street
Phoenix, AZ 85004
(602) 606-2810
jackw@wb-law.com

/s/   Coree E. Neumeyer