Lauren Elliott Stine (AZ #025083)
Coree E. Neumeyer (AZ# 025787)
QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004-2391
(602) 229-5200
Lauren.Stine@quarles.com
Coree.Neumeyer@quarles.com

Lee H. Rubin (Admitted PHV)
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
(650) 331-2000
lrubin@mayerbrown.com

Courtney Hostetler (Admitted PHV)
John Bonifaz (Admitted PHV)
Ben Clements (Admitted PHV)
FREE SPEECH FOR PEOPLE
1320 Centre Street, Suite 405
Newton, MA 02459
(617) 249-3015
jbonifaz@freespeechforpeople.org
chostetler@freespeechforpeople.org
bclements@freespeechforpeople.org

*Additional counsel listed on last page*

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota; et al.,<br><br>              Plaintiffs,<br><br>    and<br><br>DSCC and DCCC,<br><br>              Plaintiff-Intervenors,<br><br>    v.<br><br>Adrian Fontes, in his official capacity as Arizona Secretary of State; et al.,<br><br>              Defendants,<br><br>    and<br><br>RNC and NRSC,<br><br>              Defendant-Intervenors. | Case No. CV-21-01423-DWL<br><br>**PLAINTIFFS' MOTION TO COMPEL THE REPUBLICAN PARTY OF ARIZONA** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Pursuant to the Court's August 31, 2023, Order, ECF No. 249, Plaintiffs Mi Familia Vota, Arizona Coalition for Change, Living United for Change in Arizona, and League of Conservation Voters, Inc. d/b/a Chispa AZ respectfully move this Court to compel the Republican Party of Arizona ("RPA") to produce all withheld documents identified using the Court-ordered search terms.[1]

Nearly 20 months after Plaintiffs' served their subpoena on the RPA, the RPA continues to fail to comply with its discovery obligations, even after numerous efforts by Plaintiffs and this Court to resolve the dispute. The RPA seeks to hide behind the shield of privilege, but it has refused to substantiate its privilege assertions through the production of a privilege log that complies with the Federal Rules of Civil Procedure. By failing to provide a compliant privilege log even after the Court ordered it to do so on two separate occasions, the RPA has waived any privilege over the withheld documents. Accordingly, the Court should compel the RPA to produce all withheld documents.

**PROCEDURAL BACKGROUND**

On January 10, 2022, Plaintiffs served a subpoena on the RPA seeking production of responsive documents. *See* ECF No. 161-1. After the RPA asserted a categorical First Amendment privilege, Plaintiffs moved to compel production, which the Court granted in part. *See* ECF No. 184 (Oct. 27, 2022). In so doing, the Court rejected the RPA's categorical refusal to produce documents based on a blanket assertion of First Amendment privilege. *Id.* at 9. The Court noted that the RPA failed to produce a privilege log or any evidence supporting its assertion. *Id.* at 9-13. Because Plaintiffs did not at that time seek a conclusive determination that the RPA waived any claim to a First Amendment privilege, the Court ordered RPA to produce "a privilege log describing the nature of the withheld

---

[1] The RPA has claimed that it has identified 32,619 documents which were non-responsive auto-generated emails regarding donations. *See* ECF No. 244-4. Plaintiffs do not contend that the RPA should be required to produce these documents, but given the RPA's flouting of the July 17 Order, it should be required to certify what it has done to confirm the documents are non-responsive.

-1-

documents or communications 'in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'" *Id.* at 9 (quoting *Karnoski v. Trump*, 926 F.3d 1180, 1195 (9th Cir. 2019)).

Although Plaintiffs continued to meet and confer with the RPA after the Court's first order, the parties ultimately reached an impasse. After another round of briefing and oral argument, the Court gave the RPA 21 days to search for responsive documents and either produce them pursuant to a non-waiver or other agreement, or produce a privilege log of withheld documents. On August 8, 2023, one day after the Court-ordered deadline, the RPA produced two privilege logs which are devoid of information that would allow Plaintiffs to assess any of the RPA's claims of privilege.

Plaintiffs then sought relief from this Court, including an order that the RPA had waived its privilege. On August 31, 2023, the Court ordered Plaintiffs to brief (1) the sufficiency of the privilege logs and (2), assuming the logs were inadequate, whether that inadequacy constituted waiver. ECF No. 249.

## ARGUMENT

The privilege logs the RPA provided to Plaintiffs plainly are inadequate. The barebones information the privilege logs offer falls far short of the information that needs to be furnished in order to assert a privilege. Indeed, by asserting privilege over every document that simply contained a search term, the RPA concedes that it has not conducted the kind of particularized assessment required to satisfy a privilege assertion.

Despite numerous opportunities to provide valid privilege logs, the RPA continues to fail to meet its burden. Under Ninth Circuit precedent, the RPA has now waived its privilege assertion over the withheld documents. The Court should therefore order production of all withheld documents.

## I.    The Privilege Logs Are Inadequate

"The purpose of a privilege log is to provide the opposing party and the Court with enough information to evaluate the claim of privilege." *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*, No. C07-1359 PJH (JL), 2008 WL 5214330, at *3

(N.D. Cal. Dec. 12, 2008).  "In essence, the party asserting the privilege must make a *prima facie* showing that the privilege protects the information the party intends to withhold."  *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992).

To make the *prima facie* showing through a privilege log, the party asserting the privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed—*and do so in a manner that . . . will enable other parties to assess the claim*."  Fed. R. Civ. P. 26(b)(5)(A)(ii) (emphasis added).  At a minimum, the "privilege log must identify '(a) [the individuals] involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated.'"  *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 237 (N.D. Cal. 2015) (quoting *In re Grand Jury Investigation*, 974 F.2d at 1071); *see also MJG Enters., Inc. v. Cloyd*, 2012 WL 12964345, at *2 (D. Ariz. Oct. 30, 2012).  "[B]oilerplate objections or blanket refusals inserted into a response to a . . . request for production of documents are insufficient to assert a privilege."  *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005).  Instead, the privilege must "be raised as to each record sought to allow the court to rule with specificity."  *Clarke v. Am. Com. Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992).

Courts have held that these requirements apply similarly in the context of the First Amendment privilege.  For instance, in *La Union Del Pueblo Entero v. Abbott*, the court ordered production of a privilege log that "must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  2022 WL 17574079, at *10 (W.D. Tex. Dec. 9, 2022) (internal quotation marks omitted).  In so doing, the court noted the

-3-

"limited" nature of the First Amendment privilege. *Id.* at \*9.[2]  Other courts have similarly required parties asserting a First Amendment privilege to produce a privilege log that complies with Rule 26(b)(5).  *E.g.*, *The Ohio Organizing Collaborative v. Husted*, 2015 WL 7008530, at \*4 (S.D. Ohio Nov. 12, 2015) (rejecting assertion that a privilege log compliant with Rule 26(b)(5) would be "tantamount to an infringement on [the party's] First Amendment rights" and holding that a party asserting First Amendment privilege must "produce a privilege log that, without divulging the privileged information, refers to *each* document withheld . . . and includes sufficient information to justify the invocation of the privilege" (emphasis added)); *Point Ruston, LLC v. P. Nw. Reg'l Council of United Bhd. of Carpenters & Joiners of Am.*, 2009 WL 3190361, at \*1 (W.D. Wash. Sept. 30, 2009) (ordering production of privilege log within eight days that would "dutifully inform [the moving party] as to what documents or other requested materials [the asserting party] believes are protected under privilege, whether it be associational or otherwise").

The RPA's two privilege logs both fail to make a *prima facie* showing that either the First-Amendment or the attorney-client privilege applies.  Neither privilege log contains the information needed for the Court or Plaintiffs to "evaluate the claim of privilege" for the individual documents.  *Baxter Healthcare Corp.*, 2008 WL 5214330, at \*3.  The RPA's First Amendment privilege log lists only (1) a "control number," (2) various date-related fields, (3) the file extension, and (4) the search terms on which the documents hit.  Similarly, the RPA's attorney-client privilege log omits the necessary information to make a *prima facie* showing of privilege.  That log omits email subject lines, file names, any description of the documents, and fails to identify the specific privilege being asserted.  In omitting other information, the privilege logs fail to provide either the Court or Plaintiffs any insight into the nature of the document, or enable them to assess the merits of the RPA's privilege claims. The RPA's First Amendment Privilege log provides

---

[2] The court also distinguished circumstances where the First Amendment privilege would apply on the face of the request, contrasting "cases involving the disclosure of membership lists." *La Union Del Pueblo Entero*, 2022 WL 17574079, at \*9.  Plaintiffs' requests plainly do not fall into this category.

the Court and Plaintiffs with **no** additional germane information beyond what was available when the RPA categorically refused to comply with the subpoena.  *See La Union Del Pueblo Entero*, 2022 WL 17574079, at *9.

Rather than assess whether either privilege applies to each document, the RPA claims broadly that it "is asserting attorney-client privilege/work client privilege" and "First Amendment privilege with respect to all of the documents."  ECF No. 244-1.  But as discussed, the Ninth Circuit has squarely rejected the use of such boilerplate, blanket objections.  *Burlington N. & Santa Fe Ry. Co.*, 408 F.3d at 1149.  The RPA does not identify particular responsive documents for which it is claiming a privilege.  It instead summarily asserts that the privilege applies to over 60,000 documents that the RPA concedes it has not reviewed.  *See* ECF No. 244-1, at 4.  That is plainly insufficient to make a *prima facie* showing of privilege.  *See RTC Indus., Inc. v. Fasteners for Retail, Inc.*, No. 17 C 3595, 2019 WL 5003681, at *17-18 (N.D. Ill. Oct. 8, 2019) (finding "unacceptable" a privilege log listing "irrelevant, non-responsive documents" and ordering a new privilege log "containing only entries that correspond to documents and communications that it is withholding on the basis of a privilege").

RPA's blanket assertion of privilege unsupported by any actual review of the documents further calls into question the RPA's claim that all documents are subject to the First Amendment privilege. For instance, because it asserts a privilege over documents that simply contain a search term, the RPA apparently has not determined if emails exist within the broad set of documents that are between the RPA and individuals who do not necessarily share the RPA's mission. Such emails would not be subject to the First Amendment Privilege, but neither the Court nor Plaintiffs can determine whether such documents have been withheld through the facially delinquent logs that the RPA has produced.

Courts in this circuit have held similarly threadbare privilege logs to be inadequate to make a *prima facie* showing of privilege.  In *Shakespear v. Wal-Mart Stores, Inc. LLC*, 2012 WL 13055159 (D. Nev. Nov. 5, 2012), for example, the district court rejected the

defendant's privilege assertion where it was "unclear whether [the defendant] actually has information responsive to [the requests for production] . . . or whether [the defendant] is merely objecting as a formality." *Id.* at *3. The court overruled the defendant's privilege assertions, noting that "[w]ithout a privilege log and a developed record about the nature of the privilege asserted over specific documents, the court cannot make any findings about the applicability of" the privilege assertions. *Id.*

Nor is the RPA correct in suggesting that it does not need to produce a more detailed privilege log to substantiate its First Amendment privilege claim. As the Ninth Circuit stated, "some form of a privilege log is required" to assert a First Amendment privilege. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1154 n.1 (9th Cir. 2010); *see also* ECF No. 184 at 9; ECF No. 249. The defendants there initially refused to produce a privilege log, so the district court denied their "blanket assertion of privilege." *Perry v. Schwarzenegger*, 2009 WL 3823174, at *1 (N.D. Cal. Nov. 11, 2009). The defendants then produced a sample of documents for *in camera* review ***and*** provided the plaintiffs a "privilege log which identifies the submitted documents by number and provides a simple description of the documents." *Id.* The privilege log produced contained detailed information, including the specific privilege asserted, the type of document, the document's authors and recipients,[3] and the basis for the privilege asserted.[4] *See Perry v. Schwarzenegger*, Case No. C-09-2292 VRW, ECF No. 250-1 (N.D. Cal. Nov. 6, 2009). Only after the defendants produced the documents to the court and provided a privilege log did the district court assess their privilege claims, and the court based its decision on its *in camera* review of the documents.

---

[3] While the privilege log did protect the identity of *some* document recipients by replacing their names, it did not categorically omit all names without any analysis of the specific documents on the log.

[4] The privilege log in *Perry* also is illustrative of the detail needed to justify an assertion of privilege. For instance, the first entry explains that the party withheld the document on First Amendment grounds because it was a "[n]onpublic document [that] reflects internal discussion and planning about campaign and fundraising strategy and reveals donor/volunteer/member names." *Perry v. Schwarzenegger*, Case No. C-09-2292 VRW, ECF No. 250-1, at 1 (N.D. Cal. Nov. 6, 2009). Another entry withheld a "[n]onpublic document [that] reflects draft messaging related to Proposition 8, including edits to potential message." *Id.*

Unsurprisingly then, when the case reached the Ninth Circuit, the court of appeals' decision centered on the district court's review of the *in camera* documents. The RPA is therefore incorrect to suggest that, under *Perry*, a "First Amendment privilege log was clearly not prepared or submitted in that case." ECF No. 244, at 6. Indeed, it is hard to see how the test in *Perry* could ever be met with a privilege log as devoid of information as the one produced by the RPA.

In sum, the RPA's privilege logs fall far short of providing the details required for the Court and Plaintiffs to adequately determine whether the RPA's privilege claims have merit.

## II.    The RPA Has Waived Its Privileges

The RPA has had numerous opportunities over the past 20 months to substantiate its privilege assertions. At every juncture, it has refused to do so. Accordingly, the Court should conclude that the RPA has waived its privileges over the withheld documents.

In determining whether a party has waived its privilege assertions, courts in this Circuit apply the factors set forth in *Burlington Northern & Santa Fe Railway Co.*, 408 F.3d at 1149. These factors include (1) "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged," (2) "the timeliness of the objection and accompanying information about the withheld documents," (3) "the magnitude of the document production," and (4) "other particular circumstances of the litigation that make responding to discovery unusually easy . . . or unusually hard." *Id.* "These factors should be applied in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process." *Id.* All four factors weigh in favor of a finding of waiver.

*First*, as discussed above, the RPA's assertions of privilege completely deprive both the Court and Plaintiffs of the ability to determine the validity of the assertions. The RPA relies on blanket assertions of privilege over tens of thousands of documents without any specific explanations as to why any document is privileged. Such "boilerplate objections

or blanket refusals . . . are insufficient to assert a privilege." *Id.* Indeed, the RPA has failed even to provide any information concerning each of the documents listed on its privilege logs. A cursory look at the privilege log produced in *Perry* underscores how deficient the RPA's privilege logs are. As noted above, the defendants there identified the type of document, the document's authors, the document's recipients, and the basis of privilege—explaining in detail why the privilege applied. *See Perry v. Schwarzenegger*, Case No. C-09-2292 VRW, ECF No. 250-1 (N.D. Cal. Nov. 6, 2009). Here, by contrast, the sparse information RPA has provided makes it impossible to tell if documents may be genuinely subject to the First Amendment Privilege, or if instead the documents may be communications to the RPA from unaligned citizens. This factor thus weighs in favor of a finding of waiver.

*Second*, the timeliness of the objection and the accompanying information also weighs in favor of a finding of waiver. Plaintiffs first served the RPA with a subpoena seeking documents in January 2022—20 months ago. After the RPA wholly refused to comply with the subpoena based on its assertions of privilege, this Court ordered the RPA in October 2022 to produce a privilege log. The RPA then conducted plainly inadequate searches and review of documents, stonewalling Plaintiffs' requests for adequate searches to be run. This caused Plaintiffs to seek Court intervention *yet again*, and the Court held that the RPA's search and review process was inadequate and ordered a privilege log within 21 days of the order. *See* ECF No. 236. Then, after flouting the Court-imposed deadline, the RPA produced two woefully deficient privilege logs and presented only boilerplate assertions of privilege.

The RPA has had nearly 20 months to support its assertions of privilege. It has continually failed to do so, extending this dispute over a 20-month stretch and requiring repeated judicial intervention. *See Sweet v. Mesa*, 2022 WL 326406, at *5 (D. Ariz. Feb. 3, 2022) (finding eight-month discovery dispute weighed in favor of waiver). And as discussed above, the information accompanying the assertion of privilege was woefully inadequate. This factor thus plainly favors a finding of waiver.

-8-

*Third*, though unclear on its face, the magnitude of production also weighs in favor of waiver.  The RPA's privilege logs list over 60,000 documents that hit on the Court-approved search terms.  But as the RPA's subsequent representations make clear, the number of actually responsive documents is likely much lower. First, the RPA has indicated that 32,619 documents are form donation emails that it has since identified as non-responsive.  ECF No. 244-4, at 5.  And as the Court recognized in the July 17, 2023 hearing, the RPA is not required to log non-responsive documents.  *See also RTC Indus., Inc.*, 2019 WL 5003681, at *17-18.  Had the RPA done anything to assess the responsiveness of the documents prior to providing the logs, the magnitude of the production would likely be much smaller than the 60,000 documents the RPA has identified.

The RPA cannot use its refusal to identify the responsive documents to argue that the magnitude of production is too high to justify waiver.  And even assuming all of the documents were responsive, the RPA's delay undermines its position that the magnitude of production weighs against waiver.  *See, e.g.*, *Tatung Co., Ltd. v. Hsu*, 2016 WL 695971, at *11 (C.D. Cal. Feb. 19, 2016) (concluding that third factor weighed in favor of waiver despite hundreds of thousands of documents where the party asserting privilege delayed disclosure and production of privilege log for over a year).  Thus, the third factor also weighs in Plaintiffs favor. But even if it does not, it is outweighed by the other factors.

*Fourth*, the other particular circumstances in this case also favor waiver.  As stated above, the RPA has had 20 months to identify responsive documents and make proper assertions over privileged documents.  It has not done so.  *See, e.g.*, *Tatung Co.*, 2016 WL 695971, at *11; *N.L.R.B. v. Sanders-Clark & Co., Inc.*, 2016 WL 2968014, at *8 (C.D. Cal. Apr. 25, 2016) (noting that year-long delay in production of privilege log outweighed "time and expense required to produce the unprivileged documents").  For its part, the RPA has failed to point to any unusual factors that would make it unduly burdensome to respond to Plaintiffs' requests.  Moreover, at an earlier stage, Plaintiffs expressed a willingness to consider an attorneys'-eyes-only arrangement, which would further simplify the discovery

1  process. It was **the RPA's choice** to not pursue this in any manner until 4:30 PM the day

2  compliance with the Court's July 17, 2023 Order was due. The particular circumstances of

3  this case therefore make clear that responding to Plaintiffs' requests would have been

4  straightforward.

5         Taken as a whole, the RPA's refusal to justify its privilege assertions has resulted

6  in a "needless waste of time and resources" and is emblematic of a "tactical manipulation

7  of the rules and the discovery process."  *Burlington N. & Sante Fe Ry. Co.*, 408 F.3d at

8  1149.  The Court should thus hold that the RPA has waived its privilege assertions.

9                                   <u>**CONCLUSION**</u>

10        The Court should grant Plaintiffs' motion to compel, find that the RPA has waived

11  its privilege assertions, and order production of all withheld documents.

Dated: September 8, 2023

Respectfully submitted,

Lee H. Rubin (Admitted PHV)
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
(650) 331-2000
lrubin@mayerbrown.com

Gary A. Isaac (Admitted PHV)
Daniel T. Fenske (Admitted PHV)
Jed W. Glickstein (Admitted PHV)
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
gisaac@mayerbrown.com
dfenske@mayerbrown.com
jglickstein@mayerbrown.com

Rachel J. Lamorte (Admitted PHV)
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 362-3000
rlamorte@mayerbrown.com

*/s/Coree E. Neumeyer*
Lauren Elliott Stine (AZ #025083)
Coree E. Neumeyer (AZ# 025787)
QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004-2391
(602) 229-5200
Lauren.Stine@quarles.com
Coree.Neumeyer@quarles.com

Courtney Hostetler (Admitted PHV)
John Bonifaz (Admitted PHV)
Ben Clements (Admitted PHV)
FREE SPEECH FOR PEOPLE
1320 Centre Street, Suite 405
Newton, MA 02459
(617) 249-3015
chostetler@freespeechforpeople.org
jbonifaz@freespeechforpeople.org
bclements@freespeechforpeople.org

*Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 8, 2023, a copy of the foregoing **MOTION TO COMPEL THE REPUBLICAN PARTY OF ARIZONA** was filed electronically with the Arizona District Court Clerk's Office using the CM/ECF System for filing, which will provide a Notice of Electronic Filing to all CM/ECF registrants, and served via e-mail on the following recipients:

John D. Wilenchik
WILENCHIK & BARTNESS, P.C.
2810 North Third Street
Phoenix, AZ 85004
(602) 606-2810
jackw@wb-law.com

                    _/s/ Pam Worth_