Lauren Elliott Stine (AZ #025083)
Coree E. Neumeyer (AZ# 025787)
QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue, Suite 600
Phoenix, AZ 85004-2391
(602) 229-5200
Lauren.Stine@quarles.com
Coree.Neumeyer@quarles.com

Lee H. Rubin (Admitted PHV)
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
(650) 331-2000
lrubin@mayerbrown.com

Courtney Hostetler (Admitted PHV)
John Bonifaz (Admitted PHV)
Ben Clements (Admitted PHV)
FREE SPEECH FOR PEOPLE
1320 Centre Street, Suite 405
Newton, MA 02459
(617) 249-3015
jbonifaz@freespeechforpeople.org
chostetler@freespeechforpeople.org
bclements@freespeechforpeople.org

*Additional counsel listed on last page*

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Mi Familia Vota; et al., <br><br> Plaintiffs, <br><br> and <br><br> DSCC and DCCC, <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> Adrian Fontes, in his official capacity as Arizona Secretary of State; et al., <br><br> Defendants. | Case No. CV-21-01423-DWL <br><br> **JOINT SUMMARY OF DISCOVERY DISPUTE RELATING TO LEGISLATIVE PRIVILEGE** |

## I. INTRODUCTION

Pursuant to the Court's December 15, 2021 Order (Doc. 85), Plaintiffs Mi Familia Vota, Arizona Coalition for Change ("AZC4C"), Living United for Change in Arizona ("LUCHA"), and League of Conservation Voters, Inc. d/b/a Chispa AZ, non-partiesAimee Yentes, Mark Lewis, Dan Farley, and the Free Enterprise Club,[1] as well as non-parties Former Senator Michelle Ugenti-Rita, Former Senator Kelly Townsend, Senator JD Mesnard, Speaker Ben Toma, Former Representative Becky Nutt, and Senator Rick Gray, current and former legislators ("the Legislators") submit the following joint summary of an existing discovery dispute. Specifically, this dispute relates to subpoenas that Plaintiffs issued to third-party non-legislators seeking in pertinent part communications between them and the Legislators ("Subpoenas"), and seeks to resolve, among other issues, whether the legislative privilege applies to responsive documents sought from, and in the possession, custody, or control of, third-party non-legislators.

## II. Plaintiffs' Position

**Background.** In its July 18, 2023 Order, this Court upheld legislators' assertion of legislative privilege to deny Plaintiffs' motion to compel documents that Plaintiffs sought from legislators. ECF No. 237, at 15. But the Court raised the "possib[ility]" that Plaintiffs could "issue additional subpoenas to other third parties identified in Legislators' privilege log and that the state legislative privilege would not be implicated by such an approach." *Id.* at 23. Plaintiffs thereafter served the Subpoenas on certain third parties identified in the Legislators' privilege log. Several recipients responded that they posessed responsive documents but declined to produce them, asserting legislative and First Amendment privileges and other objections. Counsel for the Legislators also asserted that the Court's prior Orders foreclose production of the requested documents by third-parties. Plaintiffs

---

[1] Plaintiffs initially served a third-party subpoena on Aimee Yentes, an employee of the Free Enterprise Club ("FEC"), who communicated with Arizona legislators. Among other objections (including those at issue here), Yentes objected to the subpoena on the ground that communications made in her capacity as an employee of the FEC were not in her custody, control, or possession. While preserving their position that Yentes' objection was meritless, Plaintiffs thereafter served a subpoena on the FEC to resolve that particular objection.

have met and conferred with counsel for the subpoena recipients and Legislators over the past several months but are at an impasse concerning the applicability of legislative and First Amendment privileges to the responsive documents that without dispute are in the possession, custody or control of the subpoena recipients.

**Argument**. The non-legislator third parties cannot invoke either privilege to avoid being required to produce documents in their possession, custody, or control, which constitute or reflect their communications with Legislators or legislative staff. First, the legislative privilege does not apply to such documents. As this Court has noted, seeking these documents from non-legislators "would not raise the significant concerns raised by a subpoena issued directly to Legislators." ECF No. 237, at 22-23. The legislative privilege's core purposes, open discussion and freedom from distraction, *see, e.g., Lee v. City of Los Angeles,* 908 F.3d 1175, 1187 (9th Cir. 2018); *In re N. Dakota Legis. Assembly*, 70 F.4th 460, 464 (8th Cir. 2023), do not apply to the documents sought in the Subpoenas that are in the possession, custody, or control of third-parties.

As this Court recognized, "confidentiality interests are less discernible" in communications between Legislators and third parties, and application of the privilege in these circumtances does not facilitate intra-legislator candor. *See* ECF No. 237, at 14; *see also League of Women Voters of Fla., Inc. v. Lee*, 340 F.R.D. 446, 454 n.2 (N.D. Fla. 2021). Legislators cannot expect confidentiality when they communicate with third parties, and non-legislators cannot expect privacy in lobbying public officials. *See, e.g.*, *Favors v. Cuomo,* 285 F.R.D. 187, 212 (E.D.N.Y. 2012). As this Court and others have recognized in the First Amendment privilege context, "external communications" with government officials are not "held in confidence." *See* ECF No. 269, at 22-24; ECF No. 184, at 12-13; *see also Sol v. Whiting*, 2013 WL 12098752, at **2-3 (D. Ariz. Dec. 11, 2013) (noting that communications with public officials are available to the public under Arizona's freedom of information law). By the same token, the Legislators' claims of a "chilling effect" are meritless.

More crucially, the Subpoenas do not implicate the legislative privilege's fundamental concern, preventing *legislators* from "divert[ing] their time, energy, and attention from their legislative tasks to defend the litigation." ECF No. 237, at 14 (quoting *Lee,* 908 F.3d at 1187). And merely by sending documents to legislators, non-legislators cannot shield their own communications from production. Here, Plaintiffs issued the Subpoenas to *non-legislators*. Some non-legislators authored and still possess many of the requested communications: For example, Mr. Lewis and Mr. Farley have asserted legislative privilege over their own emails urging legislators to pass legislation. *See* Ex. A. Compelling the third-parties to produce such documents in their possession would not "requir[e] legislators to negotiate protective orders or to suffer contempt proceedings," *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 233 (5th Cir. 2023), or "imped[e] the "functioning of the legislature," *N. Dakota Legis. Assembly*, 70 F.4th at 464. Thus, there is no burden on legislators that can justify application of the privilege.[2] Given the privilege's fundamental concern is to avoid encumbering the legislative process, it is hardly "gamesmanship" to pursue third party discovery that should not be privileged. *See League of Women Voters*, 340 F.R.D. at 454 n.2 (noting that obtaining documents from third parties

---

[2] Even if the legislative privilege applied to these documents, the "serious" federal interests Plaintiffs seek to protect overcome any qualified privilege the third parties may assert. ECF No. 237, at 20 (quoting *Harris v. Ariz. Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1071 (D. Ariz. 2014)). Applying the five-factor balancing test that weighs the parties' countervailing concerns, *see, e.g.*, *Favors*, 285 F.R.D. at 209, this Court acknowledged the relevance of the requested documents and recognized the gravity of the stakes in voter-rights litigation. *See* ECF No. 237, at 19-20. The remaining two factors— the availability of other evidence and the purposes of the privilege—weigh in favor of requiring *non-legislator* third parties to produce the documents. By issuing the Subpoenas, Plaintiffs pursue their only remaining avenue to obtain these documents. As discussed, moreover, subpoenas issued to non-legislator third parties do not implicate the confidentiality and distraction concerns that animate the legislative privilege. Re-weighing the factors in this "distinct" situation, *id.* at 23 n.10, shows that any qualified privilege must yield to Plaintiffs' interests in obtaining the documents from third-party non-legislators. The Legislators contradict their own prior argument by now contending that the balancing test this Court heavily relied on does not apply. ECF No. 137 at 15; ECF No. 202 at 8 ("Federal courts use a five-factor balancing test to determine whether the privilege will apply."). The out-of-circuit case Legislators cite, *Pernell v. Fla. Bd. of Governors of State Univ.*, 84 F.4th 1339, 1345 (11th Cir. 2023), merely identifies a previously existing circuit split on this issue and does not bind this Court.

would not implicate the legislative privilege because "confidentiality is not the legislative privilege's animating concern").

Second, this Court has twice recognized that "documents [that] involve external communications between [the associations'] custodians and third parties" do not implicate First Amendment privilege. ECF No. 269, at 22-24, 26; ECF No. 184, at 12-13; *Perry v. Schwarzenegger*, 591 F.3d 1147, 1150 (9th Cir. 2009). That principle especially applies to communications between association members and third-party public officials. *See Sol*, 2013 WL 12098752, at *3. In addition, none of the privilege logs that the objecting parties produced contain sufficient information to support a *prima facie* case that disclosing these communications would subject members of their organizations to harassment or cause any other chilling effect. *See* ECF No. 269 at 22 (citing *Perry*, 591 F.3d at 1160). The recipients' First Amendment objections are therefore meritless.

Accordingly, the Court should find that the legislative and First Amendment privileges do not apply and order the third-party subpoena recipients to produce Plaintiffs' requested documents.

### III. Legislators' Position

Plaintiffs should not be allowed to use the Legislators' privilege logs to subvert the legislative privilege and use communications made as part of the legislative process.

Just as the deliberative process privilege protects the formulation of agency policy and promotes frank and independent discussion among decisionmakers, *see F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984), the legislative privilege protects the legislative process from interference in order "to allow duly elected legislators to discharge their public duties without concern of adverse consequences outside the ballot box." *Lee v. City of Los Angeles,* 908 F.3d 1175, 1187 (9th Cir. 2018). Thus, the privilege covers communications between legislators and outside third parties, which are "'part and parcel' of the modern legislative process." *See* Doc. 237 at 14 (quoting *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 236 (5th Cir. 2023)); *see also id.* at 24.

Yet, after the Court upheld the legislative privilege as to the logged documents,

Plaintiffs issued subpoenas asking for those very same documents from the third parties identified in the Legislators' privilege logs as well as other communications with legislators. Although the Legislators do not bear the burden of directly producing the subpoenaed documents, the disclosure and use of privileged legislator communications in response to Plaintiffs' subpoenas will interfere with the legislative process by chilling future dialogue between lawmakers and third parties.

If a legislator knows that his or her communications will not be protected from use in a lawsuit even if the Court upholds the legislator's privilege claim, he or she will likely choose not to engage in those communications going forward so as to protect their preliminary opinions from public disclosure and critique. *Cf. Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 528 (9th Cir. 1983) (holding that the Congressional legislative privilege "protects freedom of speech in the legislative forum" and finding that the forced disclosure of a constituent source could "deter constituents from candid communication with their legislative representatives and otherwise cause the loss of valuable information"). In short, even if a subpoena is not directed to the legislator, the danger remains that production of privileged communications would act as a "deterrent to the uninhibited discharge of their legislative duty." *See La Union Del Pueblo Entero*, 68 F.4th at 238 (internal quotation omitted).

Plaintiffs' novel tactic—force legislators to claim privilege and identify their communications on a detailed privilege log, then use that log to identify subpoena targets and subpoena those privileged communications—has not yet been addressed by any federal court. *See* Doc. 237 at 23 n.10 (noting that none of the decisions discussed in the briefing address whether the legislative privilege would apply to subpoenas issued to a third party). The Court's Order did not come to a "definitive conclusion[]" on whether this is permissible.[3] *Id.* Respectfully, this Court should reject such gamesmanship.

---

[3] As the Court noted, this issue was not raised in the parties' prior briefing, nor were there any such third party subpoenas before the Court at that time. Doc. 237 at 23 n. 10. Research has not found any cases directly on point. The legislators in *League of Women Voters*, 340 F.R.D. at 454 n.2, did not object to production from third parties.

-5-

"The legislative privilege is a personal one and may be waived or asserted by each individual legislator." *Puente Arizona v. Arpaio*, 314 F.R.D. 664, 671 (D. Ariz. 2016) (internal quotation omitted). The Legislators asserted their privilege and the Court upheld that claim. Plaintiffs' tactic would effectively nullify the Legislators' privilege claims and allow Plaintiffs to use the very documents that the Court held are privileged.

Furthermore, the Court should follow the Circuit decisions issued after the initial legislative privilege briefing, which refuse to use the five-factor balancing test for legislative privilege issues. *See Pernell v. Fla. Bd. of Governors of State Univ.*, 84 F.4th 1339, 1345 (11th Cir. 2023) ("None of our sister circuits have subjected the privilege to such a test, and at least four of them have rejected this approach."). Even assuming that the five-factor balancing test is appropriate, the purpose for the privilege overcomes Plaintiffs' purported need for the documents (many of which do not even concern SB 1485, but concern other laws from that session). Indeed, the Court's *in camera* review confirmed that none of the withheld documents were critical to Plaintiffs' case. *See* Doc. 242. Because the disclosure of the communications will chill future discussions during the legislative process, the Court should uphold the privilege with respect to the recipients' communications with legislators. The Legislators would be willing to present additional briefing on these issues if it would aid the Court's decision.

**FEC'S Position:** The subpoena also infringes FEC's First Amendment rights because it seeks documents whose disclosure would unjustifiably burden FEC's associational and political activity. Notably, once "the opponents of disclosure" make "a prima facie case of arguable First Amendment infringement," the burden shifts to the subpoena's proponent to "demonstrate a sufficient need for the discovery to counterbalance that infringement.'" *In re Anonymous Online Speakers*, 661 F.3d 1168, 1174 (9th Cir. 2011) (citation omitted).

Dislosing all documents the Legislators identified as privileged in their own log, as well as "[a]ll [c]ommunications with Arizona state legislators or employees of the Arizona State Legislature, Arizona House of Representatives, or Arizona Senate… related to SB

1485, SB 1003, or other potential or enacted voting legislation," means disclosure of entire conversations over weeks or months with various individuals, all of whom believed at the time they were speaking confidentially. While these are "external communications," the scope and context here raise distinct concerns: such comprehensive disclosure harms FEC's First Amendment rights because it allows anyone to piece together FEC's internal strategies – its playbook for advocacy and public communications. *See, e.g.*, *In re Kincaid*, 3:21-cv-0259-DCG, 2023 WL 5933341 (D.D.C. Aug. 9, 2023) ("First Amendment interests are implicated when releasing internal and external communications could result in 'chilling the free exercise of political speech and association….'" (citation omitted)). Given the overbreadth and marginal relevance of the subpoena's requests, these burdens on FEC's First Amendment rights are unjustified.

FEC requests the opportunity to present additional briefing, as the subpoena implicates complex issues and significant case law on First Amendment privilege, and FEC, as a non-party, has hitherto had no opportunity to brief these issues to the Court.

Mark Lewis and Dan Farley join in the arguments above.

## **CERTIFICATION OF COUNSEL**

Undersigned counsel certify that they have attempted to resolve this discovery dispute through personal consultation (via written communications and telephonic conferences) and sincere efforts as required by Local Rule of Civil Procedure 7.2(j). Despite these good-faith efforts, the parties have been unable to resolve their dispute.

Dated: February 9, 2024

Lee H. Rubin (Admitted PHV)
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
(650) 331-2000
lrubin@mayerbrown.com

Respectfully submitted,

*/s/Coree E. Neumeyer*
Lauren Elliott Stine (AZ #025083)
Coree E. Neumeyer (AZ# 025787)
QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue, Suite 600
Phoenix, AZ 85004-2391
(602) 229-5200
Lauren.Stine@quarles.com
Coree.Neumeyer@quarles.com

| | |
|---|---|
| Gary A. Isaac (Admitted PHV)<br>Daniel T. Fenske (Admitted PHV)<br>William J. McElhaney III (Admitted PHV)<br>MAYER BROWN LLP<br>71 S. Wacker Drive<br>Chicago, IL 60606<br>(312) 782-0600<br>gisaac@mayerbrown.com<br>dfenske@mayerbrown.com<br>wmcelhaney@mayerbrown.com<br><br>Rachel J. Lamorte (Admitted PHV)<br>MAYER BROWN LLP<br>1999 K Street NW<br>Washington, DC 20006<br>(202) 362-3000<br>rlamorte@mayerbrown.com | Courtney Hostetler (Admitted PHV)<br>John Bonifaz (Admitted PHV)<br>Ben Clements (Admitted PHV)<br>FREE SPEECH FOR PEOPLE<br>1320 Centre Street, Suite 405<br>Newton, MA 02459<br>(617) 249-3015<br>chostetler@freespeechforpeople.org<br>jbonifaz@freespeechforpeople.org<br>bclements@freespeechforpeople.org<br><br>*Attorneys for Plaintiffs* |

By: */s/Hannah H. Porter (w/permission)*
Kevin E. O'Malley (Bar No. 006420)
Hannah H. Porter (Bar No. 029842)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:  (602) 530-8000
Facsimile:   (602) 530-8500
kevin.omalley@gknet.com
hannah.porter@gknet.com
*Attorneys for the Legislators*


By: */s/ Timothy A. La Sota*
Timothy A. La Sota, SBN 020539
**TIMOTHY A. LA SOTA, PLC**
2198 East Camelback Road, Suite 305
Phoenix, Arizona 85016
Telephone: (602) 515-2649
Email: tim@timlasota.com
*Attorney for Mark Lewis and Dan Farley*


By: */s/ John Thorpe (w/permission)*
John Thorpe (034901)
Scharf-Norton Center for
  Constitutional Litigation at the
GOLDWATER INSTITUTE
500 E. Coronado Rd.
Phoenix, Arizona 85004
Tel: (602) 462-5000
jthorpe@goldwaterinstitute.org
*Attorney for Free Enterprise Club*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2024, a copy of the foregoing **JOINT SUMMARY OF DISCOVERY DISPUTE** was filed electronically with the Arizona District Court Clerk's Office using the CM/ECF System for filing, which will provide a Notice of Electronic Filing to all CM/ECF registrants.

*/s/ Kim Simmons*