Lauren Elliott Stine (AZ #025083)
Coree E. Neumeyer (AZ# 025787)
QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004-2391
(602) 229-5200
Lauren.Stine@quarles.com
Coree.Neumeyer@quarles.com

Lee H. Rubin (Admitted PHV)
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
(650) 331-2000
lrubin@mayerbrown.com

Courtney Hostetler (Admitted PHV)
John Bonifaz (Admitted PHV)
Ben Clements (Admitted PHV)
FREE SPEECH FOR PEOPLE
1320 Centre Street, Suite 405
Newton, MA 02459
(617) 249-3015
jbonifaz@freespeechforpeople.org
chostetler@freespeechforpeople.org
bclements@freespeechforpeople.org

*Additional counsel listed on last page*

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota; et al., | Case No. CV-21-01423-DWL |
| Plaintiffs, | |
| and | **PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM THIRD-PARTY SUBPOENA RECIPIENTS PURSUANT TO FED. R. CIV. P. 37 AND 45** |
| DSCC and DCCC, | |
| Plaintiff-Intervenors, | |
| v. | |
| Adrian Fontes, in his official capacity as Arizona Secretary of State; et al., | |
| Defendants, | |
| and | |
| RNC and NRSC, | |
| Defendant-Intervenors. | |

Pursuant to Federal Rules of Civil Procedure 37 and 45 and this Court's order, ECF No. 281, Plaintiffs Mi Familia Vota, Arizona Coalition for Change, Living United for Change in Arizona, and League of Conservation Voters, Inc. d/b/a Chispa AZ (jointly, "Plaintiffs"), hereby move the Court for an order compelling certain third parties who communicated with non-party Arizona legislators to produce documents responsive to the Rule 45 subpoenas that Plaintiffs served on or about August 28, 2023 ("the Subpoenas"). *See* Rubin Decl. Exs. 1-4. Plaintiffs have included the information required by Local Civil Rule 37.1 in the declaration filed concurrently in support of this motion and the exhibits attached thereto.

## INTRODUCTION

Plaintiffs allege that the Arizona legislature enacted S.B. 1485 to deny voters of color full and equal access to the political process. This dispute concerns Plaintiffs' latest efforts to obtain discovery to support their claims.

In 2022, Plaintiffs served several non-party current and former state legislators with Rule 45 subpoenas seeking documents concerning S.B. 1485 and related legislation. In its July 18 and August 7, 2023 Orders (ECF Nos. 237 and 242), the Court declined to order production of 196 responsive documents, including 38 communications (the "third-party communications") between those legislators and third parties, which the legislators had withheld on legislative privilege grounds. But the Court raised the possibility that "the state legislative privilege would not be implicated" if Plaintiffs sought the third-party communications by serving "additional subpoenas to third parties identified in the legislators' privilege log." ECF No. 237, at 22-23. Plaintiffs then did just that, but certain of the third-party subpoena recipients and current and former legislators, Former Senator Michelle Ugenti-Rita, Former Senator Kelly Townsend, Senator JD Mesnard, Speaker Ben Toma, Former Representative Becky Nutt, and Senator Rick Gray ("the Legislators"), have objected that production even by such third parties is precluded by the state legislative privilege. Certain third-party subpoena recipients have also asserted a putative First

Amendment privilege to production of responsive documents. These objections are unfounded.[1]

*First*, the legislative privilege does not and cannot apply to documents in the possession of third-party non-legislators. Confidentiality concerns do not justify applying legislative privilege to communications between legislators and third parties. Worries about distraction and burden are likewise inapplicable when the legislators are free to ignore subpoenas that are not directed to them. In upholding the legislators' assertion of privilege for documents in *their* possession, moreover, the Court gave some weight to the possibility that these documents would be otherwise available by service of subpoenas on third parties. Shielding the documents in possession of third parties from disclosure now does not make sense in light of the purposes of the legislative privilege. In the alternative, any qualified privilege the legislators assert must yield to important federal interests because the factors the Court previously cited to deny a motion to compel disclosure by the legislators weigh in favor of granting this motion to compel production by the third-party subpoena recipients.

*Second*, as for the assertion by some third-party subpoena recipients of a First-Amendment privilege, this Court has repeatedly recognized that such a privilege does not apply to communications between members of a political organization and public officials. In any event, the objecting parties have not explained why disclosure of the sought-after documents will chill their expression. Accordingly, the Court should grant Plaintiffs' motion to compel.

---

[1]     Third-party subpoena recipients Dan Farley, Mark Lewis, Aimee Yentes, and the Free Enterprise Club ("FEC") also initially objected to the Subpoenas on the grounds they were overbroad and sought irrelevant information. In addition, Farley and Lewis asserted that whether the communications at issue are shielded from discovery has already been litigated. Plaintiffs understand that Farley, Lewis, Yentes, and the FEC have abandoned such additional objections because they did not raise them in the parties' Joint Statement of the discovery dispute. In any event, those additional objections are frivolous. This Court has already acknowledged the relevance of documents sought by the subpoenas and has suggested that Plaintiffs' service of subpoenas to third parties may be a potential mechanism to obtain the documents at issue here.

1

**BACKGROUND**

2          Plaintiffs allege that the Arizona legislature passed S.B. 1485 for the purpose of

3     denying voters of color their equal right to vote. In denying Defendants' motion to dismiss,

4     the Court held that Plaintiffs plausibly alleged intentional discrimination based on (1)

5     evidence of S.B. 1485's disparate effects on voters of color; (2) statements made by

6     legislators during its passage about the need to ensure "quality" voting; and (3) departures

7     from ordinary legislative procedure after the 2020 election, including running a sham

8     election audit despite having no evidence of fraud. ECF No. 154, at 52-59.

9          This Court has repeatedly acknowledged that legislators' contemporaneous

10    statements may be important evidence of intentional discrimination under the test set forth

11    in *Arlington Heights*. *See* ECF No. 154, at 55 (noting that such statements can be "probative

12    when evaluating a discriminatory purpose claim"); *id.* at 56-57 (statement concerning

13    "quality" voting "provides plausible support for Plaintiffs' overall claim"); ECF No. 184 at

14    18 (emphasizing that the Court "already addressed, and rejected," argument that legislators'

15    statements are irrelevant to discriminatory intent); *id.* at 23 & n.11 (reiterating that

16    "[c]ommunications with government actors are potentially relevant 'contemporary

17    statements' under *Arlington Heights*," and citing cases recognizing the same).

18         Acknowledging the potential significance of legislators' statements, Plaintiffs

19    sought documents and communications relating to S.B. 1485 and related laws and their

20    enactment from the Arizona House of Representatives, the Arizona Senate, and the

21    Legislators. Through an extensive meet-and-confer process, Plaintiffs worked with the

22    Legislators to limit or narrow several of the requests and minimize the burden imposed on

23    the Legislators and their staffs.

24         The Legislators continued to assert the legislative privilege over 196 documents, 38

25    of which were documents sent to or from third parties. Plaintiffs moved to compel

26    production of these documents. ECF No. 197.

27

28

1

2

3

4

5

   After issuing a tentative ruling in the Legislators' favor, ECF No. 232, this Court heard oral argument. ECF No. 235. During the hearing, the Court posited whether, for the 38 documents that the Legislators sent to or received from third parties, Plaintiffs could "look at all the nonlegislators who are on the other side . . . and then subpoena them." ECF No. 272 at 8 (July 17, 2023 Hr'g Tr.).

6

7

8

9

10

11

12

   Although the Court recognized that Plaintiffs' requested documents concerned legislator motivations at the "heart of this litigation" and the "serious" federal interests in protecting voting rights, the Court then denied Plaintiffs' motion to compel production by the Legislators. ECF No. 237 at 19-20. As to the documents concerning the Legislators' communications with third parties, the Court's denial was based on two factors. The Court cited the availability of other evidence, including the "seeming" availability of the documents from third parties. *Id.* at 22-23. The Court explained:

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> [W]ith respect to one subset of the withheld documents—the communications with third parties outside the legislative branch—the second factor weighs against disclosure for the additional reason that Plaintiffs may have other tools at their disposal to obtain the documents at issue. As part of the discovery process in this case Plaintiffs issued a subpoena to non-party The Republican Party of Arizona ('RPA'). Among other things, that subpoena seeks certain 'communications between members of the RPA and members of the Arizona legislature.' (Doc. 184 at 12.) Notably, Legislators have not sought to assert any state legislative privilege as to *that* subpoena. Furthermore, during oral argument, both sides seemed to agree that it would be possible for Plaintiffs to issue additional subpoenas to other third parties identified in Legislators' privilege log and that the state legislative privilege would not be implicated by such an approach (although the recipients might have other grounds for resisting compliance). The seeming availability of alternative avenues for obtaining communications between Legislators and third parties—which would not raise the significant concerns raised by a subpoena issued directly to Legislators—is another reason why the second factor weighs against disclosure.

PLAINTIFFS' MOTION TO COMPEL
DISCOVERY, CASE NO. CV-21-01423-
DWL

1  ECF No. 237 at 22-23 (footnote omitted).[2] *See also id.* at 24 n.11 ("Additionally, to the

2  extent the fifth factor does not cut as decisively in Legislators' favor when it comes to third-

3  party communications (as contrasted with how it applies to internal communications), this

4  does not affect the overall balancing calculus because the second factor cuts more decisively

5  in Legislators' favor when it comes to third-party communications (due to the potential

6  availability of other mechanisms for obtaining those communications.)").

7      The Court also cited undue burden and distraction of the Legislators in responding

8  to the Subpoenas as justification for upholding the Legislators' assertions of a state

9  legislative privilege, noting that "[h]ere, . . . Legislators are current and former elected

10  officials with a broad range of legislative duties. Requiring them to produce

11  communications touching upon the legislative process would constitute the precise sort of

12  interference that the state legislative privilege was designed to prevent." *Id.* at 24-25.

13      The Court then conducted an *in camera* review of the documents and held that the

14  "withheld documents are not more relevant and/or valuable to Plaintiffs' claims than the

15  Court [previously] assumed." ECF No. 242.

16      Consistent with the Court's discussion, Plaintiffs then served the Subpoenas on a

17  number of third-party individuals. Two recipients, Jessie Armendt and Steve Barclay,

18  indicated that they possessed responsive documents and did not object to the Subpoenas.

19  Two recipients, J. Charles Coughlin and Cathi Herrod, indicated that they did not possess

20  legislator communications, and several recipients—including Aimee Yentes, Mark Lewis,

21  and Dan Farley—asserted legislative privilege, First Amendment privilege, and other

22  objections to production of documents.[3] Yentes, an employee of the FEC, objected to

23  Plaintiffs' subpoena on the ground that communications made in her capacity as an

24  employee of the FEC were not in her possession, custody, or control. While preserving their

---

25  [2] The Court noted that it "use[d] the phrase 'seeming availability' because it [did] not mean

26  to express any definitive conclusions about whether the state legislative privilege would be

27  implicated by a subpoena issued to a third party to obtain that party's communications with
   a member of a state legislature." *Id.* at 23 n.10.

28  [3] One recipient passed away since receiving the Subpoena.

PLAINTIFFS' MOTION TO COMPEL
DISCOVERY, CASE NO. CV-21-01423-
DWL

position that Yentes' objection was meritless, Plaintiffs thereafter served a subpoena on the FEC to resolve that particular objection. The FEC then raised its own objections based on legislative and First Amendment privilege. Lewis, Farley, and the FEC have produced privilege logs generally describing the authors and subject matters of the communications at issue. See Rubin Decl. Exhibits 2-4.

After learning about the Subpoenas, the Legislators asserted that the Court's prior Orders declining to order production by the Legislators also foreclose production by the third-party subpoena recipients of responsive communications with legislators.

Plaintiffs met and conferred with the third-party subpoena recipients and the Legislators to no avail. The parties therefore submitted a joint summary of the discovery dispute to apprise the Court of the outstanding privilege issues. ECF No. 280 at 1. This Court granted Plaintiffs leave to move to compel, concluding that the dispute would be better resolved through motion practice. ECF No. 281.

## ARGUMENT

This Court should compel the production by the third-party subpoena recipients of responsive communications between Legislators and the third parties. The legislative privilege does not apply to communications the Plaintiffs seek from non-legislator third parties because subpoenas directed to such non-legislator third parties do not implicate confidentiality or distraction concerns. Moreover, even if a qualified legislative privilege were applicable to the responsive documents sought from the third-party subpoena recipients, such qualified privilege must yield to important federal interests. The Legislators face no burden to respond to the Subpoenas and Plaintiffs were previously denied disclosure based in part on the possibility that the documents were otherwise available. As for the First Amendment privilege, it does not apply to the Subpoena recipients' external communications with Legislators (or legislators' communications with the third parties), and in any event, the recipients have not shown why disclosure of these documents will chill their expression.

**I.     The Legislative Privilege Does Not Bar *the Third-Party Subpoena Recipients'* Production of Their Communications with Legislators or Legislative Staff.**

The legislative privilege does not apply to bar production by the non-legislator subpoena recipients of their communications with the Legislators or legislative staff. The objecting parties cannot invoke the Court's cited rationale behind the privilege—ensuring legislative independence—to justify application of such a privilege. ECF No. 237 at 13 (citing *United States v. Gillock*, 445 U.S. 360, 371 (1980)). Courts have cited two tenets that the legislative privilege protects: open discussion and freedom from distraction. *See, e.g.*, *Gillock*, 445 U.S. at 373; *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018)). Neither apply here.

As this Court recognized, protecting communications that the Legislators *chose* to have with third parties does not facilitate candor in intra-legislator discussions. ECF No. 237, at 14 (noting that "confidentiality interests are less discernible" in the context of communications between legislators and third parties); *see also League of Women Voters of Fla., Inc. v. Lee*, 340 F.R.D. 446, 454 n.2 (N.D. Fla. 2021) ("[B]ecause confidentiality is not the legislative privilege's animating concern, the privilege would not prevent Plaintiffs from asking the third parties with which the Legislators communicated about those communications."); *Cano v. Davis*, 193 F. Supp. 2d 1177, 1179 (C.D. Cal. 2002) ("The legislative privilege does not bar . . . a third party non-legislator, from testifying to conversations with legislators and their staffs."). As courts have recognized in the First Amendment context, disclosing communications between public officials and third-party subpoena recipients "would not force [the subpoena recipients] to disclose information that is otherwise secret." *Sol v. Whiting*, 2013 WL 12098752, at *3 (D. Ariz. Dec. 11, 2013).[4]

---

[4]     In their section of the joint summary of the parties' discovery dispute, the Legislators cited *Miller v. Transamerican Press, Inc*., 709 F.2d 524, 528 (9th Cir. 1983), to argue that the privilege protects their "preliminary opinions from public disclosure and critique." ECF No. 280, at 5. But that case concerned compelling a former U.S. Congressman to speak about material he inserted in the Congressional record. While the court recognized a speech interest in the federal legislative forum, it emphasized that the Speech and Debate Clause

That same logic applies to the issue of whether the legislative privilege may be invoked to prevent production by the non-legislator subpoena recipients.

Moreover, because confidentiality concerns are not implicated here, *see League of Women Voters*, 340 F.R.D. at 454 n.2, pursing third-party discovery is not, as the objectors contend, "gamesmanship," or in any way improper. ECF No. 280, at 5. The information in the privilege logs that the Legislators originally produced is not confidential, and litigants commonly use such disclosed information to identify other, non-privileged, sources of discovery to pursue. Moreover, the suggestion of any impropriety here ignores that the Court itself recognized the "seeming availability" of "alternative avenues" for Plaintiffs to obtain these documents. ECF No. 237 at 22-23, 24 n.11.

Accusations of "gamesmanship" are especially unjustified here because the Subpoenas do not implicate the fundamental concern of the privilege: preventing legislator burden or distraction. This Court recognized that the privilege serves to shield *legislators* from "divert[ing] their time, energy, and attention from their legislative tasks to defend the litigation.'" ECF No. 237, at 13 (quoting *Lee,* 908 F.3d at 1187). But the Legislators have no obligation to respond to Subpoenas issued to *non-legislators*. Negative consequences of compelled disclosure cited by courts—"requiring legislators to negotiate protective orders or to suffer contempt proceedings," *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 233 (5th Cir. 2023), or impeding the "functioning of the legislature," *In re N. D. Legis. Assembly*, 70 F.4th 460, 464 (8th Cir. 2023)—are not implicated here. Indeed, as discussed in Plaintiffs' summary of the discovery dispute, some non-legislators, like Lewis and Farley, authored and still possess many of the requested communications: emails urging legislators to pass legislation. ECF No. 280, at 3; Rubin Decl. Ex. 7. They cannot shield their documents from production simply by sending them to legislators.

---

of the U.S. Constitution imposes an "absolute bar to interference" with legislative activity. *Miller*, 709 F.2d at 528. As this Court has recognized, however, the Ninth Circuit has held that the *state* legislative privilege is *qualified*, rather than absolute, in scope. ECF No. 237 at 8, 11 n.4 (citing *Lee*, 908 F.3d at 1175, 1187-88).

PLAINTIFFS' MOTION TO COMPEL DISCOVERY, CASE NO. CV-21-01423-DWL

Any burden that the Legislators face by choosing to object to the Subpoenas is self-inflicted and cannot be the basis to invoke legislative privilege. Legislators reached out to affirmatively interject themselves into Plaintiffs' meet-and-confer discussions with the subpoena recipients. The Legislators' claims of distraction from legislative duties also ring hollow given that at least one legislator, Speaker Toma, affirmatively initiated his own lawsuit concerning S.B. 1485 and intervened in other litigation concerning other challenged legislation. For example, Judge Bolton recently held that Speaker Toma waived legislative privilege when he "voluntarily interven[ed]" in a case challenging the constitutionality of H.B. 2243 and H.B. 2492. *Mi Familia Vota v. Fontes*, 2023 WL 8183557, at *2 (D. Ariz. Sept. 14, 2023). And Speaker Toma has recently filed a lawsuit concerning implementation of S.B. 1485. *See* Compl. ¶¶ 41-44, *Peterson v. Fontes*, No. CV-2024-001942 (Az. Super. Ct., Maricopa Cnty, Jan. 31, 2024); Plfs.' Mot. for Prelim. Inj. at 8-11, *Peterson v. Fontes*, No. CV-2024-001942 (Az. Super. Ct., Maricopa Cnty, Jan. 31, 2024). At the very least, having chosen to file his own lawsuit concerning S.B. 1485 (and to intervene in another case challenging the constitutionality of H.B. 2243 and H.B. 2492), Speaker Toma should not be heard to invoke any "distraction" concerns underlying legislative privilege.

Even if the Legislators could invoke a privilege in objecting to the third-party Subpoenas—which they cannot—the privilege would be a qualified one, and must yield to the "serious" federal interests at issue in this litigation. ECF No. 237, at 20 (quoting *Harris v. Ariz. Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1071 (D. Ariz. 2014)). The Court has previously applied this test, ECF No. 137 at 15-16 (quoting *Puente Arizona v. Arpaio*, 314 F.R.D. 664, 672 (D. Ariz. 2016), and the Legislators have conceded that it applies. ECF No. 202 at 8. Notwithstanding the out-of-circuit case cited by the Legislators in their section of the joint discovery dispute summary, *see Pernell v. Fla. Bd. of Governors of State Univ.*, 84 F.4th 1339, 1345 (11th Cir. 2023), no binding precedent requires this Court to abandon application of this test, which has been embraced by another court in this very district. *Puente Ariz*, 314 F.R.D. 664 at 672.

Applying the five-factor test in its previous order, this Court acknowledged the relevance of the requested documents and recognized the gravity of the stakes in voter-rights litigation. ECF No. 237, at 19.[5] The Court concluded that the remaining two factors—the availability of other evidence and the purposes of the privilege—weighed against disclosure when plaintiffs were seeking documents from *Legislators*. *Id.* at 20-25. But where, as here, the subpoenas seek production from third-party non-legislators, the Court's prior reasoning tips the scale in the opposite direction.

There is no way to otherwise obtain the documents the Plaintiffs seek, and the documents cannot be withheld now based on invocation by the subpoena recipients or the Legislators of a chilling effect or a self-imposed burden. The Court denied Plaintiffs' previous motion to compel based, in part, on the possibility that these documents were available through alternative means such as service of the very Subpoenas at issue here. *See* ECF No. 237 at 23-24. Allowing the assertion of a legislative privilege over the documents in the possession, custody, or control of the third-party subpoena recipients would shut the door on the only available avenue for obtaining these materials after the Court found that the existence of this avenue weighed against obtaining the documents from the legislators themselves. As discussed, moreover, disclosure does not implicate confidentiality and distraction concerns when subpoenas are issued to non-legislator third parties. Reapplying the five-factor test in this "distinct" situation, *id.* at 23 n.10, supports the conclusion that Plaintiffs' "serious" federal interests in the documents overcome any reason to apply any qualified privilege here. *See* ECF No. 197, at 11.

In sum, the legislative privilege does not apply to documents that Plaintiffs seek to compel from non-legislator third parties, who would not be burdened by producing them.

---

[5]   After conducting an in camera review of the documents, this Court did not, as Legislators claim, confirm that "none of the withheld documents were critical to Plaintiffs' case." *See* ECF No. 280, at 6. Instead, this Court held that "the withheld documents are not more relevant and/or valuable to Plaintiffs' claim than the Court assumed when considering them in the abstract." ECF No. 242, at 1. And when initially considering the documents, the Court noted that "[w]hat motivated the Arizona legislature to enact S.B. 1485 is at the heart of this litigation." ECF No. 237, at 19.

1   Even if legislative privilege applied to documents in the possession, custody, or control of
2   such third-parties, the privilege would be qualified, and is outweighed by Plaintiffs'
3   interests.
4   **II.     The First Amendment Privilege Does Not Apply to Communications Between The Legislators And Third Parties.**
5            Some of the subpoena recipients—Farley, Lewis, and the FEC—also assert First
6   Amendment privilege objections to Plaintiffs' subpoenas. But the First Amendment
7   privilege is clearly inapplicable. Animating the First Amendment privilege is the concern
8   that unfettered discovery into an association's *internal* communications will deter members
9   from speaking freely. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1162 (9th Cir. 2010).
10  When a member of an association discloses the contents of such communications, especially
11  to a public official, those communications are no longer private. *See Wal-Mart Stores, Inc.*
12  *v. Tex. Alcoholic Beverage Comm'n*, 2016 WL 5922315, at *7 (W.D. Tex. Oct. 11, 2016)
13  (observing that there is no First Amendment right to "secretly" "lobby the government").
14  The First Amendment privilege thus protects the "identity of association members [and]
15  internal communications—not communications with third parties, let alone public
16  officials." *Del Sol*, 2013 WL 12098752, at *3. Regardless of whether, as the FEC claims,
17  any individuals communicating with legislators "believed" they were speaking
18  confidentially at the time of the communications, such a belief provides no basis for
19  invoking the First Amendment privilege. ECF No. 280, at 7.
20           Applying *Perry*, this Court has recognized that "if the withheld documents involve
21  external communications between the [the associations'] custodians and third parties, there
22  would be no potential claim of First Amendment privilege." ECF No. 269, at 26; *see also*
23  ECF No. 184, at 12-13 (rejecting Republican Party of Arizona's privilege invocation
24  because it did not "explain why such [external] communications could be considered
25  privileged from disclosure under the First Amendment"). Farley, Lewis, and the FEC seek
26  to shield from production the very types of documents this Court—applying binding Ninth
27  Circuit precedent—has already deemed outside the scope of any First Amendment
28

PLAINTIFFS' MOTION TO COMPEL DISCOVERY, CASE NO. CV-21-01423-DWL

privilege: communications between members of associations and legislators. For that reason, the FEC's reliance on *In re Kincaid*, 2023 WL 5933341 (D.D.C. Aug. 9, 2023), an out-of-circuit district court case, is misplaced. *See* ECF No. 280, at 7. The objectors' assertion of First Amendment privilege with respect to external communications fails as a matter of Ninth Circuit law.

But even if their assertion of First Amendment privilege to try to shield external communications from production was not barred by Ninth Circuit law, the assertion of such a privilege by Lewis, Farley, and the FEC fails. First, as this Court has explained, "[u]nder Ninth Circuit law, '[t]he party asserting the privilege must demonstrate a prima facie showing of arguable first amendment infringement,'" which "'requires [the privilege proponent] to demonstrate that enforcement of the discovery requests will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or chilling of, the members' associational rights.'" ECF No. 269 at 22 (quoting *Perry*, 591 F.3d at 1160 (cleaned up)). Nothing in objectors' privilege logs—which merely describe the authors, recipients, and subject matters of the communications—mentions, much less "demonstrate[s]," any such putative consequence of disclosure. *See* Rubin Decl. Exs. 7, 9. The same is true of the objecting parties' responses and objections. Farley and Lewis merely state that "if citizens are subjected to badgering it will clearly inhibit communications with elected officials." *See* Rubin Decl. Ex 6. at 2. That conclusory statement fails to establish that disclosure would subject Farley and Lewis "to fears of threats, harassment or reprisal." *Wal-Mart Stores*, 2016 WL 5922315, at *8. Nor does it provide "objective and articulable facts" about the basis for such consequences "beyond broad allegations or subjective fears." *Ward v. Thompson*, 630 F. Supp. 3d 1140, 1153 (D. Ariz. 2022) (quoting *Brock v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO*, 860 F.2d 346, 350 n.1 (9th Cir. 1988)). "[C]onclusory statements, alone, do not establish a *prima facie* showing of First

1    Amendment infringement." ECF No. 184, at 12; *see also United States v. Town of Colorado*
2    *City*, 2014 WL 5465104, at \*2 (D. Ariz. Oct. 28, 2014).

3         In short, Plaintiffs seek disclosure of external organization communications with
4    public officials not protected by the First Amendment. Moreover, none of the objectors have
5    offered anything to explain how disclosure of Plaintiffs' requested documents will chill
6    associational speech. For each of these reasons, the assertions of First Amendment privilege
7    should be overruled.

8                                    **CONCLUSION**

9         For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order
10   to compel the subpoena recipients to produce the documents they have withheld.

11                          **CERTIFICATION OF COUNSEL**

12        Undersigned counsel certify that they have attempted to resolve this discovery
13   dispute through personal consultation (via written communications and telephonic
14   conferences) and sincere efforts as required by Local Rule of Civil Procedure 7.2(j). Despite
15   these good-faith efforts, the parties have been unable to resolve their dispute.

16

17   Dated: March 11, 2024                    Respectfully submitted,

18

19   Lee H. Rubin (Admitted PHV)              /s/Coree E. Neumeyer
                                              Lauren Elliott Stine (AZ #025083)
20   MAYER BROWN LLP                          Coree E. Neumeyer (AZ# 025787)
     Two Palo Alto Square, Suite 300          QUARLES & BRADY LLP
21   3000 El Camino Real                      One Renaissance Square
                                              Two North Central Avenue
22   Palo Alto, CA 94306-2112                 Phoenix, AZ 85004-2391
     (650) 331-2000                           (602) 229-5200
23   lrubin@mayerbrown.com                    Lauren.Stine@quarles.com
                                              Coree.Neumeyer@quarles.com
24

25

26

27

28

1  Gary A. Isaac (Admitted PHV)          Courtney Hostetler (Admitted PHV)
2  Daniel T. Fenske (Admitted PHV)       John Bonifaz (Admitted PHV)
   William J. McElhaney III (Admitted    Ben Clements (Admitted PHV)
3  PHV)                                  FREE SPEECH FOR PEOPLE
   MAYER BROWN LLP                       1320 Centre Street, Suite 405
4  71 S. Wacker Drive                    Newton, MA 02459
   Chicago, IL 60606                     (617) 249-3015
5  (312) 782-0600                        chostetler@freespeechforpeople.org
   gisaac@mayerbrown.com                 jbonifaz@freespeechforpeople.org
6  dfenske@mayerbrown.com                bclements@freespeechforpeople.org
   wmcelhaney@mayerbrown.com
7
8  Rachel J. Lamorte (Admitted PHV)
   MAYER BROWN LLP
9  1999 K Street NW
   Washington, DC 20006
10 (202) 362-3000
   rlamorte@mayerbrown.com
11                                               *Attorneys for Plaintiffs*
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on March 11, 2024, a copy of the foregoing **MOTION**

3  **TO COMPEL DISCOVERY FROM THIRD-PARTY SUBPOENA RECIPIENTS**

4  was filed electronically with the Arizona District Court Clerk's Office using the CM/

5  ECF System for filing, which will provide a Notice of Electronic Filing to all

6  CM/ECF registrants.

7

8                                          _/s/_Coree E. Neumeyer

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION TO COMPEL
DISCOVERY, CASE NO. CV-21-01423-
DWL